UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER FUNG-SCHWARTZ, D.P.M.,
individually and/or on behalf of patients, and
JENNIFER FUNG-SCHWARTZ, D.P.M., L.L.C.,

               Plaintiff,

     v.

CERNER CORPORATION and CERNER
HEALTHCARE SOLUTIONS, INC.,

               Defendants.

17 Civ. 233 (VSB)

ECF Case

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

## Table of Contents

Page

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT .................................................................................................... 3

    A.  Cerner Corporation Cannot Be Dismissed from this Action .......................... 3

        1.  Cerner Corporation is a Party to the 2006 Agreement ............................... 3

        2.  Plaintiffs Properly Pleaded Fraud Against Cerner Corporation in the Alternative (Count 6) ............................................................................. 5

        3.  Cerner Corporation Was Involved in EMR and Billing............................. 6

    B.  Dr. Fung-Schwartz Has Standing to Sue on Behalf of Patients ...................... 6

    C.  Plaintiffs Properly Pleaded Unfair Competition (Count 15)............................ 8

    D.  Plaintiffs Properly Pleaded Misappropriation (Count 16) ............................. 10

    E.  Counts 1 and 9 are Properly Pleaded Conversion Claims ............................. 11

    F.  Counts 2 and 7 State Claims for Deceptive Business Acts and Practices Under New York GBL § 349 ........................................................................ 13

    G.  Count 8 States A Claim Under New York GBL § 349.................................... 15

    H.  Negligence (Counts 3 and 18) Are Properly Pled .......................................... 16

    I.  The Fraud Claims (Counts 4 and 5) Are Pled with Particularity and Are Not Duplicative of the Contract Claim ............................................................ 18

    J.  The Tortious Interference with Business Relations Claims (Counts 11, 13) are Properly Pled ............................................................................................ 21

    K.  The Tortious Interference with Contract Claims (Counts 10, 12) are Properly Pled .................................................................................................. 22

    L.  Prima Facie Tort (Count 14): Defendants Intentionally Inflicted Harm ....... 22

    M. Defendants Cannot Enforce A Limitation of Liability Clause by a Rule 12 Motion ............................................................................................................ 23

III. CONCLUSION ................................................................................................ 25

ii

# Table of Authorities

Page

### Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ........................................................................ 3

*Baidu, Inc. v. Register.com, Inc.,*
    760 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) ......................................... 23

*Big Vision Private, Ltd. v. E.I. DuPont de Nemours & Co.,*
    610 Fed. Appx. 69, 71 (2d Cir. 2015) ................................................. 8

*Bridgestone/Firestone v. Recovery Credit Servs.,*
    98 F.3d 13, 19-20 (2d Cir. 1996) ......................................................... 19

*Byrne v. Avery Center for Obstetrics & Gynecology, P.C.,*
    314 Conn. 433, 447, 102 A.3d 32 (2014) ....................................... 17-18

*Chemical Bank v. Society Brand Industries, Inc.,*
    624 F. Supp. 979, 982 (S.D.N.Y. 1985) ......................................... 7, 18

*Coon v. Southwestern Vt. Med. Ctr.,*
    2014 U.S. Dist. LEXIS 96324, *16,
    2014 WL 3535344 (D. Vt. July 16, 2014) ......................................... 11

*Coon v. Southwestern Vt. Med. Ctr.,*
    2014 U.S. Dist. LEXIS 12523, *55-56, 2014
    WL 348193 (D. Vt. Jan. 30, 2014) ..................................................... 11

*Chigirinskiy v. Panchenkova,*
    2015 U.S. Dist. LEXIS 43006, *48-49 n. 16, 2015 WL 1454646 (S.D.N.Y. Mar.
    31, 2015) .................................................................................. 12, n. 6

*Daly v. Metropolitan Life Ins. Co.,*
    4 Misc.3d 887, 782 N.Y.S.2d 530, 535 (Sup.Ct. N.Y. Co. 1992) ......... 16, 17 n. 11

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104, 111 (2d Cir. 2010) ......................................................... 3

*DiVittorio v. Equidyne Extractive Indus,*
    822 F.2d 1242, 1247 (2d Cir. 1987) ................................................... 18

*Goldstein v. Pataki,*
    516 F.3d 50, 56 (2d Cir. 2008) ............................................................. 3

Page

## Cases

*Griswold v. Connecticut,*
    381 U.S. 479 (1965) ............................................................................ 6

*Icahn Sch. of Med. v. Health Care Serv. Corp.,*
    2017 U.S. Dist. LEXIS 36687, *11-13 (S.D.N.Y. Feb. 22, 2017) ........................ 14

*In re Ford Fusion & C-Max Fuel Econ. Litig.,*
    2015 U.S. Dist. LEXIS 155383, *47-48 (S.D.N.Y. Nov. 12, 2015) ..................... 14

*International CableTel v. Le Groupe Videotron Ltee,*
    978 F. Supp. 483, 487 (S.D.N.Y. 1997) .............................................. 19

*Leveraged Leasing Admin. Corp. ex rel. Dweck v. Pacificorp Capital,*
    87 F.3d 44, 49, 50 (2d Cir. 1996) .............................................. 12, n. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U. S. __, __ , 134 S. Ct. 1377, 1385-86 (2014) ................................ 8, n. 5, 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160, 172 (2d Cir. 2015) ........................................... 18, 20, 25

*Lucente v. IBM,*
    310 F.3d 243, 257 (2d Cir. 2002) ........................................................ 24

*Luv N' Care, Ltd. v. Shiboleth LLP,*
    2017 U.S. Dist. LEXIS 128060, *36 (S.D.N.Y. August 8, 2017) ..................... 3, 5

*Mellon Bank v. United Bank Corp.,*
    31 F.3d 113, 115 (2d Cir. 1994) ..................................................... 3, 24

*New York State Psychiatric Ass'n v. UnitedHealth Grp.,*
    798 F.3d 125, 131 (2d Cir. 2015) ........................................................ 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A.,*
    85 N.Y.2d 20, 25 (1995) ................................................................ 14

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.,*
    280 F.3d 278, 289 n. 12 (3d Cir. 2002) ........................................... 6, 7 n. 4

*Pelman v. McDonald's Corp.,*
    396 F.3d 508, 511 (2d Cir. 2005) ........................................................ 13

*R. K. v. St. Mary's Med. Ctr., Inc.,*
    229 W. Va. 712, 720-721, 735 S.E.2d 715, 723-724 (W. Va. Nov. 15, 2012) ...... 17

iv

Page

**Cases**

*Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,*
    672 F.2d 1095, 1105 (2d Cir. 1982) ........................................................................ 9

*Saratoga Vichy Spring Co., Inc. v. Lehman,*
    625 F.2d 1037, 1044 (2d Cir. 1980) ..................................................................... 10

*Securitron Magnalock Corp. v. Schnabolk,*
    65 F.3d 256, 264 (2d Cir. 1995) ......................................................................... 14

*Singleton v. Wulff,*
    428 U.S. 106, 114 (1976) ............................................................................... 6, 7

*Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.,*
    1991 U.S. Dist. LEXIS 3614, *29-30,
    1991 WL 49782 (S.D.N.Y. Mar. 25, 1991) ................................................... 12, n. 6

*State v. Seventh Regiment Fund, Inc.,*
    98 N.Y.2d 249, 260 (2002) ...................................................................... 12, n. 6

*Truth Seeker Co. v. Durning,*
    147 F.2d 54, 56 (2d Cir. 1945) .......................................................................... 8

Page

**Statutes and Rules**

42 U.S.C. § 1320d .......................................................................................... 16, 17 n. 11

New York Edu. Law § 6810 ......................................................................................... 15

New York Gen. Bus. Law § 349 ........................................................................... 13, 15

New York Pub. Hlth. Law § 18(2) ............................................................................. 15

New York Pub. Hlth. Law § 281 ................................................................................ 15

New York Pub. Hlth. Law § 3302 .............................................................................. 15

NYCRR Title 10 § 80.64 ............................................................................................. 15


Rule 8, Fed. R. Civ. P. ................................................................................................ 13

Rule 9(b), Fed. R. Civ. P. ..................................................................................... 18, 19

45 CFR 164.304 ............................................................................................................ 16


RESTATEMENT (THIRD) OF TORTS: PHYSICAL
& EMOTIONAL HARM § 7(a) (2010). ....................................................... 16-17, n. 10

## I.      INTRODUCTION

Plaintiffs, Dr. Jennifer Fung-Schwartz, D.P.M., ("Dr. Fung-Schwartz"),

individually and/or on behalf of Patients, and Jennifer Fung-Schwartz D.P.M., L.L.C.

submit this Memorandum in Opposition to Defendants' Partial Motion to Dismiss

Counts 1-16 and 18 of the Amended Complaint.

On a 12(b)(6) motion, Defendants have the burden of proof.  *Lerner v. Fleet Bank,*

*N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  Cerner has deliberately chosen not to make any

argument or provide any briefing with respect to a number of the claims in the

Amended Complaint and therefore cannot prevail on these portions of its motion:

1. Defendants never provide any briefing as to why Cerner Corporation is not a party to the March 24, 2006 Agreement with the Practice as stated in the Amended Complaint ("AC" ¶ 17).
2. Defendants never provide any briefing to address the fraud claim pleaded in the alternative against Cerner Corporation based on Nathan Neuman, Esq.'s representations that Cerner Corporation is the party to the March 24, 2006 Agreement. (AC ¶¶ 87, 89).
3. Defendants fail to identify any element of an unfair competition claim which was not pled by Plaintiffs in Count 15.
4. Defendants provide no separate briefing on the misappropriation claim and fail to identify any element of misappropriation which was not pled by Plaintiffs in Count 16.
5. Defendants failed to brief Dr. Fung-Schwartz's standing to assert the Patients' claims as assignee of the Patients' claims and as a third-party representative.  Plaintiffs disclosed both of these theories on the record in Court on August 4, 2017.  (Tr. 7:2 – 8:12).
6. Defendants failed to brief the tortious interference claim pled by Dr. Fung-Schwartz (Count 10).  They identify no insufficiency with Dr. Fung-Schwartz's allegations.  Their brief only sough to add extraneous material which was not in Plaintiffs' claims as pled.
7. Defendants failed to brief the tortious interference claims (Count 12) asserted by the Practice and the Patients.

Defendants ignore that, as a matter of logic, Cerner Corporation must remain in

the case.  Attorney Nathan Neuman contacted Dr. Fung-Schwartz and identified

himself as counsel for Cerner Corporation.  He was in possession of Plaintiff's

confidential account information.  He asserted that Dr. Fung-Schwartz owed Cerner

Corporation over $100,000 under the March 24, 2006 Agreement with Cerner Corporation.  (Amended Complaint, hereafter "AC" ¶ 87).  Dr. Fung-Schwartz relied on the representations, hiring an attorney to respond to Mr. Neuman.  (AC ¶ 88).  Logically, there are only 2 possibilities:  either (1) Attorney Neuman made a material misrepresentation and Cerner Corporation was not entitled to any money because it was not a party to the contract – in which case Cerner Corporation must remain in this action for the fraud it perpetrated on Dr. Fung-Schwartz; or (2) Attorney Neuman told the truth and Cerner Corporation is a party to the March 24, 2006 Agreement – in which case Cerner Corporation must remain in this action.  It is, however, possible for Cerner Corporation to be both a party to the March 24, 2006 Agreement and the perpetrator of the fraud – it had no basis for its $100,000 demand.

Defendants also ignore the reality that there are Plaintiffs who are not parties to the Agreement at all.  Dr. Fung-Schwartz has standing to assert the Patients' claims under Supreme Court and Second Circuit precedent.  The Patients are not parties to the contract.  Clearly they have claims that are not contract claims and Defendants have no basis for asserting that their claims are duplicative of contract claims.

Defendants repeatedly attempt to pass off arguments about the substance of claims as Rule 12(b)(6) challenges in utter contravention of the Rule 12 standard.  For example, Cerner wrongly tries to obtain a ruling from the Court that any damages in this case are limited by a limitation of liability clause in the contract – when such clauses cannot be enforced if, as alleged, Cerner's actions were willful, recklessly indifferent or grossly negligent.  Cerner also wrongly asserts that the Court can construe contract terms by reading them in isolation at this stage of the litigation and goes so fat as to withhold from the Court other, contradictory contract terms.  The Second Circuit does

not permit such issues to be decided on a Rule 12 motion. *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994). Defendants' Rule 12 motion must be denied.

## II.   ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(internal citations omitted).  On a motion to dismiss, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *Id.*; *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).  Defendants have repeatedly failed to apply the correct Rule 12 standard, arguing their own version of the facts and ignoring the well-pleaded facts in the Amended Complaint.  This is improper on a Rule 12 motion.

> The Supreme Court has admonished that a court deciding a motion to dismiss must assume 'that all the allegations in the complaint are true (even if doubtful in fact).' Twombly, 550 U.S. at 555.  While the Defendants may vehemently contest the validity of Plaintiffs' allegations, a motion to dismiss is not the proper avenue for raising these factual challenges.

*Luv N' Care, Ltd. v. Shiboleth LLP*, 2017 U.S. Dist. LEXIS 128060, *36 (S.D.N.Y. August 8, 2017).  The court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### A.  Cerner Corporation Cannot Be Dismissed from this Action
#### 1.   Cerner Corporation is a Party to the 2006 Agreement

AC Exhibit 1 is a Software License, Hardware Purchase, Services and Support Agreement dated March 24, 2006 signed by the Practice, (Jennifer Fung-Schwartz

D.P.M., L.L.C.), and "Cerner Physician Practice, Inc." (AC ¶ 17, Doc. 18-1, p. 2). Cerner Corporation's counsel, Nathan Neuman, Esq., represented that Cerner Physician Practice, Inc. is a dba of Cerner Corporation, who is the party to the March 24, 2006 contract. (AC ¶¶ 87, 89).[1] Defendants ignore these well-pleaded facts and instead only brief the 2014 Sales Order. (Doc. 39, p. 27).[2] However, the 2014 Sales Order states:

> This Cerner Sales Order is subject to, and incorporates by reference, the Software License, Hardware Purchase, Services and Support Agreement, dated March 24, 2006, between Client and Cerner **(the 'Agreement')**.

(Doc. 18-2, p. 2)(emphasis in original). The 2014 Sales Order is subject to the 2006 Agreement with Cerner Corporation. The 2006 Agreement creates obligations with Cerner Corporation that are at issue in this litigation.

Nathan Neuman, Esq.'s representations, pled by Plaintiffs, must be taken as true. Defendants do not furnish any reason why Cerner Corporation – who is a party to the 2006 Agreement by the admission of its own counsel – should be dismissed from the contract claim necessarily based on **both** the 2006 Agreement and the 2014 Sales Order. Instead, Cerner Corporation seeks to dispute the facts of the pleading and distance itself

---

[1]   (AC ¶ 87, stating in relevant part, "Dear Dr. Schwartz: This email will confirm that this office represents Cerner Corp. dba Cerner Physician Practice, Inc.").

[2]   Defendants write, "Plaintiffs' contention that Dr. Fung-Schwartz reasonably relied on an alleged statement by a Cerner Corporation representative that Cerner Corporation was a party to the 2014 Cerner Solutions Sales Order is altogether puzzling in that it is contradicted by the plain language on the first page of the 2014 Cerner Solutions Sales Order (*See* ECF No. 18-2; "This Cerner Sales Order is made...between Client and Cerner Healthcare Solutions, Inc.")

What is "altogether puzzling" is Defendants attempt to conceal the original Agreement from the Court after Plaintiffs specifically alerted Defendants, their counsel and the Court to the contents of AC ¶ 87, Doc. 18-1, Cerner Corporation's attorney's statements and the fact that the 2006 Agreement was never made with Cerner Healthcare Solutions, Inc. Plaintiffs wrote the Court a letter on this subject in June (Doc. 20) and repeatedly asked Defendants' counsel to withdraw their frivolous arguments.

from its own attorney's representations.  This is improper on a Rule 12 Motion.  *Luv N'*

*Care, Ltd. v. Shiboleth LLP*, 2017 U.S. Dist. LEXIS 128060, *36 (S.D.N.Y. August 8, 2017).

> **2.**  **Plaintiffs Properly Pled Fraud Against Cerner**
> **Corporation in the Alternative (Count 6)**

Cerner Corporation's position that it can be dismissed from this action is legally

and logically untenable:  either Cerner Corporation is a party to the 2006 Agreement (in

which case it cannot be dismissed from the contract claim) or it is not (in which case it

cannot be dismissed from the fraud alleged in Count 6).[3]

Cerner Corporation insists that the alternate fraud claim is collateral to the

contract, stating, "Plaintiffs' contentions that Cerner Corporation engaged in mis-

statements or that an attorney represented himself as representing Cerner Corporation

are underline collateral and immaterial to resolution of Plaintiffs' claims."  (Doc. 39, p.

8)(emphasis added).  As set forth in the AC, Cerner Corporation's lawyer, Nathan

Neuman, Esq., repeatedly stated that he represented Cerner Corporation, that Cerner

Corporation was a party to the 2006 Agreement, and that Dr. Fung-Schwartz owed

Cerner Corporation money under that Agreement.  (AC ¶¶ 87-89). He was in

possession of Cerner Corporation documents pertaining to Dr. Fung-Schwartz's

account and her practice. *Id.*  If Cerner Corporation was not, as Mr. Neuman

represented, a proper party to the March 24, 2006 Agreement, then Cerner Corporation,

through its representative, Mr. Neuman, undertook to defraud Dr. Fung-Schwartz of

over $100,000 and Dr. Fung-Schwartz was damaged by her reliance on the fraudulent

representations.  (AC ¶¶ 87, 89).

---

[3]      It is, however, possible for Cerner Corporation to be both a party to the March
24, 2006 Agreement and the perpetrator of the fraud – it had no basis for its $100,000
demand.

### 3.  Cerner Corporation Was Involved in EMR and Billing

In addition to its role as a party to the March 2006 Agreement, Cerner

Corporation engaged in many of the activities that constituted the other causes of

action.  For example, the AC alleges that the actual software Dr. Fung-Schwartz and the

Practice personnel logged into was owned by Cerner Corporation (AC ¶ 11) and that

Cerner Corporation was responsible for activating the kill switch on the EMR (AC ¶¶

89-90). Cerner Corporation personnel made the statements that induced Plaintiffs to

enter into the 2014 Sales Order.  (AC ¶¶ 25-38).  Likewise, the AC alleges that both

Cerner Corporation and Cerner Solutions were involved in the medical billing (*See, e.g.*,

AC ¶¶ 38-52) and that Cerner Corporation produced the monthly metric reports.  (AC ¶

12).  These pleadings must be taken as true on this motion. Accordingly, Cerner

Corporation participated in the acts and omissions set forth in the AC.

### B.  Dr. Fung-Schwartz Has Standing to Sue on Behalf of Patients

It has long been recognized that doctors have a unique relationship with their

patients which allows them standing to sue on their behalf. *Griswold v. Connecticut*, 381

U.S. 479 (1965).  "Courts have generally recognized physicians' authority to pursue the

claims of their patients."  *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278,

289 n. 12 (3d Cir. 2002).[4]  In *Singleton v. Wulff*, 428 U.S. 106, 114 (1976), the Supreme

---

[4]     Nor do such claims need to implicate constitutional rights for there to be
such standing:

> Because the third-party claims asserted by the Pennsylvania Psychiatric
> Society do not implicate any constitutional rights of the psychiatrists'
> patients, the MCOs contend that granting third-party standing is
> unwarranted. While successful third-party standing claims have involved
> alleged violations of third parties' constitutional rights, *Singleton* and its
> progeny have not stipulated that constitutional claims are a prerequisite.
>
> *             *             *

Court allowed doctors to sue for Medicaid payments on their patients' behalf.  Doctors

have regularly been allowed to sue on behalf of their patients for both insurance

coverage for the patients and payments to the doctors.  *See, e.g., New York State*

*Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015)("NYSPA alleges,

and there is no serious dispute on appeal, that its members [the doctors] have standing

to sue United in their own right, as assignees of ERISA benefits.[5])

     As in the *New York State Pyschiatric Ass'n* case, the Patients here have assigned

their benefits to Dr. Fung-Schwartz.  They signed a form stating, "I authorize that all

payments for financial benefits for professional services rendered be made to Dr.

Jennifer Fung-Schwartz, DPM." (AC ¶ 3).

     The Patient claims related to the electronic medical records (EMR) are

inextricably tied to the privacy right and right to treatment that is a central component

of the patient-doctor relationship.  The test for third-party standing is:

> First, whether the plaintiff-respondents allege "injury in fact,"
> that is, a sufficiently concrete interest in the outcome of their suit
> to make it a case or controversy subject to a federal court's Art.
> III jurisdiction, and, second, whether, as a prudential matter, the
> plaintiff-respondents are proper proponents of the particular
> legal rights on which they base their suit.

*Singleton v. Wulff*, 428 U.S. 106, 112 (1976).  The Court makes two factual inquiries.  First,

the Court considers the relationship of the litigant to the person whose right he seeks to

---

> But the Court has not held that constitutional claim must also be alleged,
> see, e.g., *Powers, 499 U.S. at 410-11*, and absent further guidance, we will
> not impose this requirement. For these reasons, we hold the Pennsylvania
> Psychiatric Society's member psychiatrists would have third- party
> standing to assert the claims of their patients.

*Pa. Psychiatric Soc'y* at 291.

assert. *Id.* at 114-15. The second factor is the ability of the third party to assert his own right. *Id.* at 115-16. "If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent." *Id.* at 116.

Like the doctors in *Singleton*, Dr. Fung-Schwartz is experiencing the same injury as the Patients – lack of reimbursement for medical treatment and lack of access to Patient medical records, which are necessary to treat Patients. And just like the patients in *Singleton*, the cost and difficulties of litigating their claims are an obstacle to the Patients asserting their own rights.

### C. **Plaintiffs Properly Pled Unfair Competition (Count 15)**

Defendants fail to identify any required element which was not pled in Plaintiffs' unfair competition claim (Count 15). First, Defendants purposely fail to cite the controlling Second Circuit law and instead give the Court an incomplete description of unfair competition. (Doc. 39, p. 23). In *Big Vision Private, Ltd. v. E.I. DuPont de Nemours & Co.*, 610 Fed. Appx. 69, 71 (2d Cir. 2015), the Second Circuit stated:

> Under New York law…the tort of unfair competition is a "broad and flexible doctrine" that has been described as "encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown;
>
>           \*                \*               \*
>
> The essence of the tort "is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).

---

[5]     The standing under a federal statute, like ERISA may be more restricted than the standing alleged here for New York and common law claims. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U. S. __, __ , 134 S. Ct. 1377, 1385-86 (2014).

And in *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) the Second Circuit found:

> New York courts have noted the "incalculable variety" of illegal practices falling within the unfair competition rubric, *Ronson Art Metal Works, Inc. v. Gibson Lighter Manufacturing Co.*, 3 A.D.2d 227, 230-31, 159 N.Y.S.2d 606, 609 (1957), calling it a "broad and flexible doctrine" that depends "more upon the facts set forth … than in most causes of action," *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., supra*, 199 Misc. at 792, 101 N.Y.S.2d at 488, 489.

Yet Defendants tell the Court, inexplicably, "The cause of action is a 'limited concept'" (Doc. 39, p. 23) instead of advising the Court about the "incalculable variety" of claims under this "broad and flexible" doctrine elucidated by the Second Circuit.

Second, Defendants write, "Plaintiffs do not plead that Defendants engaged in unfair competition with them – rather, …." (Doc. 39, p. 23). The Supreme Court makes clear that it is not necessary for the unfair competition defendant to be a competitor:

> By the time the Lanham Act was adopted, the common-law tort of unfair competition was understood not to be limited to actions between competitors. One leading authority in the field wrote that "there need be no competition in unfair competition," just as "[t]here is no soda in soda water, no grapes in grape fruit, no bread in bread fruit, and a clothes horse is not a horse but is good enough to hang things on." Rogers, 39 Yale L. J., at 299; *accord, Vogue Co. v. Thompson-Hudson Co.*, 300 F. 509, 512, 3 Ohio Law Abs. 220 (CA6 1924);

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U. S. __, __ , 134 S. Ct. 1377, 1392 (2014). There is no proper purpose for Defendants' to raise this issue without alerting the Court that their position is contrary to both long-held precedent and recent Supreme Court review. It is not surprising that defendants cite no authority for their position.

Third, Defendants purposely conceal the detailed and numerous factual allegations in the Amended Complaint which show that Cerner (1) sent statements with Dr. Fung-Schwartz's name and the Practice's trade name to Patients which mislead

Patients about their insurance coverage and led them to believe they owed the Practice and Dr. Fung-Schwartz money and (2) improperly submitted duplicate claims to insurers using Dr. Fung-Schwartz's name.  (AC ¶¶ 3, 31, 33, 37, 51- 54, 67-69).

Finally, Defendants falsely tell the Court that "Plaintiffs have not alleged that these actions were taken in 'bad faith.'"  (Doc. 39, p. 24).  In fact, the Amended Complaint alleges that Cerner misused Dr. Fung-Schwartz's name and the Practice's trade name to (1) repeatedly submit duplicate claims under Medicare (AC ¶¶ 51-52) which insurers considered fraudulent and (2) repeatedly make false representations to Patients (AC ¶¶ 68-69) after Cerner had botched their claims, which (3) induced at least one patient to falsely believe that Dr. Fung-Schwartz and the Practice were attempting to collect the claim from the patient (AC ¶ 69) and at least one insurer to believe Dr. Fung-Schwartz had authorized improper claims. (AC ¶ 52).  Cerner obtained an improper commercial advantage, charging high fees for sub-par work.  (AC ¶ 37).  Accordingly, Dr. Fung-Schwartz and the Practice plausibly allege unfair competition.

### D.  Plaintiffs Properly Pled Misappropriation (Count 16)

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another."  *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).  "Central to this notion is some element of bad faith."  *Id.*  Defendants do not attempt to separate Count 15's unfair competition from Count 16's unfair competition and misappropriation.  (Doc. 39, pp. 23-24).  As the Amended Complaint clearly states, they are not the same.  Count 16 concerns Defendants' "ransom ware" attack – the deliberate denial of access and availability – which intentionally prevented Dr. Fung-Schwartz and the Practice from accessing their trade secrets.  Dr. Fung-Schwartz and the Practice pled a malicious and

10

intentional misappropriation of their (1) patient medical records and (2) trade secrets including the Practice's (a) financial information, (b) calendar and (c) customer lists when Defendants illegally cut off access to the EMR system for Defendants' commercial advantage which left the Practice and Dr. Fung-Schwartz unable to run the business. (AC ¶¶ 165-67; 87, 90-92, 114).

Customer lists, confidential patient information, financial information and the Practice's calendar – classic examples of trade secrets – belong to the Practice and Dr. Fung-Schwartz.  Without this information, they cannot conduct business.  The AC alleges Cerner misappropriated and concealed Plaintiffs' trade secrets in an attempt to extract a ransom of over $100,000 for Cerner Corporation.  (¶¶ 87-89, 165-167).

### E.   <u>Counts 1 and 9 are Properly Pled Conversion Claims</u>

Plaintiffs property pled all element of a conversion claim for the medical records (Count 1) and the insurance claims (Count 9).  Defendants again cite incomplete law to the Court and intentionally distort the facts alleged by Plaintiffs.

First, the conversion was complete when Cerner took Plaintiffs' property.  The return of converted property at most goes to mitigation of damages, not whether Plaintiff stated a claim for conversion.  *Coon v. Southwestern Vt. Med. Ctr.*, 2014 U.S. Dist. LEXIS 96324, *16, 2014 WL 3535344 (D. Vt. July 16, 2014) (applying New York law); *Truth Seeker Co. v. Durning*, 147 F.2d 54, 56 (2d Cir. 1945).

> [Defendant] argues that [Plaintiff's] claim for conversion of a grave marker is moot because the Complaint implicitly states that the marker has been returned…the tort of conversion is complete when the defendant takes, detains or disposes of the chattel. *See* W. Page Keeton et al., Prosser and Keeton on Torts § 15, at 106 (5th ed. 1984). [Plaintiff's] conversion claim is not moot."

*Coon v. Southwestern Vt. Med. Ctr.*, 2014 U.S. Dist. LEXIS 12523, *55-56, 2014 WL 348193 (D. Vt. Jan. 30, 2014) (applying New York law).  Second, as the AC states, Plaintiffs

11

made multiple demands[6] for the return of the electronic medical records and Cerner refused.  Before Cerner activated the kill switch, Dr. Fung-Schwartz asked Cerner to return the medical records and Cerner refused.  (AC ¶¶ 88-89).  After Cerner activated the kill switch, Dr. Fung-Schwartz and the Practice attempted to access Patient medical records, the Practice's calendar, Patient contact information, financial information and prescription writing features.  Each time Cerner refused access.  (AC ¶¶ 91-92).

---

[6]     Demands for converted property are not required when the defendant already knows it has no right to the property. *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 260 (2002).  In *Chigirinskiy v. Panchenkova*, 2015 U.S. Dist. LEXIS 43006, *48-49 n. 16, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) the Court, quoting *Stuart & Sons, L.P.*, 456 F. Supp. 2d at 343-44  explained the types of conversions:

> "There  are two classes of conversion. . . . In the first class of conversion the possession is wrongful from the outset. . . . The second class of conversion occurs when the possession is originally rightful, but becomes wrongful as a result of: (1) a wrongful detention; (2) a wrongful use of the property; or (3) the exercise of an unauthorized dominion over the property. With regard to the first instance, where the original possession is authorized, but becomes wrongful when the property is detained without authorization, a conversion does not occur until the possessor refuses to return the property on demand. . . . In the other two instances in the second class of conversion, either the wrongful use or the unauthorized dominion constitute the conversion and no demand for the return of the property is necessary. Thus, the statute of limitations in either case begins to run when a party, publicly or outwardly, exhibits wrongful use or unauthorized dominion over the property." (citations omitted).

The Second Circuit holds that New York law does not always require that a demand be made and be met by a refusal to make out a claim of conversion. Instead, a demand is necessary only where the property is held lawfully by the defendant.  *Leveraged Leasing Admin. Corp. ex rel. Dweck v. Pacificorp Capital*, 87 F.3d 44, 49, 50 (2d Cir. 1996).  "The rationale for requiring a demand is to apprise the innocent purchaser of his defective title and to give him the opportunity to deliver the property to the true owner before he is made liable as a tortfeasor. *Id.* Since the moving defendants [alleged converters] knew of [Plaintiff's] security interest in some of the assets they purchased, this rationale has no application here." *Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*, 1991 U.S. Dist. LEXIS 3614, *29-30, 1991 WL 49782 (S.D.N.Y. Mar. 25, 1991).

12

With respect to the electronic medical records, Plaintiffs alleged:  none of the Defendants own the medical records; under HIPAA, 42 U.S.C. § 1320d and/or related regulations, Cerner was required to continue to make the records available to Plaintiffs; and it was aware of these obligations (AC ¶¶ 81, 82, Doc. 18-1, pp. 8-10).  Nevertheless, Defendants illegally cut off Plaintiffs' access to their medical records.  (AC ¶ 90).

With respect to the insurance claims, the AC alleges that Defendants wrongly used the insurance claims:  Defendants did not file them properly; they allowed the 120 days to expire, which made the claims worthless; and they concealed their wrongful activities from Dr. Fung-Schwartz and the Practice.  (AC ¶¶ 3, 52, 58, 66-67, 68, 75-76).

### F.  Counts 2 and 7 State Claims Under New York GBL § 349

Counts 2[7] and 7 State Claims for Deceptive Business Practices under NY GBL § 349 because Cerner directly communicated with Patients, misled Patients about their insurance coverage and misled Patients about owing money to Dr. Fung-Schwartz and the Practice.  NY GBL § 349 states:

> § 349.  Deceptive acts and practices unlawful
> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

Defendants repeatedly misstate the pleading standard for claims under NY GBL § 349. These claims are always pled under Rule 8, Fed. R. Civ. P.  *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  As a recent Southern District opinion states:

> {T}he Court must follow the law of the Second Circuit, and, therefore, Rule 9(b) does not apply to Plaintiffs' New York law claims. *See Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 U.S. Dist. LEXIS 30608, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012)("*Petman* . . . establish[es] a categorical rule that [§ 349] claims, regardless of whether they 'sound in fraud,' or are premised on

---

[7]    The portion of Count 2 on behalf of Patients concerning medical records is discussed in Section G, *infra*.

specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b).").

*In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 U.S. Dist. LEXIS 155383, *47-48 (S.D.N.Y. Nov. 12, 2015).  Accordingly, Defendants' allegations that facts were not pled with particularity (*e.g.*, Doc. 39, pp. 16, 17) are irrelevant and contrary to law.

The claim elements are:  (1) a defendant's deceptive acts were directed at consumers, (2) the acts were misleading in a material way, and (3) plaintiff has been injured as a result.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A.*, 85 N.Y.2d 20, 25 (1995).  The critical question is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

Plaintiffs alleged that Cerner regularly and repeatedly made false representations directly to Patients.  After Cerner botched submitting the Patients' bills to their insurers, Cerner sent Patients written statements (AC ¶ 31) which made it appear like their insurance would not cover the bills and Dr. Fung-Schwartz was trying to collect from them.  (AC ¶¶ 68-69).[8] Cerner also made deceptive statements to induce Dr. Fung-Schwartz.  (AC ¶¶ 29, 98 Doc. 18-3, p. 3).

In *Icahn Sch. of Med. v. Health Care Serv. Corp.*, 2017 U.S. Dist. LEXIS 36687, *11-13 (S.D.N.Y. Feb. 22, 2017), a hospital periodically called an insurer to discuss potential reimbursement for services as an out-of-network provider on a individual case basis. The hospital then conveyed the information to the patient and jointly made a decision about whether the hospital would provide the services to the patient.  The insurer, however, would then pay a much smaller amount than what they had told the hospital,

leaving the patients owing the balance of the bill.  The Court allowed the hospital to

proceed with a GBL § 349 claim because the patients had been deceived and were

wrongly left owing money.

> Mount Sinai has further alleged that after HCSC failed to make
> payments, patients became liable for thousands of dollars in health care
> costs. See Compl. ¶ 8 ("Mount Sinai may 'balance bill' the patient for the
> difference between Mount Sinai's billed charge and the portion it is paid
> by HCSC."); id. at ¶ 76 ("HCSC's misstatements to providers like Mount
> Sinai subject HCSC insureds to added potential liability . . . .").  Although
> Mount Sinai has not taken steps to collect against these patients, their
> financial liability is sufficient to establish an injury to consumers.  Mount
> Sinai accordingly has alleged facts showing violations of GBL § 349.

The facts here are analogous.  Cerner's promises to Dr. Fung-Schwartz and subsequent

botched claim submission, resulted in financial liability for the Patients.

### G. <u>Count 8 States A Claim Under New York GBL § 349</u>

Count 8[9] State Claims for Deceptive Business Practices under NY GBL § 349

because of New York's express public interest in making medical records available for

patients.  Patients in New York have a statutory right to access to their health records,

even if there is a fee dispute. (AC ¶ 86).  Public Health Law § 18(2).  New York also

mandates electronic prescriptions (Public Health Law §§ 281, 3302; Education Law

§6810) and requires doctors to consult a registry to check a patient's controlled

substance history and document such consultation in the patient's medical record

before prescribing controlled substances.  NYCRR Title 10 § 80.64.  These rights and

obligations reflect New York State's policy of making medical records available to

patients upon request, even if there is a fee dispute.  (AC ¶ 86)  New York has added

---

[8]    Cerner also ran a call center to answer Patient inquires.  (AC ¶ 32) So there may
be additional direct contact with Patients to obtain in discovery.

[9]    This discussion also covers the medical records portion of Count 2 pled on behalf
of Patients.

very specific regulations concerning the services Cerner provided because of the impact they have on patients in New York. The Health Insurance Portability and Accountability Act, ("HIPAA"), 42 U.S.C. § 1320d *et seq*. requires the medical records be available to doctors and that they only be used for authorized purposes. It is a violation of HIPAA to prevent a doctor from accessing her patient medical records. *Id*.; 45 CFR 164.304.

Cerner made deceptive statements to induce Dr. Fung-Schwartz to use Cerner's EMR system, such as Cerner would comply with applicable laws, including New York law, HIPAA and related regulations (AC ¶¶ 29, Doc. 18-1, pp. 3, 8-10). Cerner then deliberately and knowingly engaged in an illegal denial of access and intentionally interfered with Patient care. (AC ¶¶ 82, 90). Defendants' misuse of the records – as a pressure point in a fee dispute – was a deceptive business practice. As in the *Icahn Sch. of Med.* case, providing electronic medical records for patients is consumer-oriented and consumers suffered as a result of Cerner's deceptive practices.

### H.    Negligence (Counts 3 and 18) Are Properly Pled

"[I]t is well established under New York law that 'a fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied.'" *Daly v. Metropolitan Life Ins. Co.*, 4 Misc.3d 887, 782 N.Y.S.2d 530, 535 (Sup.Ct. N.Y. Co. 1992). Defendants were entrusted with highly confidential personal, medical and financial information because of their superior expertise. They owed a duty to Plaintiffs to use it only for a proper purpose.[10]

---

[10]    An actor ordinarily has a duty to exercise reasonable care when an actor's conduct creates a risk of physical harm. RESTATEMENT (THIRD) OF TORTS:

The statutes cited in the AC (AC ¶ 101-102) – New York's prompt pay law requiring medical claims to be submitted within 120 days (AC ¶ 58) the OIG third party medical billing guidelines (which Defendants themselves identified in their marketing materials (Doc. 18-3, p. 3) and, in particular, HIPAA provide the standards of care.  As the court found in *R. K. v. St. Mary's Med. Ctr., Inc.*, 229 W. Va. 712, 720-721, 735 S.E.2d 715, 723-724 (W. Va. Nov. 15, 2012):[11]

> Several courts have found that a HIPAA violation may be used either as the basis for a claim of negligence *per se*, or that HIPAA may be used to supply the standard of care for other tort claims. *See, e.g., I.S. v. Washington Univ.*, No. 4:11CV235SNLJ, 2011 U.S. Dist. LEXIS 66043, 2011 WL 2433585, at *2 (E.D. Mo. June 14, 2011) ("[T]he Court finds that Count III may stand as a state claim for negligence *per se* despite its exclusive reliance upon HIPAA."); *K.V. v. Women's Healthcare Network, LLC*, No. 07-0228-CV-W-DW, 2007 U.S. Dist. LEXIS 102654, 2007 WL 1655734, (W.D. Mo. June 6, 2007) (concluding that negligence *per se* claim based on HIPAA violation was a state-law claim); *Harmon v. Maury County, TN*, No. 1:05 CV 0026, 2005 U.S. Dist. LEXIS 48094, 2005 WL 2133697, at *3, *4 (M.D. Tenn. Aug. 31, 2005) (remanding case asserting negligence *per se* based on HIPAA violation to state court…); …*Acosta v. Byrum*, 180 N.C. App. 562, 568, 638 S.E.2d 246, 251 (2006)… such state-law claims compliment HIPAA by enhancing the penalties for its violation and thereby encouraging HIPAA compliance. Accordingly, we now hold that common-law tort claims based upon the wrongful disclosure of medical or personal health information are not preempted by the Health Insurance Portability and Accountability Act of 1996.

As the Court in *Byrne v. Avery Center for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 447, 102 A.3d 32 (2014) found:

---

PHYSICAL & EMOTIONAL HARM § 7(a) (2010).  Accordingly, Defendants had a duty not to harm the Patients.  Defendants violated that duty when they purposefully interfered with the Patients obtaining medical care.

[11]     Thus, HIPAA serves as the standard for the negligence claim for the breach of duty owed under *Daly* and can also be the basis for a negligence *per se* action. *R. K. v. St. Mary's Med. Ctr.* also notes that Courts have found that HIPAA in combination with the common law may create a duty to patients: "(*Doe v. Southwest Cmty. Health Ctr.*, No. FSTCV085008345S, 2010 Conn. Super. LEXIS 2167, 2010 WL 3672342 (denying summary judgment on negligence claim alleging failure to safeguard adequately the confidentiality of the plaintiff's protected health care information pursuant to duty imposed by common law and by HIPAA)".

> The availability of such private rights of action in state courts, to the extent that they exist as a matter of state law, do not preclude, conflict with, or complicate health care providers' compliance with HIPAA. On the contrary, negligence claims in state courts support "at least one of HIPAA's goals by establishing another disincentive to wrongfully disclose a patient's health care record."

Defendants' argument that the negligence claims are duplicative of the contract claims does not apply.  First, the duties are broader than any duties enumerated in the contract because they prohibit improper uses of Plaintiffs' confidential information entrusted to Defendants.  Second, the argument cannot apply to the Plaintiffs who were not parties to the contract.  Third, the duty is owed by both Defendants if they received the confidential information, even if they were not both parties to both contracts.

## I.    The Fraud Claims (Counts 4 and 5)[12] Are Pled with Particularity and Are Not Duplicative of the Contract Claim

Defendants misstate the pleading standard for fraud.  Under Rule 9(b), Fed. R. Civ. P., "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Under *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987), "as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based," fraud can be alleged upon information and belief,  *DiVittorio*  at 1247.  It can be sufficient to identify the entity who made the statement and refer to related entities collectively.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 172 (2d Cir. 2015) (citing *DiVittorio*).

---

[12]    The fraud claim against Cerner Corporation (Count 6) is addressed *supra*, p. 5. Defendants concede this claim is collateral to, and not duplicative of, any contract claim. *Id.*

Referring to statements in a defendant's document, such as an Offering Memorandum, can satisfy the Rule 9(b) requirement.  *Id.*

Defendants misconstrue Plaintiffs' factual allegations and cite irrelevant law to the Court.  Count 4 is a promissory fraud claim for the 2014 Sales Order and Count 5 concerns promises collateral or extraneous to the contract.  The Second Circuit holds:

> To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract…; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract…; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996).  Thus:

> "if a promise was made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a 'material existing fact." *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); *see also Channel Master Corp. v. Aluminium Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833 (1958) ("a statement of present intention is deemed a statement of a material existing fact, sufficient to support a fraud action."). And it is precisely such a misrepresentation which can serve as the basis for a claim of fraud. *See Sudul*, 868 F. Supp. at 62 ("a contracting party can be held liable for fraud when, at the time he made a promise, he did not intend to keep it.").

*International CableTel v. Le Groupe Videotron Ltee,* 978 F. Supp. 483, 487 (S.D.N.Y. 1997)(J. Sotomayor).  Plaintiffs allege specific statements, including statements from Cerner's Business Office Services Proposal (dated September 2013 in the footer with a proposal expiration date of 11/5/14) which were made prior to entering into the 2014 Sales Order.  (Doc. 18-3, pp. 3-9; AC ¶¶ 28-30, 33-35, 106) and contemporaneous or earlier problems known to Cerner which demonstrate that Cerner's representations were not true when Cerner made them to Dr. Fung-Schwartz.  (AC ¶¶ 70-72; 40-41).  For example, Cerner already knew in June 2013 that it was having difficulty processing claims, especially for Medicare  (AC ¶¶ 40, 41), a government program subject to

19

regulation.  Yet in 2014 Cerner represented to Dr. Fung-Schwartz that it "adheres to the OIG third party medical billing guidelines to provide you a high level of compliance with applicable laws and regulations."  (AC ¶ 29).  These representations were collateral to the contract.

Likewise, there was no contractual obligation to change personnel assigned to the account, or improve financial results.  These were promises Melissa Jones made (AC ¶¶ 73, 110) on behalf of Cerner to induce Dr. Fung-Schwartz not to leave Cerner sooner. As a result of her reliance, Dr. Schwartz went deeper into debt.  (AC ¶ 78).  These promises and types of damages are not duplicative of contract damages.

Defendants assert that Plaintiff does not come forward with facts establishing fraudulent intent (*scienter*) or any evil motive.  Rule 9(b) allows mental states to be alleged generally.  The Court must view the alleged facts in their totality, not in isolation.  The Court must credit all non-conclusory factual allegations in the complaint and draw all reasonable inferences in Plaintiffs' favor.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  Defendants' state of mind can be inferred from the difference from the representations concerning Accounts Receivable write-offs Cerner made to induce reliance and their actual behavior:

> To ensure A/R metrics are accurate and meaningful, Client will approve writing off or turning over to a collection agency, uncollectable patient balances.  Cerner will seek Client's approval to write off balances where the patient has received three statements and no response of potential payment by the patient.  (Doc. 18-1, p. 7).

Cerner instead wrote off botched claims without first obtaining approval and then concealed the write-offs from the Practice and Dr. Fung-Schwartz.  (AC ¶¶ 55-67). Cerner's scienter can also be inferred from (1) Cerner's scheme to have its lawyer

demand over $100,000 from Dr. Fung-Schwartz and (2) its attempt to ransom Plaintiff's medical records without regard to the Patients' health.

> **J.    The Tortious Interference with Business Relations
> Claims (Counts 11, 13) are Properly Pled**

Count 11 alleges that Cerner interfered with Dr. Fung-Schwartz's and the Practice's relationships with insurers.  What Cerner did – intentionally double billing Medicare – was repeatedly flagged by at least one insurer (a knowledgeable third-party) as fraud – a separate crime or tort.  (AC ¶ 52).  Cerner also intentionally wasted Patients' insurance claims and caused insurers not to issue payments – separate torts.

Count 13 alleges that Cerner's denial of access to the medical records interfered with the relations of Patients to the Practice and Dr. Fung-Schwartz.  Dr. Fung-Schwartz and the Practice did not have basic patient contact information so they could not schedule appointments, verify insurance or even call patients.  (AC ¶ 91).  Dr. Fung-Schwartz could not treat patients or write requested prescriptions for them.  *Id.* Cerner's actions were malicious, dangerous to innocent Patients, prohibited by, *inter alia*, HIPAA and regulations and violated its duty under *Daly v. Metropolitan Life Ins. Co.*

The HIPAA regulations state plainly that what Cerner did was illegal.  In fact, the administrative agency that oversees HIPAA enforcement wrote an opinion (attached as Exhibit 1) stating that what Cerner did was illegal.  Cerner also knew that the medical records belonged to Dr. Fung-Schwartz and refused to return them in any form before it cut off the EMR service and sought to extort or defraud Dr. Fung-Schwartz out of more than $100,000.  Cerner engaged in multiple torts and illegal activities and set out to harm innocent Patients – a wrongful purpose.

### K.   The Tortious Interference with Contract Claims (Counts 10, 12) are Properly Pled

Cerner does not brief Count 10 as pled by Plaintiffs.  Plaintiffs allege that Cerner submitted the false claims and inadequate claims to insurers, which resulted in the insurers breaching their contracts with Dr. Fung-Schwartz.  Defendants do not identify any missing fact or pleading requirement that was not met by the claim.

Cerner fails to brief Count 12 for all the parties.  They assert only that Dr. Fung-Schwartz cannot sustain a claim.  This is untrue because of the contractual relations between and among Dr. Fung-Schwartz, the Practice and the Patients.  For example, the AC alleges that the Practice is the party who contracted with Cerner to provide the EMR services to Dr. Fung-Schwartz (AC ¶ 17) and the Practice is responsible for managing the calendar and appointments – part of the contractual relationship between the Practice and Dr. Fung-Schwartz.  (AC ¶ 91).  Count 12 supports a claim that Dr. Fung-Schwartz could not see patients because Cerner interfered with the Practice's ability to schedule appointments for her, causing the Practice to breach its duties.

### L.   Prima Facie Tort (Count 14): Defendants Intentionally Inflicted Harm

Defendants only challenges the "intentional infliction of harm" element of Plaintiffs' prima facie tort pleading.  Plaintiffs pled this claim in the event Defendants' illegal activities were found to be lawful.  Defendants interfered with Patients' medical care, causing, *inter alia*, cancelled appointments and an inability to prescribe needed medications.  (AC ¶¶ 90-91).  This meets the standard for intentional infliction of harm.

### M.   Defendants Cannot Enforce A Limitation of Liability Clause by a Rule 12 Motion

 In New York limitation of liability clauses are not enforced when there is willful, grossly negligent or recklessly indifferent conduct:

> New York courts will decline to enforce a contractual limitation or waiver of liability clause when there is willful or grossly negligent or recklessly indifferent conduct. *Id.* A claim of gross negligence requires a plaintiff to prove that the defendant failed to "exercise even slight care, scant care, or slight diligence,"

*Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 318 (S.D.N.Y. 2010).  Plaintiffs allege numerous acts of willful, grossly negligent and reckless conduct.

Defendants allege that Dr. Fung-Schwartz is the party against whom the limitation of liability applies.  (Doc. 39, p. 30).  Defendants cite no authority which would allow the limitation to apply to the Practice or the Patients.  They did not agree to any such limitation – and any limitation amount would be arbitrary.  Defendants also allege Cerner Corporation is also not a party to the contract.

Whether the language cited by Defendants is even at issue in this litigation raises complex issues of fact.  The language they cite – from the 2014 Sales Order (Doc. 18-2, p. 7) is part of a document which states:

> This Cerner Sales Order is subject to, and incorporates by reference, the Software License, Hardware Purchase, Services and Support Agreement, dated March 24, 2006, between Client and Cerner **(the 'Agreement')**.

(Doc. 18-2, p. 2)(emphasis in original).  The March 24, 2006 Agreement, however, has a conflicting Maximum liability clause (Doc. 18-1, p. 4).

> Maximum Liability  IN NO EVENT WILL CPP'S LIABILITY AND ANY THIRD PARTY SOFTWARE PROVIDER'S LIABILITY FOR ANY COSTS, EXPENSES OR DAMAGES TO CLIENT OR ANY THIRD PARTY, REGARDLESS OF THE FORM OF THE ACTION, WHETHER BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE EVER EXCEED THE AMOUNT RECEIVED BY CPP FROM CLIENT FOR THE CPP SOFTWARE LICENSE.

It also has a clause stating, "In the event the parties enter into a written order hereunder, such order(s), upon execution by both parties is incorporated into this

23

Agreement ("Subsequent Order").  Both clauses purport to cover third party software providers.  However, the 2014 Sales Order contains yet a third limitation of liability clause for a software provider  (Doc. 18-2, p. 12):

> Section 18 – Limitation of Damages. Licensor shall not be liable to You under any License, negligence, strict liability or other legal or equitable theory: (i) for any consequential, exemplary, incidental or punitive damages, (ii) for cost of procurement of substitute goods, technology or services or (iii) for loss or corruption of data, loss of revenue or interruption of use including, but not limited to, lost computer data, loss of privileges, lost profits or lost savings regardless of whether You have been advised of the possibility of such damages in advance or whether such damages are reasonably foreseeable. This provision shall survive termination of this License.

Defendants exhort the Court to rule at this early stage, while concealing the other, conflicting contract provisions.  The ambiguities and intricacies of the contract documents demonstrate why it is inappropriate for the Court to make a determination on a Rule 12 motion.  According to the Second Circuit, unless contract language is wholly unambiguous, even summary judgment after full discovery is not appropriate. "Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous." *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994) (internal quotations omitted). When the language of a contract is susceptible to different interpretations and "where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Sayers*, 7 F.3d at 1094 (internal quotations omitted).  *Lucente v. IBM*, 310 F.3d 243, 257 (2d Cir. 2002).  Here the terms cannot be "wholly unambiguous," for example, each contract incorporates the other by reference and the terms are contradictory, for example, on calculating maximum liability. Even establishing the form and timing of the agreements is an issue. The parties have not yet had discovery and Plaintiffs may

24

not even have copies of all the different contract documents incorporated into the contracts during the eleven-year relationship of the parties.  It was Cerner who drafted the contracts.

Defendants attempt to argue that their affirmative defense justifies striking paragraphs 4-6 an 8-12 of Plaintiffs' prayer for relief.  First, based on the other causes of action and parties, it is not appropriate to strike the relief.  Second, even if the Court finds some form of limitation of liability applies, none of the competing terms covers the remedies listed in paragraphs 4, 10, 11 or 12.

## III. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss should be denied in its entirety.  Should the Court find any insufficiency in the Complaint, Plaintiff respectfully requests leave to amend under Rule 15, Fed. R. Civ. P.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Respectfully submitted,


/s/ Elizabeth Shieldkret

Dated:  September 9, 2017        By:    Elizabeth Shieldkret (ES 0625)
                                        Attorney at Law
                                        67-20 Exeter Street
                                        Forest Hills, NY 11375
                                        (718) 997-0290
                                        es@eshieldkret.com

                                        Attorney for Plaintiffs,
                                        Jennifer Fung-Schwartz, D.P.M., individually
                                        and/or on behalf of patients, and
                                        Jennifer Fung-Schwartz, D.P.M., L.L.C.,

2074-May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on b...

Case 1:17-cv-00233-VSB    Document 43    Filed 09/09/17    Page 32 of 34

# HHS.gov

**Health Information Privacy**

U.S. Department of Health & Human Services

I'm looking for...

 Search

HHS A-Z Index

HHS > HIPAA Home > For Professionals > FAQ > 2074-May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on behalf of the covered entity?

| |
|---|
| HIPAA for Individuals |
| Filing a Complaint |
| HIPAA for Professionals |
| Newsroom |

Authorizations (30)

Business Associates (45)

Compliance Dates (5)

Covered Entities (17)

Decedents (8)

Disclosures for Law Enforcement Purposes (7)

Disclosures for Rule Enforcement (2)

Disclosures in Emergency Situations (2)

Disclosures Required by Law (6)

Disclosures to Family and Friends (28)

Disposal of Protected Health Information (6)

Facility Directories (7)

Family Medical History Information (3)

FERPA and HIPAA (10)

Group Health Plans (2)

Health Information Technology (36)

Incidental Uses and Disclosures (10)

Judicial and Administrative Proceedings (8)

Limited Data Set (5)

Marketing (18)

Marketing - Refill Reminders (16)

Minimum Necessary (14)

Notice of Privacy Practice (20)

# May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on behalf of the covered entity?

## Answer:

No.

First, a business associate may not use PHI in a manner or to accomplish a purpose or result that would violate the HIPAA Privacy Rule. See 45 CFR § 164.502(a)(3). Generally, if a business associate blocks access to the PHI it maintains on behalf of a covered entity, including terminating access privileges of the covered entity, the business associate has engaged in an act that is an impermissible use under the Privacy Rule. For example, a business associate blocking access by a covered entity to PHI (such as where an Electronic Health Record (EHR) developer activates a "kill switch" embedded in its software that renders the data inaccessible to its provider client) to resolve a payment dispute with the covered entity is an impermissible use of PHI. Similarly, in the event of termination of the agreement by either party, a business associate must return PHI as provided for by the business associate agreement. If a business associate fails to do so, it has impermissibly used PHI.

Second, a business associate is required by the HIPAA Security Rule to ensure the confidentiality, integrity, and availability of all electronic PHI (ePHI) that it creates, receives, maintains, or transmits on behalf of a covered entity. See 45 CFR § 164.306(a)(1). Maintaining the availability of the ePHI means ensuring the PHI is accessible and usable upon demand by the covered entity, whether the PHI is maintained in an EHR, cloud, data backup system, database, or other system. 45 CFR § 164.304. This also includes, in cases where the business associate agreement specifies that PHI is to be returned at termination of the agreement, returning the PHI to the covered entity in a format that is reasonable in light of the agreement to preserve its accessibility and usability. A business associate that terminates access privileges of a covered entity, or otherwise denies a covered entity's access to the ePHI it holds on behalf of a covered entity, is violating the Security Rule.

Third, a business associate is required by the HIPAA Privacy Rule and its business associate

2074-May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on b...

Case 1:17-cv-00233-VSB   Document 43   Filed 09/09/17   Page 33 of 34

Personal Representatives and Minors (13)

Preemption of State Law (10)

Privacy Rule: General Topics (14)

Protected Health Information (2)

Public Health Uses and Disclosures (14)

Research Uses and Disclosures (20)

Right to Access (59)

Right to an Accounting of Disclosures (8)

Right to File a Complaint (1)

Right to Request a Restriction (2)

Safeguards (13)

Security Rule (25)

Smaller Providers and Businesses (154)

Student Immunizations (8)

Transition Provisions (5)

Treatment, Payment, and Health Care Operations Disclosures (30)

Workers Compensation Disclosures (5)

agreement to make PHI available to a covered entity as necessary to satisfy the covered entity's obligations to provide access to individuals under 45 CFR § 164.524. See 45 CFR §§ 164.502(a)(4)(ii), 164.504(e)(2)(ii)(E). Therefore, a business associate may not deny a covered entity access to the PHI the business associate maintains on behalf of the covered entity if the covered entity needs the PHI to satisfy its obligations under 45 CFR § 164.524.

OCR recognizes, however, that there may be certain arrangements that authorize the business associate to destroy or dispose of PHI, or perform data aggregation or otherwise combine data from multiple sources, and where, because of the nature of the services to be performed by the business associate with the PHI as specified in the contractual arrangements between the parties, the covered entity and business associate agree that the business associate will not provide the covered entity access to the PHI. For example, a covered entity may engage a business associate to perform data aggregation of information from multiple sources that renders the disaggregated original source data unreturnable to the covered entity. OCR does not consider these contractual arrangements to constitute the types of impermissible data blocking or access termination described above.

Finally, OCR notes that a covered entity is responsible for ensuring the availability of its own PHI. To the extent that a covered entity has agreed to terms in a business associate agreement that prevent the covered entity from ensuring the availability of its own PHI, whether in paper or electronic form, the covered entity is not in compliance with 45 CFR §§ 164.308(b)(3), 164.502(e)(2), and 164.504(e)(1).

---

Content created by Office for Civil Rights (OCR)
Content last reviewed on September 23, 2016



Sign Up for OCR Updates

To sign up for updates or to access your subscriber preferences, please enter your contact information below.

Sign Up

Office for Civil Rights Headquarters

U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Toll Free Call Center: 1-800-368-1019
TTD Number: 1-800-537-7697

Contact HHS
Careers
HHS FAQs
Nondiscrimination Notice

HHS Archive
Accessibility
Privacy Policy
Viewers & Players

Budget/Performance
Inspector General
EEO/No Fear Act

FOIA
The White House
USA.gov

<u>Certification of Service</u>

I, Elizabeth Shieldkret, hereby certify that a true and correct copy of the foregoing Dr. Jennifer Fung-Schwartz's Memorandum Of Law In Opposition To Defendants' Partial Motion To Dismiss is being electronically filed with the court on September 9, 2017 and is, therefore, being served on Defendants' counsel of record by the court's CM/ECF system.

By:   /s/ Elizabeth Shieldkret
          Elizabeth Shieldkret

26