UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                      :

JENNIFER FUNG-SCHWARTZ, MD, et al.,  :
                                        :

                         Plaintiffs,  :

                                          :

          - against -  :

                                          :

CERNER CORPORATION, et al.,  :

                                        :

                      Defendants.  :

                                          :

---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/2018

17-CV-233 (VSB)

**OPINION & ORDER**

Appearances:

Elizabeth Shieldkret
Elizabeth Shieldkret, Attorney at Law
Forrest Hills, NY
*Counsel for Plaintiffs*

Patrick Fanning
Shook, Hardy & Bacon, LLP
Kansas City, MO

John Michael Lyons
Shook, Hardy & Bacon, LLP
Philadelphia, PA
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs, Dr. Jennifer Fung-Schwartz, individually and/or on behalf of her patients, and

Jennifer Fung-Schwartz DPM LLC (the "Practice" and, together with Fung-Schwartz,

"Plaintiffs"), bring this action against Defendants Cerner Corporation ("Cerner Corp.") and

Cerner Healthcare Solutions, Inc. ("Cerner Solutions" and, collectively, "Cerner") asserting

multiple claims stemming from certain contracts Fung-Schwartz and/or the Practice executed

with Cerner.  Before me is Defendants' partial motion to dismiss under Federal Rules of Civil

Procedure 9(b), 12(b)(1), and 12(b)(6) for failure to plead with specificity, lack of subject matter jurisdiction, and failure to state a claim. Defendants also seek to dismiss Cerner Corp. as a defendant in this action and to strike certain of Plaintiffs' prayers for relief. For the reasons stated herein, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. <u>Background</u>[1]

Fung-Schwartz is a board-certified podiatrist who contracted with Cerner Corp., which at the time was doing business as Cerner Physician Practice, Inc., in March 2006 for the provision of electronic medical records ("EMR") services (the "2006 Agreement"). (Am. Compl. ¶¶ 16–17.)[2] Fung-Schwartz entered an additional contract with Cerner Solutions in 2014 to provide "revenue cycle management" ("RCM"), including billing and insurance services (the "2014 Agreement"), and at that time also entered a new agreement for the continued provision of EMR services. (*Id.* ¶¶ 25–27, Exs. 2–3.)

Prior to entering into the 2014 Agreement, Cerner Solutions represented to Fung-Schwartz that: (1) it would provide "[w]ell trained and experienced revenue cycle and billing professionals," (2) it "delivers performance up to industry standards," (3) it would "[r]eview, scrub and process claims (primary, secondary, tertiary) daily," (4) it would "[g]enerate and mail patients statements in the Client's name and according to a standard statement cycle," and (5) it "manages calls for all Cerner Revenue Cycle Ambulatory Services Clients." (*Id.* ¶¶ 28–32.) In addition, prior to contracting with Fung-Schwartz, "Cerner Solutions represented that it was capable of handling [Fung-Schwartz's] billing and timely obtaining re-imbursement for her

---

[1] I assume Plaintiffs' allegations contained in the Amended Complaint, (Doc. 18), to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiffs' Amended Complaint, filed on June 15, 2017. (Doc. 18.)

services from private insurers and government industry programs." (*See id.* ¶¶ 33–37.) However, at the time Cerner Solutions contracted with Fung-Schwartz, "Cerner knew that it had problems with its system for processing claims and obtaining reimbursements from insurers, particularly for Medicare claims." (*Id.* ¶ 40.) In addition, Cerner made the statement about well-trained staff even though "it knew that it had a problem with inadequate training of its personnel, high turnover and inexperienced workers." (*Id.* ¶ 70.)

Despite and in contrast to these representations, Cerner improperly processed billing and insurance claims, including by submitting duplicate and late claims and writing off charges without consulting Fung-Schwartz. (*Id.* ¶¶ 40–52, 55.) This led to a decrease in revenues for the Practice and strained relationships between Plaintiffs and their patients and insurers. (*Id.* ¶¶ 40–52.) Fung-Schwartz repeatedly contacted Cerner Solutions, including Cerner customer support and Plaintiffs' designated account representative, in an attempt to resolve the issues with Defendants' performance. (*Id.* ¶ 73.) Nevertheless, Cerner never resolved the issues or fixed the problems, despite making representations that it would do so. (*Id.* ¶¶ 73–74.) Plaintiffs ultimately terminated the RCM services associated with the 2014 Agreement, effective June 1, 2016. (*Id.* ¶ 79.)

Plaintiffs admit that Fung-Schwartz has not made a payment to Cerner Solutions since April 2016, although she continues to use the EMR services. (*Id.* ¶¶ 83, 85, 87.) In September 2016 Cerner initiated efforts to collect more than $100,000 it claimed was owed under the parties' 2014 Agreement. (*Id.* ¶ 87.) After additional discussions between the parties, and based on Fung-Schwartz's continued refusal to submit any additional payment, Cerner terminated Fung-Schwartz's EMR services on October 13, 2016, including Plaintiffs' ability to access existing electronic records. (*Id.* ¶ 90.) Without access to their patients' records, Plaintiffs were

unable to contact patients, schedule appointments, enter lab results, prescribe medications, or otherwise treat patients.  (*Id.* ¶¶ 91–92.)

## II.  <u>Procedural History</u>

Plaintiffs filed their Complaint on January 11, 2017.  (Doc. 1.)  On May 31, 2017, Defendants filed a motion to dismiss the Complaint.  (Doc. 17.)  On June 15, 2017, Plaintiffs filed their Amended Complaint.  (Doc. 18.)  On August 18, 2017, Defendants filed a motion to dismiss the Amended Complaint.  (Docs. 38, 39.)   On September 9, 2017, Plaintiffs filed an opposition, (Doc. 43), and on September 15, 2017, Defendants filed a reply, (Doc. 44).

On July 6, 2017, Plaintiffs filed a motion for preliminary injunction to prohibit Defendants from denying Plaintiffs access to their patients' medical records.  (Docs. 23–28.)  On July 25, 2017, Defendants filed an opposition to the motion for preliminary injunction, (Doc. 34), and on August 2, 2017, Plaintiffs filed a reply, (Doc. 35).  On August 4, 2017, I held a hearing on the preliminary injunction motion and denied Plaintiffs' application.  (Doc. 36.)  On August 31, 2017, Plaintiffs appealed my denial, (Doc. 42), and on June 13, 2018, the Second Circuit vacated and remanded the decision for further proceedings, (Doc. 45), which are currently ongoing.

## III.  <u>Legal Standards</u>

### A.  *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that they have standing to sue." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*,

495 F. App'x 183, 188 (2d Cir. 2012) (summary order) (internal quotation marks omitted).  In

considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material

factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs.

*Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895–96 (2d Cir. 2012) (summary order).

Plaintiffs, as the parties asserting subject matter jurisdiction, bear the burden of establishing their

standing as the proper parties to bring their claims.  *See Garanti Finansal Kiralama A.S. v. Aqua*

*Marine & Trading, Inc*., 697 F.3d 59, 65 (2d Cir. 2012).  When a defendant "moves for dismissal

under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1)

challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the

accompanying defenses and objections become moot and do not need to be determined."  *United*

*States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.

1993) (internal quotation marks omitted).

### B.    *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility

that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations:

the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### IV. <u>Discussion</u>

Defendants move to dismiss Plaintiffs' claims for: (i) conversion (Counts 1 and 9); (ii) deceptive business practices under New York General Business Law § 349 (Counts 2, 7, and 8); (iii) negligence (Counts 3 and 18); (iv) fraud (Counts 4, 5, and 6); (v) tortious interference with contract (Counts 10 and 12); (vi) tortious interference with business relations (Counts 11 and 13); (vii) prima facie tort (Count 14); and (viii) unfair competition (Counts 15 and 16). Defendants do not seek dismissal of Plaintiffs' breach of contract claim (Count 17).

Defendants also seek dismissal of all claims brought by Plaintiffs on behalf of Fung-Schwartz's patients due to the absence of subject matter jurisdiction. Defendants further ask that I dismiss Cerner Corp. as a Defendant, claiming that after Plaintiffs' multiple tort claims are dismissed, Plaintiffs' only remaining claim is for breach of contract against Cerner Solutions. Finally, Defendants seek to dispose of certain damages theories based on a contractual limitation of liability provision. I address each of these arguments in turn below.

### A. *Plaintiffs' Standing to Sue on Behalf of Patients*

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction

and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004) (internal quotation marks omitted). It is a well-established tenet of standing that a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). This principle is based on the assumption that "third parties themselves usually will be the best proponents of their own rights," *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (plurality opinion), which serves to foster judicial restraint and ensure the clear presentation of issues, *see Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984). However, the prohibition is not invariable and courts recognize third-party standing under certain circumstances. *Campbell v. Louisiana*, 523 U.S. 392, 397–98 (1998). Although the Supreme Court has "recogniz[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another," it has "not looked favorably upon third-party standing." *Kowalski*, 543 U.S. at 129–30.

A litigant has the ability to "bring actions on behalf of third parties, provided three important criteria are satisfied: [1] the litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute . . . [2] the litigant must have a close relation to the third party . . . and [3] there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 410–11. While Plaintiffs sufficiently plead facts satisfying the first two of these criterion, they fail to demonstrate the third.

With regard to the first of these questions, Plaintiffs outline the various ways in which they were supposedly injured by Defendants, (*see generally* Am. Compl.), and, for the sake of

this argument, Defendants do not challenge these assertions, (*see* Defs.' Mem. 23).[3]  Second,

courts have found that patients' relationships with their physicians constitute a sufficiently close

relationship for the purposes of third-party standing.  *See, e.g.*, *Singleton*, 428 U.S. at 117

(granting physicians third-party standing on behalf of their patients to challenge a statute

prohibiting Medicaid funding for abortions, finding that because of the inherent closeness of the

doctor-patient relationship, physicians could efficaciously advocate their patients' interests); *Pa.

Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 289 (3d Cir. 2002)

(concluding that the psychiatrist-patient relationship satisfies the second criterion for third-party

standing because "[p]sychiatrists clearly have the kind of relationship with their patients which

lends itself to advancing claims on their behalf [and t]his intimate relationship and the resulting

mental health treatment ensures psychiatrists can effectively assert their patients' rights").

     However, Plaintiffs have not sufficiently demonstrated the existence of some obstacle

that would prevent Plaintiffs' patients from asserting claims on their own behalf.  In their

opposition, Plaintiffs proffer the cost of litigation as an obstacle to patients being able to assert

their own claims.  (Pls.' Opp. 8.)[4]  While Plaintiffs rely on *Singleton* to support their position,

they mischaracterize the Supreme Court's finding in that case.  *Singleton* involved a challenge to

a state statute prohibiting abortions that were not "medically indicated" for the purposes of

Medicaid benefits and was brought by physicians who performed such procedures.  428 U.S. at

108.  Contrary to Plaintiffs' characterization, the Court did not find cost to be an obstacle to suit

but rather that a third-party female patient seeking an abortion "may be chilled from such

---

[3] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss Counts 1-16 and 18 of the Amended Complaint, filed on August 18, 2017.  (Doc. 39.)

[4] "Pls.' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss, filed on September 9, 2017.  (Doc. 43.)

assertion by a desire to protect the very privacy of her decision from the publicity of a court suit." *Id.* at 117. The Court also found that "[a] second obstacle is the imminent mootness, at least in the technical sense, of any individual woman's claim." *Id.*

While a party need not face insurmountable hurdles to warrant third-party standing, this condition does require "some hindrance to the third party's ability to protect his or her own interests." *Pa. Psychiatric Soc'y*, 280 F.3d at 290 (finding that "[t]he stigma associated with receiving mental health services . . . coupled with [mental health services patients'] potential incapacity to pursue legal remedies, operates as a powerful deterrent to bringing suit"). Here, Plaintiffs have provided no legitimate support for their contention that cost constitutes a legitimate hindrance to support third-party standing—particularly where, as here, a class action could potentially defray some of the costs of bringing suit—and have proffered no other hindrance to the patients' ability to assert the relevant claims on their own behalf. *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 594 (S.D.N.Y. 2013) (noting that to show hindrance, the litigant "would need to establish that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest" (internal quotation marks omitted)).

Consequently, I find that Plaintiffs do not have standing to litigate claims on behalf of their patients and those claims, or portions thereof, brought on behalf of Plaintiffs' patients are dismissed.[5]

---

[5] Plaintiffs also make a vague allegation that Plaintiffs' patients assigned their rights to bring this suit to Fung-Schwartz. (*See* Pls.' Opp. 7.) Although "[a]s a general rule, the 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury . . . [c]ourts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an 'injury-in-fact.'" *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008). While assignment of a claim need not come in "a particular form," an assignment will satisfy Article III's standing requirements only if "the language [of the assignment] manifests [the previous owner's] intention to transfer at least title or ownership,

### B.     *Plaintiffs' Non-Contractual Claims*

### 1.  Conversion (Count 9)

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (1995)).  "[T]o establish a claim for conversion, a plaintiff must show that:  (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007) (internal quotation marks omitted).

Plaintiffs have sufficiently stated a claim for conversion.  First, Plaintiffs allege that the property subject to conversion is a specific identifiable thing, namely certain patients' electronic medical records and insurance claims.  (Am. Compl. ¶¶ 127, 130.)  While typically tangible property is the subject of a conversion action, *see Harris v. Coleman*, 863 F. Supp. 2d 336, 342 (S.D.N.Y. 2012), "electronic records that were stored on a computer and were indistinguishable from printed documents . . . [are] subject to a claim of conversion in New York," *Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272, 1278 (N.Y. 2007).  Second, Plaintiffs assert that they exercised possession or control over the claims and records prior to the conversion.

---

i.e., to accomplish a completed transfer of the entire interest of the assignor in the particular subject of assignment." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (internal citation and quotation marks omitted).  Here, Plaintiffs base their claim on the fact that their patients signed a form stating, "I authorize that all payments for the financial benefits for professional services rendered be made to Dr. Jennifer Fung-Schwartz, DPM."  (Pls.' Opp. 7.)  This assertion does not allege that title to or ownership of any claim has been assigned and thus hardly constitutes a sufficient assignment of the patients' claims to Fung-Schwartz or her Practice.

Plaintiffs had routine access to and control over the software provided by Defendants, which contained the records of Plaintiffs' patients. (*See generally* Am. Compl. ¶¶ 16–37, 81–92.) Third, Plaintiffs claim that Defendants cut off Plaintiffs' access to the software and records and "took patients' insurance claims and destroyed their value." (*Id.* ¶¶ 81–92, 125–31.) Consequently, Plaintiffs could not treat patients and lost significant business and revenue. (*See, e.g.*, *id.* ¶¶ 77, 91.)

Defendants claim that Plaintiffs' cause of action for conversion fails because Plaintiffs failed to plead both that they made a demand for the return of the requisite records and claims, and that the demand for return was refused. (Defs.' Mem. 10.) It is axiomatic that "[f]or an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." *AD Rendon Commc'ns*, 2007 WL 2962591, at *4. However, a demand is necessary only where the property is held lawfully by the defendant. *See White v. City of Mount Vernon*, 633 N.Y.S.2d 369, 370 (2d Dep't 1995); *see also Emp'rs' Fire Ins. Co. v. Cotten*, 156 N.E. 629, 630 (1927) (noting that the reason for this rule is that "one in lawful possession shall not have such possession changed into an unlawful one until he be informed of the defect of his title and have an opportunity to deliver the property to the true owner" (internal quotation marks omitted)). Where the defendant holds the property *unlawfully*, "no demand and refusal are necessary to render the defendant liable." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (quoting *Nat Koslow, Inc. v. Bletterman*, 197 N.Y.S.2d 583, 586 (N.Y. Sup. Ct. 1960)). Because, as Plaintiffs allege, Defendants have no property interest in the electronic medical records or the patients' insurance claims, (Am. Compl. ¶¶ 81, 126), it is not necessary for Plaintiffs to establish that they made a demand for, and that Defendants refused to return, the

records at issue.[6]

Consequently, Defendants' motion to dismiss Plaintiffs' conversion claim is denied.

## 2. Deceptive Trade Practices (Counts 7, 8)

New York law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. To prevail on a claim under § 349, a plaintiff must assert that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).

The threshold test developed by New York courts for applicability of § 349 is whether the alleged deceptive practice is "consumer-oriented." *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995). Conduct is considered consumer-oriented if it has "a broader impact on consumers at large." *Id.* "'Consumers,' in this context, are 'those who purchase goods and services for personal, family or household use.'" *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (quoting *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)). Transactions between businesses or sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct. *See, e.g.*, *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770–71 (1995); *see also Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc.*, 790

---

[6] Defendants further argue that Plaintiffs' conversion claim is undermined by the fact that Plaintiffs have regained access to the medical records and claims. (Defs.' Mem. 11). However, "[a] party cannot avoid a conversion claim because it eventually returned the property in question." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014). "Returning property to the rightful owner . . . does not absolve defendants of all liability from the alleged conversion. A claim for conversion will exist even when the deprivation is partial or temporary." *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 364 (S.D.N.Y. 2006). The allegations in the Amended Complaint plausibly state a conversion claim, and Plaintiffs' ability to adduce evidence that will support that claim and resulting damages must await discovery.

N.Y.S.2d 79, 80 (1st Dep't 2005) (dismissing deceptive practices claim based on health insurers' conduct toward physicians because "[d]efendants' acts and practices are directed at physicians, not consumers"). Private contract disputes, unique to the parties, do not fall within the prohibitions of § 349. *See Procter & Gamble Co. v. Quality King Distribs., Inc.*, 974 F. Supp. 190, 201 (E.D.N.Y. 1997). Rather, "[t]he typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984).

Plaintiffs claim that Defendants engaged in deceptive business practices by "(1) systematically failing to timely submit proper claims to insurers, (2) representing to Dr. Fung-Schwartz that Defendants had the capability to properly process the claims, (3) representing to Dr. Fung-Schwartz that Cerner complied with OIG third party medical billing guidelines and (4) representing to patients that patients owed balances which were actually amounts covered by insurance," (Am. Compl. ¶ 120), and "intentionally cutting off access to patient medical records," (*id.* ¶ 123). Reading these allegations as true and drawing all inferences in Plaintiffs' favor, I find that Plaintiffs have not plausibly alleged that this conduct is "consumer-oriented." The Amended Complaint describes losses suffered by Fung-Schwartz and her Practice rather than by consumers or the public at large. For instance, Plaintiffs complain that "Cerner caused the Practice to los[e] money," "Cerner caused the Practice and Dr. Fung-Schwartz to lose at least $220,000 of revenue," Defendants billed Plaintiffs at improper rates, and "Dr. Fung-Schwartz and the Practice were harmed as a result of Defendants' deceptive business practices." (*Id.* ¶¶ 55, 65, 77, 121, 124.) Under these circumstances, Plaintiffs' claims must fail because "the gravamen of the complaint is harm to a business as opposed to the public at large"; therefore,

"the business does not have a cognizable cause of action under § 349." *Gucci Am., Inc. v. Duty Free, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003); *see also In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 613 (S.D.N.Y. 2005) (concluding that health benefit providers could not recover under § 349 where defendant allegedly misrepresented safety of a drug intended to treat diabetes because "the nature of this marketing effort—communication from one sophisticated business to another—was quite different from that of any promotion aimed directly at diabetes patients").

Moreover, there is no indication in the Amended Complaint that the transaction at issue involved a standard-issue contract such that other consumers might be subjected to the same alleged deceptive practices in the future, or that the parties possessed significantly varied levels of expertise or bargaining power. *See, e.g.*, *Cont'l Ins. Co.*, 662 N.E.2d at 770 (finding that allegations of sham investigation by insurance company was not consumer oriented because of, inter alia, sophistication of the parties, uniqueness of the agreement, and absence of disparate bargaining positions); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 204 (E.D.N.Y. 2010) (concluding that conduct complained of was not consumer-oriented because it centered on defendant's "inadequate provision of EI software, which is software specifically designed for 'early intervention agencies,' *not* for consumers [and] the limited functionality of the software means that there is virtually no chance that the software would be marketed to, or used by, consumers"); *cf. Oswego Laborers' Local*, 647 N.E.2d at 745 (finding consumer-oriented deceptive practices where "defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts [and because t]he account openings were not unique to these two parties, nor were they private in nature or a single

shot transaction") (internal quotation marks omitted). Rather, Plaintiffs' claims center on

Defendants' inadequate provision of software and services specifically designed for medical

providers and not for consumers. Based on the limited and specific functionality of the software

and services, there is virtually no chance that they would be marketed to, or used by, consumers.

*See Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 205.

The sole case Plaintiffs cite in support of their argument is unpersuasive. (*See* Pls.' Opp.

14–15.) In *Icahn School of Medicine at Mount Sinai v. Health Care Services Corp.*, plaintiff, a

hospital, periodically called defendant, an insurance company, to discuss reimbursement for out

of network services. No. 16-CV-8756 (JSR), 2017 WL 946419, at *1–2 (S.D.N.Y. Feb. 23,

2017). The hospital conveyed the information to individual patients with whom the hospital then

made joint decisions regarding whether to provide certain medical services. *Id.* In numerous

instances, the insurer ultimately paid lower amounts to the hospital than initially discussed,

leaving the patients owing the balance of the bill. *Id.* The court allowed the hospital to proceed

with a § 349 claim because the hospital pled "that it transmitted [defendant insurance

company's] alleged misrepresentations to patients during pretreatment consultations so that

patients could consider this payment information in determining whether to proceed with

treatment." *Id.* at *5 (internal quotation marks omitted). In short, the court found that

defendant's misrepresentations were made not only to the hospital but also to the hospital's

patients which was sufficient to show consumer-oriented conduct. Unlike here, the gravamen of

the complaint in *Ichan* consisted of harm to members of the public, rather than to a business. *Cf.*

*Gucci Am.*, 277 F. Supp. 2d at 274 (finding that trademark infringement plaintiff could not bring

§ 349 action because the "core harm" was to another business and not consumers, despite

consumers' purchase of counterfeit goods).

Thus, because Plaintiffs have failed to adequately allege that Defendants' conduct was consumer oriented, the deceptive business practices claims under § 349 must be dismissed.

### 3. Negligence (Count 18)

To establish a claim of negligence, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd*., No. 03 Civ. 5539(NRB), 2004 WL 1444868, at *9 (S.D.N.Y. June 25, 2004). Under New York law, a breach of contract will not give rise to a negligence claim unless a legal duty independent of the contract itself has been violated. *See, e.g.*, *Clark–Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190, 193–94 (N.Y. 1987). Such a "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* at 194. Where an independent duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct. *See Hargrave v. Oki Nursery, Inc*., 636 F.2d 897, 898–99 (2d Cir. 1980). If, however, a party's claim is premised solely on a breach of contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

Defendants argue that Plaintiffs' negligence claim fails because Plaintiffs have not established any duty Defendants owed them outside of the parties' contractual relationship. (Defs.' Mem. 14–15.) However, the duties alleged in Plaintiffs' negligence claim are broader than those enumerated in any of the parties' contracts.

Plaintiffs' negligence claim alleges that Defendants wrongfully withheld patient medical

information from Plaintiffs and failed to properly and timely submit insurance claims.  (Am. Compl. ¶¶ 174–76.)  Independent of any contractual obligation, Plaintiffs argue that Defendants owed Plaintiffs a duty of care under certain federal and state laws, including the federal Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, regarding Defendants' maintenance of electronic medical records and compliance with medical billing guidelines.  (Am. Compl. ¶¶ 82, 86.)  Several courts have found that such laws may be used to supply the requisite standard of care for negligence claims.  *See, e.g.*, *I.S. v. Wash. Univ.*, No. 4:11CV235SNLJ, 2011 WL 2433585, at *2 (E.D. Mo. June 14, 2011) (opining that it would be appropriate for plaintiff to rely on HIPAA in order to establish the standard of care by which to adjudge whether defendant's acts were negligent); *Graves v. Health Exp., Inc.*, No. 09-0277, 2009 WL 2835778, at *3 (W.D. La. Aug. 31, 2009) ("[D]ue to the lack of a private cause of action under HIPAA, the significance of an alleged violation of the federal statute is limited merely to evidence that defendants may have violated a duty of care owed to plaintiff under state tort (or contract) law."); *Acosta v. Byrum*, 638 S.E.2d 246, 251 (N.C. Ct. App. 2006) ("Here, defendant has been placed on notice that plaintiff will use . . . HIPAA to establish the standard of care.  Therefore, plaintiff has sufficiently pled the standard of care in her complaint."); *see also Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, No. 12-1169, 2014 WL 2738220, at *5 (E.D. Pa. June 17, 2014) (assuming that HIPAA's statutory duty provides the standard of care for a negligence claim).

Because Plaintiffs have asserted that Defendants owed Plaintiffs a cognizable duty of care extraneous to the parties' contractual relationship, that Defendants breached that duty, and that Plaintiffs were harmed as a result, Plaintiffs have sufficiently alleged a claim for negligence.

### 4. Tortious Interference with Business Relations (Counts 11, 13)

To state a claim under New York law for tortious interference with business relations, four elements must be sufficiently pled: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). As a general rule, in order to satisfy the third element of a tortious interference with business relations claim, "the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004). In short, in order to survive a motion to dismiss, the plaintiff must allege that it was "actually and wrongfully prevented from entering into or continuing in a specific business relationship." *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (1st Dep't 1996).

Plaintiffs' tortious interference with business relations claims allege that Defendants interfered with Plaintiffs' relationships with insurers and patients. Defendants do not contest that Plaintiffs have sufficiently pled the first two elements of this claim. (*See* Defs.' Mem. 15–16.) Rather, Defendants argue that Plaintiffs failed to plead sufficient facts to establish that Defendants acted with any wrongful purpose and that Defendants' acts interfered with or injured Plaintiffs' relationships with any third party. (*See id.*) I disagree.

Plaintiffs have alleged improper means amounting to tortious and/or illegal activity. For instance, Plaintiffs claim that Defendants intentionally double billed insurance claims, leading to threats from insurance providers that Plaintiffs would be subject to fraud investigations. (Am. Compl. ¶ 52.) Plaintiffs also assert that Defendants intentionally wasted patients' insurance claims and caused insurers not to issue payments to Plaintiffs, (*id.* ¶¶ 38–52), and that

Defendants' refusal to provide Plaintiffs with access to their patients' electronic medical records was prohibited by HIPAA, among other statutes, (*id.* ¶ 82).  Moreover, Plaintiffs allege that Defendants' acts injured Plaintiffs' relationships with both insurers and patients:  Plaintiffs claim that Defendants' act of double billing insurance claims interfered with Plaintiffs' relationships with insurers, (*id.* ¶¶ 51–54), and that Defendants' denial of access to patients' electronic records prevented Plaintiffs from scheduling appointments, calling patients, treating patients, or writing prescriptions, (*id.* ¶ 91).

Accordingly, Plaintiffs' tortious interference with business relations claims have been properly pled and Defendants' motion to dismiss these claims is denied.

### 5.  Tortious Interference with Contract (Counts 10, 12)

In order to state a claim for tortious interference with contract under New York law, a plaintiff must allege:  (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of the contract," (3) "defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible," (4) "an actual breach" of the contract, and (5) "damages to the plaintiff."  *Lennon v. Seaman*, 63 F. Supp. 2d 428, 433 (S.D.N.Y. 1999) (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (1993)).  "[T]he cases require that the third party, not the plaintiff, must be the one to breach the contract."  *Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ. 1012(JSM), 2003 WL 22271224, at *5 (S.D.N.Y. Sept. 30, 2003).

While Plaintiffs allege the existence of valid contracts between them and third party insurers and patients, (Am. Compl. ¶¶ 133, 141), Defendants argue that Plaintiffs failed to assert that any third party breached its contract with Plaintiffs as a result of Defendants' actions, (*see* Defs.' Mem. 17).  To satisfy the elements of this claim, a plaintiff must specifically allege that a

third party breached its contract.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (finding that plaintiffs failed to plead a claim for tortious interference of contract where plaintiff only alleged that third party "walked away" from contract); *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (dismissing claim because allegations left open possibility that third party lawfully terminated contract or contract was terminable at will); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606(HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim because plaintiff failed to allege relevant terms of contracts with third parties and how third parties breached those terms).  In their Amended Complaint, Plaintiffs do not explicitly allege that any third party insurer or patient breached a contract with Plaintiffs.  At best, Plaintiffs claim that "Defendants intentionally caused the insurers not to issue payment" and "Defendants intentionally caused Dr. Fung-Schwartz to cancel appointments and shut down her practice during the time she was denied access to the [electronic medical records]."  (Am. Compl. ¶¶ 135, 145.)  These claims are insufficient to support a claim for tortious interference of contract.  *Cf. Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07 Civ. 7998(HB), 2008 WL 1710910, at *3 (S.D.N.Y. Apr. 10, 2008) (dismissing claim where claimant merely pled that contract had been "canceled").

Therefore, Defendants' motion to dismiss the claim for tortious interference with contract is granted.

### 6.  Prima Facie Tort (Count 14)

Four elements must be alleged to support a claim of prima facie tort:  (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful.  *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (1984); *see also Ross v. Mitsui Fudosan, Inc*., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998).  The first

element requires "disinterested malevolence," which means that "the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 468 (1983)). Generally speaking, "[p]rima facie tort is a disfavored claim under New York law." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304–05 (S.D.N.Y. 2002).

Plaintiffs make no allegation that "disinterested malevolence" was the sole motivating force behind Defendants' actions. *See Ross*, 2 F. Supp. 2d at 532. Rather, Plaintiffs merely plead that "Defendants intentionally cut off Dr. Fung-Schwartz's access to the [electronic medical records] system" and that "Defendants caused Dr. Fung-Schwartz to cancel appointments and shut down her practice during the time she was denied access to the EMR." (Am. Compl. ¶¶ 155–56.) Therefore, Plaintiffs' claim for prima facie tort is dismissed.[7]

### 7. Unfair Competition Claims (Counts 15, 16)

Under New York law, the tort of unfair competition is a "broad and flexible doctrine" that has been described as "encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person a benefit or property right belonging to another." *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal quotation marks

---

[7] Plaintiffs' claim also fails because "once a traditional tort is established the cause of action for prima facie tort disappears." *Grandome Enters., Inc. v. Stillman*, No. 92 Civ. 7525 (LAP), 1993 WL 119800, at *3 (S.D.N.Y. Apr. 13, 1993) (quoting *Curianao*, 469 N.E.2d at 1327); s*ee also Chen v. United States*, 854 F.2d 622, 628 (2d Cir. 1988) ("[A] set of facts giving rise to a common-law tort is fatal to a prima facie tort claim."). As discussed above, Plaintiffs have succeeded in stating claims for conversion, negligence, and tortious interference with business relations. *See supra* Parts IV.B.1, 3, and 4.

omitted).  The essence of the tort "is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  *Telecom Int'l Am., Ltd. v. A T & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (internal quotation marks omitted).  Bad faith is an essential element of an unfair competition claim.  *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995); *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 Civ. 9478(GEL), 2009 WL 399221, at *13 (S.D.N.Y. Feb. 18, 2009).

Plaintiffs' unfair competition claims are premised on Defendants' alleged false and misleading statements to insurers and patients, including the submission of duplicate claims, and the purported misappropriation of patient electronic records.  (Am. Compl. ¶¶ 160–67.)  Plaintiffs' allegations do not plausibly allege claims for unfair competition.  Plaintiffs merely allege, for instance, that Defendants (i) failed to properly submit insurance claims on behalf of Fung-Schwartz, (*id.* ¶ 161), and (ii) precluded Fung-Schwartz and her patients from accessing electronic medical records, (*id.* ¶ 165).  While Plaintiffs make a nonspecific conclusory claim that these actions were done intentionally and for Defendants' commercial advantage, (*id.* ¶¶ 162, 166), they fail to explain exactly how Defendants benefitted from these actions or how Defendants have "misappropriated the labors and expenditures of another," *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).[8]

Plaintiffs also do not sufficiently assert that Defendants acted in bad faith.  Rather, Plaintiffs claim that Defendants acted negligently with regard to the submission of patient insurance claims.  (*See, e.g.*, Am. Compl. ¶¶ 100–04.)  However, "mere negligence or

---

[8] Plaintiffs also do not sufficiently allege how Defendants are competitors, since Defendants' services appear to be more akin to providing support to Plaintiffs rather than competing with Plaintiffs.

recklessness is insufficient to sustain this claim; instead, a plaintiff must establish bad faith by showing that the defendant acted out of a dishonest purpose." *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co*., 1 F. Supp. 3d 224, 275 (S.D.N.Y. 2014) (internal quotation marks omitted). Nor do Plaintiffs demonstrate that Defendants acted out of a dishonest purpose with regard to withholding access to patient medical records. Instead, Plaintiffs' pleadings imply that Defendants acted with a business purpose; Defendants restricted Plaintiffs' access to the medical records under the parties' contract based on Plaintiffs' failure to satisfy a substantial debt obligation owed to Defendants. (Am. Compl. ¶¶ 87–88.)

For these reasons, Plaintiffs have failed to sufficiently plead their claims for unfair competition and Defendants' motion to dismiss those claims is granted.

### 8. Fraud (Counts 4, 5, 6)

To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury." *Premium Mortg. Corp. v. Equifax, Inc*., 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc*., 668 N.E.2d 1370, 1373 (N.Y. 1996)). "In a federal [ ] action, such a claim must be pleaded with particularity" pursuant to Federal Rule of Civil Procedure 9(b). *Id.* Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A*., 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman*

*v. Morgan Keenan & Co*., 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (internal quotation marks omitted). "The requisite 'strong inference' of fraud may be established either by . . . alleging facts to show that defendants had both motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (internal quotation marks omitted).

Plaintiffs assert three claims of fraud. I address each in turn below.

a. Promissory Fraud (Count 4)

Plaintiffs style their fraud claim in Count Four as one of promissory fraud. (Pls.' Opp. 19.) Under New York law, "in order to state a claim for promissory fraud, it must be alleged that the promisor, at the time of making certain representations, lacked any intention to perform them." *Junk v. Aon Corp*., No. 07 Civ. 4640(LMM)(GWG), 2007 WL 4292034, at *7–8 (S.D.N.Y. Dec. 3, 2007) (internal quotation marks omitted). In order to survive a motion to dismiss, a plaintiff must set out specific facts in the complaint demonstrating that the defendant never intended to satisfy any of the promises at issue. *See L-3 Commc'ns Corp. v. OSI Sys., Inc*., No. 02 Civ. 9144(DC), 2004 WL 42276, at *4 (S.D.N.Y. Jan. 8, 2004).

Plaintiffs have not sufficiently satisfied the standard for alleging a claim of promissory fraud. In Count Four, Plaintiffs claim that prior to entering the 2014 Agreement, Defendants falsely represented to Plaintiffs that: (1) Defendants had the capability to properly process all billing claims; (2) Defendants would comply with certain third party medical billing guidelines; (3) Fung-Schwartz would have to approve any instance of writing off unpaid claims; and (4) Plaintiffs' total cost for RCM and EMR services would not increase. (Am. Compl. ¶ 106.) However, Plaintiffs fail to plead that Defendants never intended to follow through on these representations or that the promisors knew the representations to be false at the time the

statements were made.  *Cf. Junk*, 2007 WL 4292034, at *7–8 (denying motion to dismiss promissory fraud claim where plaintiff alleged that "each one of these representations were false and known by [the speaker] to be false at the time they were made" (internal quotation marks omitted)).  At best, Plaintiffs claim that "[t]o induce Dr. Fung-Schwartz to . . . accept the RCM sales order, Cerner represented that it had 'Well trained and experienced revenue cycle and billing professionals.' . . . [A]t the time Cerner made that statement, it knew that it had a problem with inadequate training of its personnel, high turnover and inexperienced workers and it would not live up to its representations."  (Am. Compl. ¶ 70.)  These assertions do not allege facts establishing that Defendants had no intention of following through with the alleged representations.  *See, e.g.*, *Fariello v. Checkmate Holdings, LLC*, 918 N.Y.S.2d 408, 409 (1st Dep't 2011) (upholding promissory fraud dismissal where "claims were not pleaded with particularity, and were 'bare-bones,' without referencing, for example, specific places and dates of the alleged misrepresentations" and noting that "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim"); *cf. Junk*, 2007 WL 4292034, at *7–8 (denying motion to dismiss promissory fraud claim where plaintiff provided numerous specific facts demonstrating that defendants had no intention of following through with statements); *L-3 Commc'ns Corp.*, 2004 WL 42276, at *4 (denying motion to dismiss promissory fraud claim where plaintiff outlined numerous instances in which promisor indicated it had no intention of following through with representations); *Leve v. Franklin Capital Corp.*, No. 02 Civ. 2116(DC), 2003 WL 446807, at *5 (S.D.N.Y. Feb. 25, 2003) (same), *aff'd*, 148 F. App'x 3 (2d Cir. 2005).

Accordingly, Plaintiffs' promissory fraud claim must be dismissed.

b.  Fraud Collateral to Contractual Agreement (Count 5)

Plaintiffs' fraud claim in Count 5 concerns promises collateral or extraneous to the 2014 Agreement.  (Pls.' Opp. 19.)  "Where a fraud claim 'is premised upon an alleged breach of contractual duties, and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie.'"  *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, at *10 (S.D.N.Y. Apr. 12, 2012) (quoting *McKernin v. Fanny Farmer Candy Shops, Inc*., 574 N.Y.S.2d 58, 59 (2d Dep't 1991)).  Therefore, to maintain a claim for fraud that does not merge with a breach of contract claim, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

Plaintiffs base their fraud claim on the second of these prongs:  they allege that Defendants made fraudulent misrepresentations collateral or extraneous to the 2014 Agreement. As to this category, there is material distinction between a "misrepresentation of present fact," which is actionable, and "a misrepresentation of future intent to perform under the contract," which merges with the contract claim and thus cannot support a separate fraud claim.  *Gosmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010) ("[A] misrepresentation of present fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty."); *see also Town of Haverstraw v. Columbia Electric Corp*., 237 F.

26

Supp. 2d 452, 456 (S.D.N.Y. 2002) (explaining that a fraud claim is viable where a plaintiff is induced to enter a contract based on extraneous misrepresentations but not where the misrepresentation is merely the promise to perform under a contract); *Cont'l Ins. Co*., 662 N.E.2d at 767–68 (citing examples of conduct sufficiently collateral to state a claim in tort including fraudulently inducing the plaintiff to enter into the contract and engaging in conduct to defeat the contract, but noting that when a party is simply trying to enforce its bargain, a tort claim will not lie).

Plaintiffs have failed to allege that Defendants proffered misrepresentations collateral or extraneous to the parties' 2014 Agreement. Indeed, Plaintiffs have not alleged any "misrepresentation of present fact." Rather, Plaintiffs claim that "[d]uring the course of the RCM contract, Defendant knowingly made [ ] false statements to Dr. Fung-Schwartz . . . and withheld material information to induce her not to terminate the RCM contract, including (1) representing to Dr. Fung-Schwartz that Defendants were capable of fixing the billing problems, (2) representing to Dr. Fung-Schwartz that Defendants were capable of fixing the personnel problems and (3) concealing from Dr. Fung-Schwartz the fact that Cerner was writing off claims without her approval." (Am. Compl. ¶ 110.) These facts, at best, amount to little more than allegedly false statements by Defendants indicating their ability and intent to perform under the contract and are not sufficient to support a claim of fraud. *See U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, No. 14 Civ. 4138(KPF), 2015 WL 4388421, at *7 (S.D.N.Y. July 17, 2015) (dismissing claim noting that the promise at issue "need not be an explicit term of the Agreement—it is enough that it amounts to a statement of the manner in which . . . Defendants intended to fulfill their obligations under the contract. Such a claim is not actionable separate and apart from a breach of contract claim."); *Papa's–June Music, Inc. v. McLean*, 921

F. Supp. 1154, 1162 (S.D.N.Y. 1996) ("Because the only fraud alleged arises out of the same facts that serve as the basis for the breach of contract claim, [plaintiff] fails to state a claim for fraud on which relief can be granted."); *see also Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36, 40 (2d Cir. 2010) (summary order) (finding that "[t]he alleged false representations are the essential terms of the contract and failure . . . to honor these terms gives rise to an action for breach of contract, not one in tort").

Accordingly, because Plaintiffs' fraud claim merges with its breach of contract claim under New York law, this claim must be dismissed.

### c.   Common Law Fraud (Count 6)

Lastly, Plaintiffs assert a claim of fraud based on Cerner Corp.'s claim that it was party to the 2014 Agreement when in fact it was not. Plaintiffs claim that Cerner Corp. falsely represented to Fung-Schwartz that it had contracted with her and that she owed Cerner Corp. over $100,000. (Am. Compl. ¶ 114.) In particular, Plaintiffs state that on September 23, 2016, Cerner Corp.'s outside counsel sent an e-mail to Plaintiffs stating in relevant part that the Practice owed a debt of over $100,000 to Cerner Corp. (*Id.* ¶ 87.)

As an initial matter, the 2014 Agreement itself explicitly states that it was "made . . . between Client and Cerner Healthcare Solutions, Inc." (*Id.*, Ex. 2.) Moreover, Plaintiff fails to plead the requisite elements of a common law fraud claim. Plaintiffs do not allege justifiable reliance on the alleged misrepresentation nor do they assert that any such reliance resulted in injury. *Premium Mortg.*, 583 F.3d at 108. Additionally, Plaintiffs fail to satisfy the heightened particularity requirements of Rule 9(b) as they suggest no inference of fraudulent intent. *Lerner*, 459 F.3d at 290–91.

For these reasons, Plaintiffs' fraud claim set forth in Count Six is dismissed.

### C. *Claims against Cerner Corp. and Limitation of Damages Liability*

Defendants contend that because all of Plaintiffs' non-contractual claims fail to state a claim upon which relief may be granted and therefore must be dismissed, Plaintiffs' sole remaining claim in this matter is for breach of contract. (Defs.' Mem. 22.) According to Defendants, due to the plain language of the 2014 Agreement, upon which the breach of contract claim is premised, the proper parties to the contract were Fung-Schwartz individually and Cerner Solutions. (*Id.*) As such, Defendants argue that Cerner Corp. should be dismissed as a party to this action. (*Id.*) Because I find that not all of Plaintiffs' non-contractual claims must be dismissed, Defendants' request to dismiss Cerner Corp. is denied.

Furthermore, Defendants contend that the 2014 Agreement contains an enforceable limitation of liability provision that should summarily dispose of all of Plaintiffs' non-contractually based damages theories. (*Id.* 24–25.) As a result, Plaintiffs' prayer for relief paragraphs (4)–(6) and (8)–(12) should be stricken. (*Id.*) I decline to rule, at this stage, regarding the applicability of the limitation of liability clause contained in the 2014 Agreement, particularly in light of potentially conflicting liability clauses in that agreement, the 2006 Agreement, or other contracts agreed to by the parties, (*see* Pls.' Opp. 23). As such, the question of any limitation on damages shall be reserved until a later date in the case. *Cf. Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994).

### V.  <u>Conclusion</u>

For the reasons stated herein, Defendants' motion to dismiss, (Doc. 38), is GRANTED with respect to Counts 1-8, 10, 12, and 14-16 and DENIED with respect to Counts 9, 11, 13, and 18 of Plaintiffs' Amended Complaint.

The Clerk of Court is respectfully directed to terminate the open motion at Doc. No. 38.

Defendants shall file an Answer to the Amended Complaint within twenty-one days of the date of this Opinion and Order.

SO ORDERED.

Dated: September 13, 2018
      New York, New York

Vernon S. Broderick
United States District Judge