

February 28, 2020

<u>By ECF</u>
Honorable Vernon S. Broderick
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

        RE: *Fung-Schwartz v. Cerner Corporation et al.,* 17 CIV 233

Dear Judge Broderick:

The parties write to seek the Court's guidance on a confidentiality agreement and order.

## **Defendants' Position**

Defendants Cerner Healthcare Solutions, Inc., and Cerner Corporation ask the Court to enter a confidentiality order to permit the parties to label as "confidential" sensitive and proprietary documents requested in written discovery. Defendants propose an order that reflects the Model Protective Order Judges Cave and Parker use, which states: "[I]f counsel determines, in good faith, that such designation is necessary to protect the interests of the client in information that is proprietary, a trade secret or otherwise sensitive non-public information." *See, e.g.,* Model Protective Order of Hon. Sarah Cave.[1] The Parties have agreed to include additional HIPAA language in the confidentiality order. And Defendants are ready and willing to submit their proposed Order (already provided to Plaintiffs) to the Court (but have not yet done so in accordance with the Court's Individual Rules and Practices in Civil Cases No. 3).

Defendants' business includes protecting confidential and sensitive information from disclosure to third parties. Defendant Cerner Healthcare Solutions, Inc., and Cerner Corporation store and process sensitive protected health information (PHI), patient clinical data, and financial records for their healthcare provider clients. Plaintiff's contract with Cerner Healthcare Solutions, Inc., also contains a broad confidentiality obligation that permeates the parties' entire business relationship. Moreover, Defendants' businesses center on inherently confidential processes concerning the processing and handling of PHI, electronic health records, and Defendants' proprietary software and service offerings to its clients.

Defendants and Plaintiffs have both waited to produce documents in anticipation of agreeing to a stipulated protective order. Defendants have produced the documents associated with their Rule 26(a)

---

[1] https://nysd.uscourts.gov/sites/default/files/practice_documents/SLC%20Model%20Protective%20Order.pdf.

disclosures; however, Plaintiffs have yet to produce a single document. Defendants therefore have no real insight into Plaintiffs' damage claims or liability theories (aside from the information Plaintiffs have provided in their pleading). Over the past six weeks, Defendants have diligently attempted to negotiate a stipulated agreement with Plaintiffs' counsel. After providing an initial response, Plaintiffs' counsel has not responded to multiple emails on the issue. The parties have exchanged the following communications:

- On January 13, 2020 at 10:33 am EST, (before the agreed-to production date of January 15, 2020), Defendants' counsel Bethany Shelton (*pro hac vice* pending) sent a proposed confidentiality agreement to Plaintiffs' counsel Elizabeth Shieldkret.
- On January 14 at 5:18 pm EST, Ms. Shelton sent a follow-up email.
- On January 15, 2020 at 4:56 pm EST, (the production date), Ms. Shieldkret responded and proposed the parties use Judge Rakoff's form agreement. Ms. Shieldkret advised Plaintiffs did not want to include an "attorney's eyes only" provision.
- On January 17, 2020 at 2:00 pm EST, Ms. Shelton and Ms. Shieldkret had a near one-hour teleconference discussing the confidentiality agreement and the parties' various positions.
- On January 21, 2020 at 5:38 pm EST, Ms. Shelton sent a proposed order based off Judges' Cave and Parker's Model Protective Order, which removed the attorney's eyes only provision and broadened the scope of the definition of confidentiality. Pursuant to the parties' earlier discussion (and consistent with the nature of the case), Ms. Shelton added HIPAA language and noted the inclusion of HIPAA language for Ms. Shieldkret.
- On January 21, 2020 at 4:20 pm EST, Ms. Shieldkret sent an email noting she did not understand what objections Defendants had to her proposed order but that she would look at the proposed language. Ms. Shieldkret never followed up.
- On January 21, 2020 at 5:27 pm EST, Ms. Shelton responded, referring Ms. Shieldkret to the lengthy conversation the two had on January 17, 2020 and noted the Model Order as a potential compromise—endorsed by the SDNY—the parties could reasonably agree to. Ms. Shieldkret never responded.
- On February 10, 2020 at 3:45 EST, Ms. Shelton sent a follow-up email about the proposed agreement. Ms. Shieldkret did not respond.
- On February 17, 2020, at 12:21 am EST, undersigned defense counsel sent Ms. Shieldkret another letter asking Ms. Shieldkret if she would either agree to the compromise or would allow Defendants to raise the issue with the Court. Defendants also attached a recent confidentiality order this Court had entered and indicated a willingness to draft a new order based off that order if Plaintiffs so desired. Defendants requested a response by February 20, 2020. Ms. Shieldkret did not respond.
- On February 21, at approximately 4pm EST, defense counsel Laura Del Vecchio spoke to Ms. Shieldkret to discuss depositions and asked again about the confidentiality agreement. Ms. Shieldkret indicated she was confused by the "multiple" proposals submitted to her and said Defendants did not need her agreement to take the issue up with the Court.  As a final effort to reach an agreement, Ms. Del Vecchio followed up the conversation with an e-mail asking Ms. Shieldkret if she would be available to discuss the confidentiality agreement on Tuesday, February 25.  Ms. Shieldkret did not respond.

Plaintiffs have issued broad discovery requests seeking sensitive, confidential commercial information, not only about Defendants' business, but also information revealing how Defendants store, process, and handle their healthcare clients' and clients' patients' information. For example,

Plaintiffs seek production of thousands of pages of documents concerning Plaintiffs' 14-year long relationship with Defendants (*see, e.g.,* Request No. 23 and 25). In Request Nos. 23 and 25, Plaintiffs seek all documents "concerning Plaintiffs" and "concerning communications with or about the services Defendants provided to Plaintiffs." Plaintiffs also ask for documents that contain confidential information as to how to interpret Cerner's proprietary software information (Request No. 5), training and business procedures (Requests No. 29-31, 33, 57, 58), and marketing information (Requests No. 13, 21, 22, 61). Defendants dispute that much of the requested information is proportional, relevant, or reasonably tailored to the case, but even many of the relevant and proportional documents contain sensitive and proprietary information that carry the potential for significant harm to Cerner, its clients, and its clients' patients if shared with the public.

Rule 26(c)(1)(G) provides Courts authority to order that trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. A party seeking protection under Rule 26(c) must establish "good cause." *Douglas v. Harry N. Abrams, Inc.*, No. 13-CV-2613 (VSB), 2016 WL 11645646, at *2–3 (S.D.N.Y. Aug. 23, 2016). As this Court has explained, "[t]o determine whether good cause exists, courts balance the 'need for information against the injury that might result if uncontrolled disclosure is compelled.'" *Id.* Moreover, "[t]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995). Dissemination of information revealing how Cerner stores and processes its clients' and its clients' patients' information creates data security risks for both Cerner and Cerner's clients and their patients (including Plaintiffs' clients). Moreover, where, as in this case, "the plaintiffs' allegations necessarily involve an in-depth investigation of the defendants' business structure, operations and policies, . . . , good cause clearly exists during the discovery stage to protect such business information if the public dissemination of such information would prove harmful to defendants' business." *See Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York*, No. 07-CV-1471(RRM)(LB), 2008 WL 4541014, at *2 (E.D.N.Y. Oct. 7, 2008) *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421–22 (E.D.N.Y. 2007) (noting "medical records and trade and proprietary information … is not generally appropriate for public consumption").

Defendants have technical and proprietary software and services that provide a competitive advantage over other healthcare information companies. Information about how Defendants' solutions and systems function, and information about their training and marketing and procedures are proprietary and should not be disclosed to the public. And the parties have already gone to lengths to shield this type of information from public view. The parties agreed in their Agreement to keep confidential "all information provided by one party to the other party or available to such party, which is not generally known to others … provided by or learned about by a party in the course of the parties' dealings with one another … including proprietary information, … information about CPP Software and Third Party Software, computer and software systems and programs, ideas, concepts, the terms of the Agreement, patient data and any other information and not generally known to others." 2006 Software License, Hardware Purchase, Services and Support Agreement ("Agreement") at ¶ 1.10; ¶ 5.

Good cause exists for a protective order to maintain the confidential integrity of the documents Plaintiffs seek, which the parties have already agreed are confidential. *See, e.g., Grief v. Nassau Cty.*, 246 F. Supp. 3d 560, 568 (E.D.N.Y. 2017) ("there is nothing unusual or inherently improper about a so-called 'umbrella' protective order") (*citing United States v. Smith*, 985 F.Supp.2d 506, 546–47

(S.D.N.Y. Dec. 4, 2013)). As such, Cerner asks the Court to enter an Order based on Judges' Cave's and Parker's Model Protective Order.

Defendants' counsel provided the draft of this letter to Plaintiffs' counsel 72 hours before filing with an invitation to include a written portion setting forth Plaintiffs' position (attached as **Exhibit A** to this Letter). Plaintiffs' counsel sent a proposed order for Defendants based on the same form she previously sent, and she added additional provisions pertaining to PHI, including provisions that attempted to impose unilateral requirements on Defendants without holding Plaintiffs to the same standard. Counsel for both parties teleconferenced on February 27, 2020, when Plaintiffs' counsel refused to agree to Defendants' proposed language and agreed Defendants should send the letter to the Court. Plaintiffs have not provided a written portion setting forth their positions and Defendants file this letter without such portion, in accordance with the Court's Individual Rules and Practices No. 3.


PEAK LITIGATION LLP

/s/ Patrick N. Fanning
Patrick N. Fanning
4900 Main Street, Suite 160
Kansas City, MO 64112
Phone: 816-281-5405
pfanning@peaklitigation.com
*ADMITTED PRO HAC VICE*

And

HEIDELL, PITTONI, MURPHY
& BACH, LLP

Laura A. Del Vecchio (LD4992)
81 Main Street
White Plains, New York 10601
Phone: (914) 559-3100
Fax: (914) 949-1160
ldelvecchio@hpmb.com

ATTORNEYS FOR
DEFENDANTS AND
COUNTERCLAIM PLAINTIFF