

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER FUNG-SCHWARTZ, et al.,

    Plaintiffs,

  -against-

CERNER CORPORATION, et al.,

    Defendants.

17-CV-0233 (VSB) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In this action, plaintiffs Jennifer Fung-Schwartz, D.P.M. (Dr. Fung-Schwartz) and her wholly owned podiatry practice, Jennifer Fung-Schwartz, DPM, LLC (the Practice), seek damages from defendants Cerner Healthcare Solutions, Inc. (Cerner Solutions) and its affiliate Cerner Corporation (collectively Cerner) arising in large part out of a revenue cycle management (RCM) contract that Dr. Fung-Schwartz entered into with Cerner Solutions in late 2014. *See* Second Amended Complaint (SAC) (Dkt. No. 54) ¶¶ 24-27 & Exs. 2-3; Opinion and Order (Op.) (Dkt. No. 64) at 2. Under that contract, beginning in December 2014, Cerner Solutions was responsible for reviewing, submitting, and processing insurance claims for Dr. Fung-Schwartz's patients (including Medicare claims), and billing the patients, on behalf of Dr. Fung-Schwartz, for any uncovered balance. *See* SAC ¶¶ 30-31.

Plaintiffs allege, among other things, that defendants made fraudulent representations concerning the Cerner Solutions system, services and capabilities in order to secure the contract, *see* Op. at 2-3; SAC ¶¶ 28-37, 40, 70, 103, and that during the contract period they "improperly processed billing and insurance claims," which caused Medicare and private insurers to reject numerous claims and "decreased revenues for the Practice." Op. at 3; *see also* SAC ¶¶ 43, 81-82 (alleging that Cerner's misconduct caused "a marked decline in revenue," which in turn required Dr. Fung-Schwartz to "borrow money to cover her expenses"). After the Cerner Solutions

contract was terminated on June 1, 2016, "the Practice's revenues returned to the level they were before [Dr. Fung-Schwartz] contracted with Cerner." *Id*. ¶ 84.

Plaintiffs seek compensatory and punitive damages, including more than $200,000 in medical billing that defendants allegedly "failed to submit or obtain from third parties." *Id*. at 25-26. In addition, plaintiffs seek compensation for damage to the value of the Practice itself, caused by a loss of "goodwill" from patients who did not return to the Practice, or did not refer new patients to the Practice, after their insurance claims were mishandled.[1]

After several rounds of motion practice (including an appeal) during which no discovery took place, the district judge held an initial pretrial conference on November 14, 2019, and issued a Case Management and Scheduling Order which required the parties to complete all fact discovery by February 28, 2020 and all expert discovery by May 1, 2020. (Dkt. No. 72.) On March 2, 2020, the case was referred to me for general pretrial management (Dkt. No. 77), and on March 4, 2020 – at the parties' request – I extended the fact discovery deadline to May 8, 2020, and the expert discovery deadline to July 2, 2020. (Dkt. No. 80.) Thereafter, in light of the COVID-19 pandemic, I extended all unexpired discovery deadlines for another 30 days and ordered that depositions be conducted remotely. (Dkt. No. 83.)

By Order dated April 4, 2020, I scheduled a telephonic discovery conference for May 11, 2020, and directed the parties to submit a joint letter, prior to the conference, identifying any disputes that the parties had been unable to resolve through the meet-and-confer process; "succinctly stat[ing] the parties' respective positions, without extended argument," as to each

---

[1] *See* SAC ¶ 68 (alleging that after an insurer rejected a claim, "Cerner still sent statements in Dr. Fung-Schwartz's name to patients that make it look like they owe the money"); *id*. ¶ 69 (alleging that "[o]ne patient" contacted the Practice because although she "knew she had insurance that was supposed to cover the claim," she had received a statement "which led her to believe that Dr. Fung-Schwartz was attempting to collect the claim from the patient").

such dispute; and proposing a schedule to complete fact discovery, including depositions. (Dkt. No. 85.) The page limit for such letters is four pages. Moses Ind. Prac. § 1(d). However, on May 6, 2020, the parties submitted a 15-page joint letter (Joint Ltr.) (Dkt. No. 86) identifying – and arguing – numerous disputes concerning the parties' respective written discovery responses, some of which were apparently raised for the first time the evening before the letter was submitted, during a telephone conference between the parties' counsel at 5:00 p.m. on May 5, 2020. *See* Joint Ltr. at 8-9.

Neither side proposed a schedule for depositions. Plaintiffs asserted that until defendants "identify the potential witnesses in response to the interrogatories and document requests," they could not "decide which ones to depose." Joint Ltr. at 7. Defendants "forgot to raise" the issue of depositions during the May 5 call, *id*. at 12, and apparently also forgot to attach the "proposed set of deposition guidelines" that they suggest to "govern the parties during the upcoming depositions." *Id*.

This Order memorializes the rulings made during the May 11 conference. sets out the Court's underlying analysis (where appropriate) and resets the parties' discovery deadlines going forward.

    1.    <u>Financial Statements and Tax Returns</u>

Plaintiffs have produced extensive information concerning the Practice's revenues before, during and after the RCM contract with Cerner, "including but not limited to reports of revenue through the end of 2019, Accounts Receivable reports and 1099s from insurers and Medicare for the period 2013-2018." Joint Ltr. at 6. However, they have not produced comparable information concerning the Practice's expenses, nor any standard financial statements – such as profit and loss statements, cash flow statements, and balance sheets – that would reflect its overall financial

performance. Consequently, in Request for Production (RFP) No. 1 contained within their Second Request for Production of Documents, defendants asked for "all tax records, tax returns, profit and loss statements and balance sheets regarding [the Practice] from 2012 through 2020." (Dkt. No. 86 at ECF page 74.) Defendants assert that because plaintiffs "seek to recover damages based on an alleged comparison between Defendants' revenue cycle management services to those of Plaintiffs' previous and subsequent providers," they are entitled to discovery concerning the financial performance of the Practice before, during, and after the approximately 18-month period during which Cerner Solutions was providing RCM services. Joint Ltr. at 9. Additionally, defendants argue, information concerning the Practice's expenses and profits (or losses) – not just its revenue – is highly relevant to plaintiffs' claim for damages, particularly their claim that defendants damaged the value of the Practice itself, and to Dr. Fung-Schwartz's allegation that she was required to borrow money "to cover her expenses." *Id*. at 11.

Plaintiffs do not quarrel with defendants' right to see pre-Cerner and post-Cerner financial information, but seek to limit the date range to 2013-2018 (which includes, roughly, two full years before and after the period during which Cerner provided RCM services to the Practice). *See* Joint Ltr. at 11. The Court agrees that the period 2013-2018 is sufficient to allow defendants to compare the Practice's "year over year business performance." *Id*.

In addition, plaintiffs argue they have already provided adequate financial information by producing documents reflecting the Practice's revenues during the relevant years, and should not be required to disclose the Practice's corresponding expenses or resulting profits (or losses), because – as their counsel explained during the May 11 conference – "the claim is not for [lost] profits; the claim is for lost revenue." The Court disagrees. As discussed during the conference, a plaintiff seeking damages for unbilled and/or uncollected insurance claims, and for damage to

4

the value of a professional medical practice, cannot unilaterally limit the opposing parties' analysis to the revenue side of the ledger. *See Fox v. Cheminova, Inc.*, 2006 WL 508087, at *7 (E.D.N.Y. Mar. 1, 2006) (defendants are "not bound by the confines of damages data considered by plaintiffs' experts"; rather, they are "entitled to relevant discovery of damages data in order to formulate defendants' own theory on the computation of . . . damages"). Defendants are entitled to at least some discovery into the expenses corresponding to the allegedly lost revenue, as well as the expenses that allegedly required Dr. Fung-Schwartz to borrow money. They are also entitled to consider both sides of the ledger in connection with the claim of damage to the value of the Practice as a whole. *See*, *e.g.*, *Morrissey v. Morrissey*, 153 A.D.2d 609, 610, 544 N.Y.S.2d 643, 645 (2d Dep't 1989) (plaintiff's expert "properly applied the capitalization of net earnings formula" to determine value of defendant's medical practice).

Finally, plaintiffs resist producing any tax returns, arguing that defendants have not shown "both that the tax returns are relevant and that there is a compelling need for them." Joint Ltr. at 6-7. Plaintiffs correctly state the heightened standard for discovery of tax returns. *See*, *e.g.*, *Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 660 (2d Cir. 2018) (quoting *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 294 (E.D.N.Y. 2011)) ("The requesting party bears the burden of establishing both relevancy and a compelling need for the tax returns."). However, as noted above, defendants have established the relevance of the Practice's expenses and profits (or losses), which are revealed on the Schedule C that Dr. Fung-Schwartz files with her personal tax returns.[2] Moreover, during the May 11 conference, plaintiffs conceded that they did not regularly

---

[2] In a post-conference letter dated May 12, 2020 (Dkt. No. 87), plaintiffs confirmed that the Practice is a "pass-through entity," wholly owned by Dr. Fung-Schwartz, which does not separately file a tax return. Instead, for federal tax purposes, Dr. Fung-Schwartz reports the earnings of the Practice on a Schedule C attached to her personal tax return. *Id*. at 1. Schedule C (entitled "Profit or Loss from Business (Sole Proprietorship)") requires the taxpayer to report the gross receipts, cost of goods sold, gross profit, expenses (broken down into various categories,

prepare profit-and-loss statements or other standard financial statements *except* for tax purposes. Since the Schedule C is the only contemporaneously-prepared document that presents the financial information to which defendants are entitled, the Court is persuaded that there is a "compelling need" for the production of that schedule for the relevant years.[3] Consequently, plaintiffs must produce Dr. Fung-Schwartz's Schedule C (or Schedule C-EZ, if used), together with any attachments, schedules or exhibits thereto, with respect to the years 2013-18, inclusive. The tax documents will be deemed "attorneys' eyes only," and shall not be further disclosed or disseminated except to the parties' experts, on terms and conditions to be negotiated between the parties in good faith, or pursuant to the further order of this Court.

2. Third-Party Contractors

Under Local Civil Rule 26.3(3), a request to "identify" a person (including a corporation or other business entity) means to provide that person's "full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment." Defendants must supplement their answers to plaintiffs' Interrogatories No. 1 and 2 (Dkt. No. 86, at ECF pages 17-18), as well as any other interrogatories asking defendants to

---

and "net profit (or loss)" of her wholly-owned business. *See* https://www.irs.gov/pub/irs-pdf/f1040sc.pdf (last visited May 22, 2020).

[3] Plaintiffs suggest that Dr. Fung-Schwartz's personal tax returns may present a misleading picture of the financial information relevant to this action, because her Schedule C includes revenues and expenses associated with a segment of her practice governed by a "capitation" contract, under which her income did not depend on Cerner's submission and collection of individual insurance claims. For this reason and others, plaintiffs offered, at the May 11 conference, to ask their accountant to review the Practice's books and records for the relevant period and to prepare fresh financial statements, for past years, for the purpose of producing them in this action. Plaintiffs are of course free to prepare new financial statements for use in this litigation, and if they do so they must promptly provide them to defendants. I will not, however, require defendants to accept financial statements prepared after this action was filed *instead of* the contemporaneous records that were made in the ordinary course, albeit for tax purposes, during the years in question.

"identify" a person, to provide the information contemplated by Rule 26.3(3). Additionally, defendants shall supplement their answer to Interrogatory No. 2 – which asks for the identity of the third parties providing "modules or services" used by Cerner to provide services to plaintiffs – to provide, for each listed corporation or other business entity, the name, title, and contact information of the natural person responsible for that entity's relationship with Cerner.

Plaintiffs also seek electronically stored information (ESI) which is in the possession of those third parties but which, according to plaintiffs, Cerner "has the ability to obtain" from them. Joint Ltr. at 5. Fed. R. Civ. P. 34(a)(1) requires a party to produce otherwise-discoverable documents that are in its "possession, custody, or control." "'[C]ontrol' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997). However, when the party served with the request for production denies that it has possession, custody or control of the subject documents, "the discovering party must make an adequate showing to overcome this assertion." *Id.* (quoting *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992)). Plaintiffs have not made such a showing here. Consequently, defendants will not be required to obtain documents from the third-party contractors for production to plaintiffs in this action. Plaintiffs may, of course, proceed pursuant to Fed. R. Civ. P. 45 by subpoena.

3. Documents Relevant to Plaintiffs' Fraud Claim

Plaintiffs seek broad discovery into complaints about Cerner's systems and services made by "any" of its customers, by those customers' patients, and by "insurers," arguing that such complaints, if made before Dr. Fung-Schwartz contracted with Cerner Solutions for RCM services, are relevant to her fraud claim. *See* Joint Ltr. at 3-4. She further asserts that complaints

from other customers, at any time, are relevant to Cerner's affirmative defense "that it provided the services but the problem lay with Dr. Fung-Schwartz" or elsewhere. *Id*. at 4. Defendants contend that the discovery sought is overbroad, burdensome, and disproportionate. They argue that if they are required to search for and produce other complaints, the obligation should be limited to complaints that were made before Dr. Fung-Schwartz entered into the Cerner RCM contract and that came from customers using the same or similar RCM services.

I agree. In response to plaintiffs' RFP 45 (Dkt. No. 86 at ECF page 50), defendants must produce documents concerning complaints made by individual physicians or private medical practices about Cerner Solutions' BOS products and services within the three-year period ending with the execution of the RCM contract between Dr. Fung-Schwartz and Cerner Solutions. In response to plaintiffs' RFP No. 46 (Dkt. No. 86 at ECF page 51), defendants must produce complaints received from Dr. Fung-Schwartz's patients, but not from patients of defendants' other customers. Defendants need not produce documents in response to plaintiffs' RFP No. 47 (*id*.), seeking complaints from "insurers."

    4.    <u>Contemporaneous Privilege Log</u>

To the extent that any responsive documents are withheld on the basis of privilege, the withholding party shall promptly serve a privilege log in accordance with Local Civil Rule 26.2.

    5.    <u>Continued Discovery Conference</u>

The next discovery conference will take place via teleconference on **May 27, 2020 at 11:00 a.m**. At that time, counsel are directed to call the Court's conference line **(888) 557-8511** and enter the access code **7746387**.

    6.    <u>Meet-and-Confer</u>

As discussed during the May 11 conference, the parties were required to meet and confer (remotely) in good faith no later than **May 15, 2020**, for **at least two** hours, to discuss all

unresolved discovery disputes. They are further required, no later than **May 22, 2020**, to submit a joint letter, no longer than six pages in the aggregate (three pages each), succinctly outlining, on an issue-by-issue basis which discovery issues remain in dispute and what relief is sought.

    7.    <u>Discovery Schedule</u>

In the absence of any specific proposal from the parties, the deadline for the completion of fact discovery, including depositions, is EXTENDED to **July 31, 2020**. The deadline for the completion of expert discovery is EXTENDED to **September 30, 2020**.

    8.    <u>Compliance with Court Orders and Rules</u>

The parties are reminded that they must comply with all of this Court's orders and Individual Practices, including provisions governing page limits and requiring advance permission to exceed otherwise-applicable page limits. Further violations may result in sanctions.

Dated: New York, New York
       May 22, 2020                  **SO ORDERED**.

                                       **BARBARA MOSES**
                                       **United States Magistrate Judge**