

# Elizabeth Shieldkret

Attorney at Law

67-20 Exeter Street
Forest Hills, NY 11375

Phone:  (718) 997-0290                                    Email:    es@eshieldkret.com
Fax:     (718) 997-0291                                    Web:    www.eshieldkret.com

May 22, 2020

By ECF

Honorable Barbara C. Moses
United States Magistrate Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

Re:    *Fung-Schwartz v. Cerner*, 17 Civ. 233 (VSB)(BCM)

Dear Magistrate Judge Moses:

We write jointly pursuant to the Court's directions at the Conference on May 11, 2020.
Counsel held a meet and confer by telephone on May 18, 2020 for more than 2 hours.

1.   Plaintiffs' Position

Judge Broderick has ruled that Plaintiffs properly pleaded the elements of negligence,
conversion of the medical records and the insurance claims and tortious interference
with business relations with patients, insurers and Medicare.  (Doc. 49, pp. 10-12, 16-19).
He also found the allegations support a cause of action for promissory fraud (Doc. 65,
pp. 8-14).  Yet Defendants still refuse to produce entire categories of documents,
including documents concerning the facts Judge Broderick relied on in his opinions as
relevant to allowing the claims to proceed.  For example, Judge Broderick found:

> Plaintiffs' negligence claim alleges that Defendants wrongfully withheld
> patient medical information from Plaintiffs and failed to properly and
> timely submit insurance claims. (Am. Compl. ¶¶ 174-76.) Independent of
> any contractual obligation, Plaintiffs argue that Defendants owed
> Plaintiffs a duty of care under certain federal and state laws, including the
> federal Health Insurance Portability and Accountability Act ("HIPAA"), 42
> U.S.C. § 1320d, regarding Defendants' maintenance of electronic medical
> records and compliance with medical billing guidelines. (Am. Compl. ¶¶
> 82, 86.) Several courts have found that such laws may be used to supply
> the requisite standard of care for negligence claims.
>
> *           *           *
>
> Because Plaintiffs have asserted that Defendants owed Plaintiffs a
> cognizable duty of care extraneous to the parties' contractual relationship,

> that Defendants breached that duty, and that Plaintiffs were harmed as a
> result, Plaintiffs have sufficiently alleged a claim for negligence.
>
>        *            *            *
>
> Plaintiffs have alleged improper means amounting to tortious and/or
> illegal activity.  For instance, Plaintiffs claim that Defendants intentionally
> double billed insurance claims, leading to threats from insurance
> providers that Plaintiffs would be subject to fraud investigations. (Am.
> Compl. ¶ 52.) Plaintiffs also assert that Defendants intentionally wasted
> patients' insurance claims and caused insurers not to issue payments to
> Plaintiffs, (id. ¶¶ 38–52), and that Defendants' refusal to provide Plaintiffs
> with access to their patients' electronic medical records was prohibited by
> HIPAA, among other statutes, (*id.* ¶ 82).
>
>        *            *            *
>
> Plaintiffs assert that they exercised possession or control over the claims
> and records prior to the conversion. Plaintiffs had routine access to and
> control over the software provided by Defendants, which contained the
> records of Plaintiffs' patients. (See generally Am. Compl. ¶¶ 16-37, 81-92.)
> Third, Plaintiffs claim that Defendants cut off Plaintiffs' access to the
> software and records and "took patients' insurance claims and destroyed
> their value." (Id. ¶¶ 81-92, 125-31.) Consequently, Plaintiffs could not treat
> patients and lost significant business and revenue. (See, e.g., id. ¶¶ 77, 91.)

(Doc. 49, pp. 16-19, pp. 10-11) (Paragraph 77 cited by the Court alleged revenue loss of
at least $220,000.  (Doc. 18, ¶ 77).  Judge Broderick called the amount "significant.")  Yet
Cerner completely refuses to produce documents concerning, *inter alia*, double billing
(Request No. 40), obligations under HIPAA (e.g., Document Reqs. Nos. 19, 30, 31, 48, 57,
58, 59 and Interrogatory No. 8).  Judge Broderick has already found that Plaintiffs'
allegations are relevant and, if true, support a finding for Plaintiff on these causes of
action.  Cerner's refusal to provide relevant, probative discovery will hamper Plaintiffs'
ability to obtain a full and fair hearing at trial.  Judge Broderick also found:

> Plaintiffs have remedied their prior pleading deficiencies by alleging the
> following facts that give rise to an inference of fraudulent intent: ..."Cerner
> had no plan to improve the quality of its RCM submissions of Medicare
> claims and took no additional measures to address the issue," (id. ¶ 75).
>
>        *            *            *
>
> I find that Plaintiffs have stated a claim for fraud in the inducement of the
> 2014 Agreement based on the assertions set forth in the Proposal: (1) that
> Defendants had the capability to properly process the claims, (2) that
> Defendants would provide "a high level of compliance with applicable
> laws and regulations" and (3) that Plaintiffs' account would be handled by
> well-trained and experienced personnel.

(Doc. 64, pp. 12, 14).  Plaintiffs are also entitled to test Cerner's affirmative defenses and
counterclaims, for example, that (1) Cerner performed under the contract, (Doc. 65, p.
17, ¶ 12), (2) that a third party caused the harm to Plaintiffs (Doc. 65, ¶ 160) and (3) that
Cerner is capable of transferring the medical records to any other vendor Plaintiffs

choose. (Doc. 65, p. 20, Count 3, ¶ 26). As just one example, at the same time Defendants allege their sub-contractors were responsible for Cerner's numerous failures to perform (Doc. 65, ¶ 160), Cerner refuses to produce documents which show what these alleged contractors were responsible for. (Req. Nos. 1, 2, 14, 18, 19).

<u>Cerner's Initial Disclosures and Response to Interrogatory No. 9:</u> Cerner refuses to furnish any calculation of its alleged damages under its *quantum meruit* theory, including profits, costs, and relevant discovery of damages data in order to formulate Plaintiffs' own theory on the computation of damages. The interrogatory seeks Cerner's damages calculation for each category of Plaintiffs' damages, but Cerner refuses to provide any.

<u>Requests Nos. 1, 2, 14, 18, 19:</u> Cerner blames its sub-contractors for the disruption to Plaintiffs' services (Doc. 65, ¶¶ 159, 160), yet refuses to produce the contracts and correspondence with their contractors concerning each one's responsibilities so Plaintiffs could test Cerner's claims. (Req. Nos. 1, 2, 14, 18). The documents are relevant to, *inter alia*, Cerner's affirmative defenses, contract, *quantum meruit* (for expenses) claims and Plaintiffs' conversion claims (dominion). The Business Associate Contracts (Req. No. 19) are HIPAA documents, explicitly called for by Cerner's contract (Doc. 54-1, p. 9 ¶ 10). They relate to, *inter alia*, Cerner's contract claim and Plaintiffs' conversion, tortious interference, negligence, contract and fraud claims.

<u>Request Nos. 13, 52, 53:</u> Req. No. 13 is relevant to, *inter alia*, Cerner's counterclaim that its medical records can be migrated to other platforms and are also probative of the duty of care in the industry. Cerner has just revealed that its *quantum meruit* damages theory will be based on the costs and profitability of the entire company, not the products lines and services which Cerner provided to Dr. Fung-Schwartz. Cerner refuses to provide any costs (Req. No. 52) for providing the EMR or pricing information (Req. No. 53), which are relevant to, *inter alia*, Cerner's *quantum meruit* claim.

<u>Request No. 17:</u> This is relevant to, *inter alia*, Cerner's contract counterclaim and affirmative defenses, including, *e.g.*, Cerner's allegations regarding interpretation of contract terms.

<u>Request No. 21:</u> Cerner asserts that it is capable of exporting the medical records and that Plaintiffs are obligated to pay for that export. The parties contracted in 2006 for the medical records the contract does not address migration costs. This request seeks to test Cerner's allegations in, *inter alia*, its counterclaims. (Doc. 65, p. 20, ¶ 26).

<u>Request Nos. 22:</u> The documents called for by Req. No. 22 should cover the same time period as the Court ruled for the customer complaints. (Doc. 89, p. 8).

<u>Request No. 26:</u> Cerner stated that "Cerner provides BOS services to thousands of customers and the solution is very successful." (Doc. 28, p. 15). Cerner made this an issue in its collection efforts, which are part of, *inter alia*, Plaintiffs' tortious interference and conversion claims. It also is related to Cerner's contract claim.

<u>Request No. 29:</u> Cerner refuses to produce any performance documents about the employees who handled Plaintiffs' account. These are relevant to, *inter alia*, negligence and promissory fraud.

Honorable Barbara C. Moses                                              Page 4 of 5
May 22, 2020

Request No. 30:  Cerner admits the documents are relevant but refuses to produce documents after June 2016.  The later documents are relevant because Cerner continued to send statements to Plaintiffs' patients through at least August 2016.

Interrogatory No. 8 and Request Nos. 31, 48, 57, 58, 59:  These requests are central to, *inter alia*, Cerner's counterclaims for breach of contract and *quantum meruit* as well as Plaintiffs' claims for conversion, tortious interference, negligence, breach of contract and fraud.  For example, changes in the procedures and policies over time are relevant to intent for fraud and conversion, the standard of care for the negligence claim and Cerner's contract claim. As another example, HHS FAQ 2074 (about HIPAA) and documents related to it are relevant to intent for, *inter alia*, tortious interference, conversion, fraud and the standard of care for negligence.

Request Nos. 37, 38, 39, 40:  Cerner produced running monthly summary reports but won't produce the underlying data for those reports.  This is relevant to, *inter alia*, Plaintiffs' claims for conversion, tortious interference, negligence, breach of contract and fraud as well as Cerner's counterclaim for breach of contract.

Request No. 41:  Statistics Cerner had about its claims processing abilities are relevant to, *inter alia*, the promissory fraud claim.  Cerner's performance statistics during the term of the contract are relevant to Cerner's intent.  (Doc 64 at 12).

Request Nos. 49, 50:  These requests are relevant to, *inter alia*, Cerner's *quantum meruit* and declaratory judgment claims as well as Plaintiffs' conversion claim.  For example, Defendants claim the medical records can be migrated to any other system without loss of data. (Doc. 65, p. 20, ¶¶ 26, 31).

Request No. 61:  This is relevant to, *inter alia*, Defendants' counterclaim about migrating the EMR data as well as both parties' breach of contract claims.


2.  Defendants' Position

Plaintiffs' counsel and Defendants' counsel participated in a 5-hour, 6 minute, "meet-and-confer" conference on Monday, May 18, 2020 (a conference which Defendants had to request and initiate). Instead of focusing on the discovery requests Plaintiffs first advised Defendants and the Court were at issue in counsel's May 6 letter to the Court, Plaintiffs' counsel opted to read every single one of Plaintiffs' 61 document production requests during the 5.1 hour long conference. Instead of accounting for Defendants' meritorious objections or attempting to negotiate a logical middle ground, Plaintiffs' counsel did not agree to modify Plaintiffs' requests one bit. If Defendants would not blindly agree to withdraw their objections (often to requests that were, putting it charitably, vague,  over broad, and outside the scope of the dispute), Plaintiffs simply moved on to the next request. Despite consuming many hours, Plaintiffs' counsel made no effort whatsoever to narrow or focus Plaintiffs' requests during the marathon May 18 call. (Even more puzzling, Plaintiffs' counsel attempted to re-visit and expand requests the Court had already ruled on during the parties' previous conference.) Then, in lieu of working collaboratively to provide a joint letter to Defendants' counsel in a timely fashion, Plaintiffs' counsel decided to wait until 6:41 p.m. Eastern on Friday, May 22 (after

business hours on a holiday weekend), to provide Defendants' counsel with a draft of the discovery letter Plaintiffs' counsel intends to provide to the Court to describe the parties' progress (which makes it impossible for Defendants to request more space for a response). Defendants are not certain why Plaintiffs have no interest in attempting to negotiate a logical middle ground or to pare down document requests (especially in a case with significant proportionality issues). But because Defendants have about 1½ pages to respond (and because Defendants have already used ink on the bizarre meet-and-confer process), they will note Plaintiffs' document production requests remain hopelessly over broad, not proportional to the amount in controversy, and are generally not relevant to resolving any issue in the dispute. As but one example, Plaintiffs' counsel inexplicably asks Defendants to generate and produce billing information from Plaintiffs' own patient database (a database she has complete access to and can pull documents from at any time). (*See, e.g.*, RFPs 37-40.)

A. <u>Plaintiffs' Deposition/Documents</u>: During the May 18 call (and in writing), Defendants' counsel asked Plaintiffs' counsel to provide Plaintiff's available dates within a three-week window from June 1-19 to give her deposition. Defendants need the deposition to shed light on Plaintiffs' arguments (which, thus far, are superficial and not tied to any actual evidence or testimony) and to understand fully Plaintiffs' damage contentions. Plaintiffs have yet to provide dates. Defendants ask the Court to require Plaintiffs' counsel to provide dates for Plaintiff's deposition. Defendants attach a proposed remote deposition protocol as *Exhibit A*. Defendants also need Plaintiffs' billing documents from 2016-2018.

B. <u>Brief summary of issues with Plaintiffs' document production requests</u>: Even though Plaintiffs would not budge one bit on any request (no matter how far afield), Plaintiffs' representations about what Defendants have agreed to produce are generally inaccurate. For example, Defendants have agreed to produce training materials for the individuals who worked on Plaintiffs' business office services (BOS). (*RFP 29*.) Notwithstanding the Court's earlier directive about the relevant time period for Plaintiffs' fraud claim (3 years before Plaintiffs signed the BOS contract), Plaintiffs continue to insist that Defendants produce documents post-contract to try to help Plaintiffs establish fraud theories. Plaintiffs also claim Defendants breached duties under HIPAA. Then Plaintiffs suggest they need all sorts of internal documents to establish the standard of care. (*See RFP 57*.) Even if a doctor could assert a negligence *per se* claim under HIPAA, *if* there is a standard of care it is located in a federal statute and not in Defendants' documents. (*See* p. 2, above.)

Respectfully submitted,

/s/ Elizabeth Shieldkret                                    /s/ *Patrick N. Fanning*

Elizabeth Shieldkret                                        Patrick N. Fanning
Counsel for Plaintiffs,                                     Counsel for Defendants,
Jennifer Fung-Schwartz, D.P.M.                              Cerner Corporation
Jennifer Fung-Schwartz, D.P.M., L.L.C.                      Cerner Healthcare Solutions, Inc.

# Plaintiffs' Requests

     f.   Cerner notes discovery is ongoing and reserves the right to supplement these disclosures. All documents produced during discovery will be considered supplements to these disclosures.

3.    <u>Computation of Damages</u>

Cerner's damages as of August 2019 were $54,207.08, exclusive of interest, late fees, or costs, and Cerner continues to sustain damages as a result of Dr. Fung-Schwartz's on-going refusal to honor her obligations to Cerner under the parties' contract. As such, Cerner also seeks an amount for additional unpaid fees from August 2019 through the date of judgment, pre-judgment interest, post-judgment interest, late fees, penalties, attorney fees, costs, and expenses.

4.    <u>Insurance</u>

Redacted

Redacted       is produced herewith as CERN 00000623-662.


Dated: February 17, 2020               Respectfully submitted,

                                   PEAK LITIGATION LLP

                                   <u>/s/ Patrick N. Fanning</u>
                                   Patrick N. Fanning
                                   4900 Main Street, Suite 160
                                   Kansas City, MO 64112
                                   Phone: 816-281-5405
                                   pfanning@peaklitigation.com
                                   *ADMITTED PRO HAC VICE*

                                   And

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JENNIFER FUNG-SCHWARTZ, M.D.,                        :
JENNIFER FUNG-SCHWARTZ, D.P.M., L.L.C.,     :
                                                                          :
                                              Plaintiffs,        :          17-CV-233 (VSB)
                                                                          :
                         -against -                                 :
                                                                          :          DEFENDANTS' SECOND
CERNER CORPORATION, AND CERNER        :          SUPPLEMENTAL ANSWER TO
HEALTHCARE SOLUTIONS, INC.,                      :          PLAINTIFFS' INTERROGATORY NO. 9
                                                                          :
                                                                          :
                                     Defendants.              :
-------------------------------------------------------------X

      Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc. ("Cerner Solutions"), provide their Second Supplemental Answer to Plaintiffs' Interrogatory No. 9. Defendants identified a clerical error omitting a citation to a document produced in discovery and identify that additional document in their second supplemental response below. Defendants note discovery is on-going and Defendants reserve the right to supplement their answers as they learn additional information during discovery:

<u>SECOND SUPPLEMENTAL ANSWER</u>

      9.     Identify the amount of damages sought for each category of damages, including an explanation regarding how Defendants computed the damages for each category of damages they seek or which they believe a Defendant owes to one or more Plaintiff.

      **ANSWER:**

      Defendants object to this Interrogatory because it is vague and ambiguous in that it seeks a computation for Defendants' category of damages but then asks for a computation of damages "which they believe a Defendant owes to one or more Plaintiff." Defendants do not believe they owe any damages to either Plaintiff in this matter. Subject to, and without waiving such objection,

Defendants refer Plaintiffs to CERN0000636-CERN00000848. As of the date of this response, Plaintiffs' outstanding invoices amount to $56,383.86. Defendants' damages will continue to increase through trial unless Dr. Fung-Schwartz begins to pay for her use of Defendants' solutions and services. Cerner will continue to invoice Plaintiffs for their continued use of Defendants' services. Defendants also claim a late fee under Section 3.2 of the Parties' 2006 Master Agreement of 1.5% per month on all fees, amounts and expenses, commencing fifteen (15) days after the date payment was due. Defendant also seek all reasonable expenses, including attorney fees incurred in enforcing the collections of these fees under Section 3.2 of the Parties' 2006 Master Agreement.

**SUPPLEMENTAL ANSWER:**

Cerner Solutions' damages as of March 11, 2020 were $56,383.86, exclusive of late fees, interest, and costs. Cerner Solutions refers Plaintiffs to CERN0000663-CERN0000848; CERN00009840-00009861. Cerner Solutions' damages will continue to increase through trial unless Plaintiffs begin to pay for their use of Cerner Solutions' services and solutions. Cerner Solutions will continue to invoice Plaintiffs for their continued use of such services and solutions. Cerner Solutions also claims a late fee under Section 3.2 of the Parties' 2006 Master Agreement of 1.5% per month on all fees, amounts and expenses, commencing fifteen (15) days after the date payment was due. Cerner Solutions also seeks all reasonable expenses, including attorney fees incurred in enforcing the collections of these fees, under Section 3.2 of the Parties' 2006 Master Agreement. Cerner Solutions likewise seeks an amount for additional unpaid fees from March 11, 2020 through the date of judgment, pre-judgment interest, post-judgment interest, penalties, attorney fees, costs, and expenses.

**SECOND SUPPLEMENTAL ANSWER:**

Cerner Solutions' damages as of March 11, 2020 were $56,383.86, exclusive of late fees, interest, and costs. Cerner Solutions refers Plaintiffs to CERN0000663-CERN0000848; ***CERN00008161***; CERN00009840-00009861. Cerner Solutions' damages will continue to increase through trial unless Plaintiffs begin to pay for their use of Cerner Solutions' services and solutions. Cerner Solutions will continue to invoice Plaintiffs for their continued use of such services and solutions. Cerner Solutions also claims a late fee under Section 3.2 of the Parties' 2006 Master Agreement of 1.5% per month on all fees, amounts and expenses, commencing fifteen (15) days after the date payment was due. Cerner Solutions also seeks all reasonable expenses, including attorney fees incurred in enforcing the collections of these fees, under Section 3.2 of the Parties' 2006 Master Agreement. Cerner Solutions likewise seeks an amount for additional unpaid fees from March 11, 2020 through the date of judgment, pre-judgment interest, post-judgment interest, penalties, attorney fees, costs, and expenses.

Dated: April 16, 2020                                 Respectfully submitted,

                                                      PEAK LITIGATION LLP

                                                      /s/ Patrick N. Fanning
                                                      Patrick N. Fanning, *Admitted Pro Hac Vice*
                                                      4900 Main Street, Suite 160
                                                      Kansas City, MO 64112
                                                      Phone: 816-281-5405
                                                      pfanning@peaklitigation.com

                                                      And

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JENNIFER FUNG-SCHWARTZ, M.D.,                      :
JENNIFER FUNG-SCHWARTZ, D.P.M., L.L.C.,   :
                                                                          :
                                           Plaintiffs,           :
                                                                          :
                        -against -                                 :                17-CV-233 (VSB)
                                                                          :
CERNER CORPORATION, AND CERNER      :
HEALTHCARE SOLUTIONS, INC.,                       :     <u>DEFENDANTS RESPONSES AND</u>
                                                                          :     <u>OBJECTIONS TO PLAINTIFFS' FIRST</u>
                                                                          :     <u>SET OF REQUESTS FOR THE</u>
                         Defendants.                            :     <u>PRODUCTION OF DOCUMENTS</u>
-------------------------------------------------------------X

Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc., provide the following responses and objections to Plaintiffs' First Set of Requests for the Production of Documents and Things. Given the number of confidential documents involved (including documents that could contain protected health information), Defendants' counsel has provided Plaintiffs' counsel with a proposed stipulated confidentiality order to govern the production of sensitive or confidential documents in the case. Defendants' production of documents is therefore dependent on the entry of a confidentiality order to protect confidential/sensitive information:

<u>RESPONSES</u>

1.      All documents concerning all changes in Defendants' services to Plaintiffs in October 2016, including but not limited to changes in credentials or access, efforts to restore service before, during and after the TRO hearing on October 18, 2016 and all correspondence concerning approval for the changes.

**RESPONSES:**

Defendants object to Plaintiffs' request to the extent it seeks information protected by the attorney-client privilege and work product protection. Plaintiffs' request is also over broad because

it seeks "all documents" concerning changes to Plaintiffs' services. Without waiving their objections, Defendants will provide nonprivileged, relevant, responsive documents, to the extent they exist.

2.     All documents concerning all changes in Defendants' service to Plaintiffs in January 2017, including but not limited to changes in credentials or access, efforts to restore service before and after Plaintiffs' January 11, 2017 letter to the Court (16 Civ. 8019 Doc. 8) and all correspondence concerning approval for the changes.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, and is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Upon information and belief, Plaintiffs have not alleged Defendants intentionally interrupted service in January 2017 (*see, e.g.,* Plaintiff Jennifer Fung-Schwartz's declaration submitted with Plaintiffs' pleadings). Defendants likewise object because the request seeks information protected by the attorney-client privilege and work product protection and because it seeks information equally available to Plaintiffs. Subject to, and without waiving these objections, Defendants will provide nonprivileged, relevant, responsive documents, to the extent they exist.

3.     Documents sufficient to identify the third-party who provided the services which were interrupted in January 2017 and the third-party referenced in Pat Fanning's October 18, 2016 e-mail (Doc. 28, p. 20) who Cerner claimed was responsible for the prescription application and to identify the individuals at each third-party who were responsible for Plaintiff's services.

**RESPONSES:**

2

III, Esq. and the person(s) who gave approval on behalf of any Defendant for Mr. Neuman to send the correspondence to Mr. Paterno.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" is vague and ambiguous, assumes facts not in evidence, and seeks information protected from disclosure by the attorney-client privilege and work product protection. Subject to, and without waiving their objections, Defendants refer Plaintiffs to their privilege log. Defendants likewise refer Plaintiffs to their answer to Interrogatory No. 3.

12.     Documents sufficient to identify the relationship between each Defendant and Nathan Neuman, Esq., including but not limited to whether Mr. Neuman was retained by any Defendant, documents which identify the person who retained him, documents which identify the person who would approve his payment and the entity who would pay him and documents which identify how his fee was to be calculated.

**RESPONSES:**

Defendants will produce documents that identify its relationship with Mr. Neuman.

13.     Documents sufficient to identify each product and service concerning revenue cycle management and electronic medical records which Defendants offered for sale or sold between January 1, 2013 and present.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, and is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action.

Plaintiffs seek information about every different product and service Defendants offered to any client concerning revenue cycle and electronic medical records between January 1, 2013 and the present. Cerner offers numerous products and services to its diverse clientele. Dr. Fung-Schwartz's experiences are the only relevant inquiry in this lawsuit. Without waiving their objections, Defendants refer Plaintiffs to CERN00000508-622, which identify the products and services Plaintiffs purchased (which will be produced upon entry of a confidentiality order).

14.     Documents sufficient to identify the products and services Defendants and Cerner Physician Practice, Inc. provided to Plaintiffs from March 24, 2006 to present and to identify which entity or entities provided each service, each change in the products and services, when the change was implemented and what features were added or deleted as a result of the change, for example, the change from an in-office system to an online system.

**RESPONSES:**

Defendants object to this request because the phrase, "documents sufficient to identify" is vague and ambiguous and is overly broad, unduly burdensome, and is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all products and services utilized for the last 13 years and all changes and related features to each change. This information has no bearing on any element of any cause of action of any claim asserted in this matter, specifically because Plaintiffs have alleged no claim related to their patients' electronic health records other than an alleged interruption in service for a brief period of time in October 2016. Without waiving their objections, Defendants refer Plaintiffs to

CERN00000508-622, which lists the products and services Plaintiffs purchased (and which will be produced upon entry of a confidentiality order).

15.     All contracts executed between any Defendant and any Plaintiff.

**RESPONSES:**

*See* documents to be produced at CERN00000508-622 (which will be produced upon entry of a confidentiality order).

16.     All contracts executed between Cerner Physician Practice, Inc. and any Plaintiff.

**RESPONSES:**

*See* documents to be produced at CERN00000508-622 (which will be produced upon entry of a confidentiality order).

17.     All documents which Defendants allege demonstrate or are relevant to the meaning or interpretation of any word or clause in any contract between or among the parties to the action.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek production of a potentially unbounded number of documents (including New York legal precedents interpreting contracts). Defendants are also not aware of Plaintiffs alleging their contracts with Cerner Healthcare Solutions are ambiguous.

18.     Documents sufficient to identify Megas, LLC, Unicor, Inc. and Alpha II Claimstaker, the relationship of Megas, LLC, Unicor, Inc. and Alpha II Claimstaker to any contract

between the parties and the relationship of Megas, LLC, Unicor, Inc. and Alpha II Claimstaker to any product or service provided by Defendants to Plaintiffs.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" is vague and ambiguous. Specifically, the request to produce "documents sufficient to identify Megas, LLC, Unicor, Inc. and Alpha II Claimstaker" is vague and ambiguous. Moreover, Plaintiffs' request is overly broad, unduly burdensome, is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Defendants are not aware of Plaintiffs alleging any claim against Megas, LLC, Unicor, Inc., and Alpha II Claimstaker. Without waiving its objection, Defendants will produce the contracts with Plaintiffs, which describe the terms of any software licenses purchased by Plaintiffs.

19.     All Business Associate Contracts or Business Associate Agreements between or among Defendants and Cerner Physician Practice, Inc. concerning Plaintiffs' patient information and documents sufficient to identify each entity and person who has had authority to view the content of Plaintiffs' electronic medical records or claims submitted to insurers or Medicare.

**RESPONSES:**

Defendants object to this request because the documents sought are equally available to Plaintiffs. Defendants likewise object because the phrase "documents sufficient to identify" is vague and ambiguous. Subject to, and without waiving their objections, Defendants will produce the BAA between Cerner Physician Practice, Inc. and Plaintiffs.

10

20.     Documents sufficient to identify the relationship between and among Cerner Corporation, Cerner Physician Practice, Inc. and Cerner Healthcare Solutions, Inc., including but not limited any assignment of rights between or among the entities and any licenses granted from Cerner Corporation to Cerner Physician Practice, Inc. or Cerner Healthcare Solutions, Inc.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" is vague and because the request is overly broad, unduly burdensome, is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek information related to all assignments of any rights between the entities listed and any licenses granted pertaining to any issue. Without waiving their objections, Defendants will produce documents to identify the relationship between the Cerner Physician Practice, Inc. and Cerner Healthcare Solutions, Inc., as well as the parent-subsidiary relationship between Cerner Corporation and Cerner Healthcare Solutions, Inc.

21.     All documents from January 1, 2005 – March 24, 2006 concerning advertising, marketing, promotions and fees of Cerner Physician Practice, Inc. concerning electronic medical records products and services for solo medical practices.

**RESPONSES:**

Defendants object to this request as overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs

11

seeks all documents concerning advertising, marketing, promotions and fees related to any and all electronic medical records products and services for any solo medical practice. Plaintiffs' request is completely unrelated to any of Plaintiffs' claims (she does not claim functionality issues with her software to Defendants' knowledge). And if she claims there were issues back in 2006 when she purchased the software, her claims would be barred by the warranty provisions of her contracts as well as all applicable statutes of limitations. Plaintiffs' claims concern an alleged service interruption. Fifteen-year-old marketing documents (which may or may not still exist) are irrelevant.

22.     All documents from January 1, 2014 – December 31, 2014 concerning advertising, marketing, promotions and fees concerning revenue cycle management products and services for solo medical practices.

**RESPONSES:**

Defendants object to this request as overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents concerning advertising, marketing, promotions and fees related concerning revenue cycle management products and services for any solo medical practice completely unrelated to the software, services, or support Plaintiffs may have purchased and without regard to whether Plaintiffs viewed such advertising or other materials. Moreover, Plaintiffs have not shown any basis to ignore the plain language of the contracts (which would identify the parties' relevant understanding, rights, and responsibilities). Without waiving their objections, Defendants will produce documents within its custody and control that it may have provided to Plaintiffs in

12

conjunction with any decision to purchase revenue cycle management software, services, or support.

23.     All documents concerning Plaintiffs, including but not limited to correspondence with Plaintiffs and internal or external communications to, from, between or among Defendants' employees or third parties about or discussing Plaintiffs.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, is not relevant to Plaintiffs' claims or complaints against Defendants, is not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents related in any way, and regarding any issue connected with, Plaintiffs for a relationship that dates back fourteen years to 2006. Defendants also object to this request to the extent it seeks production of attorney-client privileged information or work product. Without waiving their objections, Defendants will produce nonprivileged, relevant, responsive, communications with Plaintiffs.

24.     All documents concerning Cerner Corporation trademarks, service marks or copyrights which have ever been licensed to Cerner Physician Practice, Inc. or Cerner Healthcare Solutions, Inc., including but not limited to Cerner Corporation's all terms concerning Cerner Corporation's efforts to control the quality of goods and services offered under its trademarks and service marks.

**RESPONSES:**

Defendants object to this request as overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and

the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs ask Defendants to produce information about trademarks, service marks, and copyrights, which have nothing to do with her claims or the counterclaims. The parties are not engaged in an intellectual property lawsuit. Cerner Healthcare Solutions, Inc., is a subsidiary of Cerner Corporation.

25.     All documents concerning communications with or about the services Defendants provided to Plaintiffs, including but not limited to Defendants' response to complaints from Plaintiffs and Defendants' efforts to restore services to Plaintiffs in October 2016 and January 2017.

**RESPONSES:**

Defendants object to this request as overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents concerning communications regarding any service Defendants provided to Plaintiffs throughout a fourteen-year relationship, the vast majority of which are wholly unrelated to this matter. Defendants also object because the request seeks documents protected by the attorney-client privilege and work product protection. Subject to, and without waiving their objections, Defendants will produce nonprivileged, relevant, responsive, communications related to Plaintiffs and their contracted-for platforms and services upon entry of a confidentiality order.

26.     All documents concerning Nathan Neuman's claim in his October 10, 2016 e-mail to Joseph Paterno, III, Esq. that "Cerner provides BOS services to thousands of customers and the solution is very successful."

14

**RESPONSES:**

Defendants object to this request as it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek information about a statement made by an attorney in a letter that has absolutely no bearing on the claims and defenses asserted in this matter. Plaintiffs do not allege Dr. Fung-Schwartz relied on attorney Nathan Neuman's October 10, 2016 letter to purchase any software, services, or support from Defendants or that Plaintiffs sustained damages based on information contained in a collection letter received from an attorney. Defendants further object to the extent Plaintiffs seek information protected from disclosure by the attorney-client privilege or work product doctrine.

27.    All documents concerning complaints by any customer concerning Defendants' revenue cycle management products and services, including but not limited to internal or external communications to, from, between or among Defendants' employees or third-parties about or discussing alleged deficiencies, any settlement, rebate, credit or accommodation (such as allowing the customer to leave the arrangement early) Defendants reached with any customer, whether or not litigation or arbitration was instituted.

**RESPONSES:**

Defendants object to this request because it is vague and ambiguous as to the meaning of "complaints by any customer." Defendants further object because this request is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the

issues at stake in the action. Plaintiffs seek all documents concerning any customer at any point in time complaining about any of the numerous revenue cycle software, services, or support, as well as all internal emails that may have been exchanged by the thousands of associates who work for Defendants concerning any potential customer complaint. Cerner further objects to the request to the extent it seeks information that is either confidential or protected from disclosure by the attorney-client privilege or work product doctrine.

28.    All documents concerning any changes to Defendants' BOS software, including but not limited to computer coding change logs, bug fixes, engineering change notices, changes in documentation or other technical or documentation changes which were made in response to any complaint by a customer.

### RESPONSES:

Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs ask for any change to any portion of Defendants' software at any time in response to any customer complaint, and is not limited to any specific or relevant component, feature, functionality, and is not limited to any specific complaint Plaintiffs may have had with any BOS software, if any.

29.    All documents concerning the qualifications and training of each person who worked on Plaintiffs' account, including but not limited to the qualifications and training of Samantha Wright, Melissa Jones.

### RESPONSES:

Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, and not proportional to the needs of the case. Plaintiffs seek all qualifications and training related to any issue for any person who related in any way to Plaintiffs' account throughout the fourteen-year relationship, without regard to any training topics or platform spaces or relationship of the individual to Plaintiffs' account. For example, Defendants object to Plaintiffs' request for qualifications and training of Melissa Jones. Ms. Jones was connected to Plaintiffs' account only through her work in the finance department. It is therefore not clear what training she would need to determine that Dr. Fung-Schwartz has not made payments of amounts owed for her continued use of software, services, and support.

30.   All training materials given to Defendants' employees from January 2014 – November 2016 concerning submitting claims to insurers and Medicare, including but not limited to procedures for submitting paper claims.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all training materials given to any of Defendants' employees regarding any issue related to submitting claims to insurers and Medicare without regard for the issue, employee, client, or relationship to Plaintiffs' account. Without waiving their objections, Defendants will produce written work instructions provided to BOS employees who worked on Plaintiffs' account.

31.     All documents from March 24, 2006 through present concerning the procedures by Defendants or Cerner Physician Practice, Inc. to terminate electronic medical records services for lack of payment.

**RESPONSES:**

Defendants object to this request because the term "procedures" and the phrase "procedures by Defendants or Cerner Physical Practice, Inc. to terminate electronic medical records services for lack of payment" is vague and ambiguous. Defendants further object to this request because it is overly broad in time and scope in that it dates back fourteen years to 2006 and likewise seeks documents after the dates Plaintiffs allege their service was turned to read-only. Without waiving their objection and limiting the request temporally to something remotely relevant, Defendants have not identified responsive documents for the time period from January-October 2016.

32.     All documents concerning each paper claim Defendants submitted to any insurer or Medicare on behalf of Dr. Fung-Schwartz.

**RESPONSES:**

Defendants object to this request because it seeks information outside Defendants' current custody and control and is overly broad and unduly burdensome. Plaintiffs seek all documents concerning each paper claim submitted to any insurer or Medicare on Plaintiffs' behalf, without regard to the outcome of such submission or its effect on Plaintiffs' claims. Subject to, and without waiving such objections, Cerner will produce all communications with Plaintiffs' payors and Plaintiffs currently within its custody and control.

33.     Documents sufficient to establish Defendants' procedures for when it is appropriate to submit a paper claim, how paper claims are to be submitted and how rejected paper claims are handled by Defendants.

Defendants object to this request because it seeks documents outside Cerner's current custody and control. (Plaintiffs or their agents have custody and control over their billing submissions.) Defendants have asked Plaintiffs to produce the coding/billing documents within Plaintiffs' custody and control. Without waiving its objection, Defendants will produce any communications with Plaintiffs in its possession, custody, or control.

36.     All documents which Defendants allege demonstrate that it was any Plaintiff's responsibility to scrub claims.

**RESPONSES:**

Defendants object to this request because the term "scrub" in this request is vague and ambiguous. There are certainly scrubber software solutions that exist that scrub claims. But the phrase "scrub" could include required fixes that must be made by a provider after a vendor or commercial scrubber has identified a deficiency in a claim before submission. Defendants also object to this request because it seeks documents outside Defendants' current custody and control. Subject to, and without waiving their objection, Defendants will provide responsive documents upon entry of a confidentiality order.

37.     All documents concerning claims Defendants submitted on behalf of Plaintiffs but which were rejected by insurers and/or Medicare, including but not limited to Defendants' response to the rejection, resubmission of the claims or writing off the claims.

**RESPONSES:**

Defendants object to this request because it seeks documents outside Cerner's current custody and control. (Plaintiffs or their agents have custody and control over their billing submissions.) Defendants have asked Plaintiffs to produce the coding/billing documents within Plaintiffs' custody and control. Defendants also object to the request because it assumes facts not

in evidence concerning Defendants' role in the revenue cycle process. Without waiving its objection, Defendants will produce any communications with Plaintiffs in its possession, custody, or control.

38. All documents concerning duplicate claims Defendants submitted on behalf of Plaintiffs.

**RESPONSES:**

Defendants object to this request because it seeks documents outside Cerner's current custody and control and because Plaintiffs' have equal or greater access to the requested information. (Plaintiffs or their agents have custody and control over their billing submissions.) Defendants have asked Plaintiffs to produce the coding/billing documents within Plaintiffs' custody and control. Without waiving its objection, Defendants will produce any communications with Plaintiffs in its possession, custody, or control.

39. All documents concerning Plaintiffs' claims to insurers or Medicare which Defendants wrote off or otherwise credited without receiving payment from an insurer or Medicare, including but not limited to all documents concerning the billing for Patient No. 6373.

**RESPONSES:**

Defendants object to this request because it seeks documents outside Cerner's current custody and control and because Plaintiffs have greater or equal access to the requested information, to the extent it exists. (Plaintiffs or their agents have custody and control over their billing submissions). Without waiving their objections, Defendants will produce responsive documents in their current custody and control, to the extent they exist.

40. All documents concerning double billing of Medicare claims in Defendants' system for any client.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek "all documents concerning double billing of Medicare claims in Defendants' system for any client" and thus seeks information related to Defendants' work with its entire universe of clients, utilizing inapposite platforms, and involving different circumstances that have no bearing on Plaintiffs' claims. Defendants likewise object because the phrase "double billing" is vague and ambiguous.

41.    All documents concerning the rate of rejected Medicare claims submitted by Defendants, including but not limited to any statistics or data Defendants collected to review their Medicare billing practices, denial rates, acceptance rates after re-submission and any attempts Defendants made to adjust their Medicare billing practices.

**RESPONSES:**

Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Defendants also object to the request because it assumes facts not in evidence concerning Defendants' role in the revenue cycle process.  Defendants' relationship with other clients throughout the country and those clients' submission procedures (or rates of accepted/rejected claims) has nothing to do with Plaintiffs' claims.

22

Defendants object to this request because the reference to "complaints" and "practices for submitting claims" is and vague and ambiguous. Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Defendants also object to the request because Plaintiffs seek all documents that may concern "complaints" from any insurer related to any of Defendants' numerous clients using inapposite platforms and services and involving different patients, payors, contracts, and circumstances related to reimbursement that have no bearing on this case. And what qualifies as a "complaint?" (Is an insurer's denial a "complaint?") Moreover, Defendants object to the request because it assumes facts not in evidence concerning Defendants' role in the revenue cycle process.  Without waiving their objections, Defendants will produce their communications with *Plaintiffs'* payors currently in their custody and control.

48.     All documents concerning HHS FAQ 2074.

**RESPONSES:**

Defendants object to the request because it is overly broad, unduly burdensome, not limited in scope or time, is not relevant to *Plaintiffs'* claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents concerning a public document found at a public website and Plaintiffs have pleaded or proven how the FAQ plays any role in their claims. Moreover, Plaintiffs' request is not narrowly tailored to avoid potential production of attorney-client privileged communications concerning an FAQ.

26

49.     All documents concerning the cost or value of electronic medical records, including but not limited to any study concerning the time it takes a practice to create and update a patient's electronic medical record.

**RESPONSES:**

Defendants object to this request because the phrase "cost or value of electronic medical records" is vague and ambiguous. Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs apparently seek data concerning the cost of electronic health records, including the time it takes to create or update a patient's medical record. Plaintiffs' request has absolutely nothing to do with any of Plaintiffs' pleaded claims. And Plaintiffs are in a far better position to estimate how long it takes Dr. Fung-Schwartz to create and update a clinical record in her daily practice.

50.     Documents sufficient to identify how Defendants' medical records have been transferred to other systems, including but not limited to export formats, procedures and costs.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" is vague and ambiguous. Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek information about other clients' export formats, procedures and

27

costs of migrating data, which are irrelevant here. The cost of migrating data depends on the data to be migrated, method of migration, and platform to which it is migrated. If Plaintiffs seeks to determine the cost of migrating their data to another platform, they can submit a formal request for a quote and Defendants can provide one. Or, Plaintiffs can go to any number of third parties to request a quote. But asking Defendants to produce information about how it has migrated other providers', health systems' or hospitals' medical records appears to be an overwhelmingly onerous way to get information Plaintiffs could simply obtain by providing information about their system and requesting a quote.

51.     Documents sufficient to identify the amount of revenue Defendants receive each year from the sale of information from de-personalized medical records.

**RESPONSES:**

Defendants object to this request because the phrases "documents sufficient to identify" and "sale of information for de-personalized medical records" are vague and ambiguous. Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs do not plead that Defendants sold Plaintiffs' patients' de-personalized medical records to a third party. Without waiving their objections, and consistent with Defendants' understanding of the request, Defendants are not presently aware of any responsive documents in their custody and control.

52.     Documents sufficient to identify Defendants' cost for providing electronic medical records services to Plaintiffs.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" and "Defendants' cost" is vague and ambiguous. Without waiving their objection, Defendants will produce the contracts and invoices with Plaintiffs, which will identify the costs associated with Plaintiffs' purchase of electronic medical record software, services, and support from Defendant Cerner Healthcare Solutions. Defendants' cost is irrelevant.

53.     Documents sufficient to identify the lowest price Defendants charge to provide electronic medical records services to a solo medical practice.

**RESPONSES:**

Defendants object to this request because the phrase "documents sufficient to identify" is vague and ambiguous. Defendants object to this request because it is overly broad, unduly burdensome, not relevant to Plaintiffs' claims or complaints against Defendants, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Without waiving their objection, Defendants will produce the contracts and invoices with Plaintiffs, which will identify the costs associated with Plaintiffs' purchase of electronic medical record software, services, and support from Defendant Cerner Healthcare Solutions. The lowest price Defendant Cerner Healthcare Solutions may have charged a client at some unspecified time has absolutely nothing to do with Plaintiffs' lawsuit.

54.     All documents concerning Defendants' computation of each category of damages it seeks to recover and all documents concerning the nature and extent of damages or injuries suffered.

**RESPONSES:**

Defendants will provide responsive documents.

29

without waiving these objections, Defendants will produce responsive, non-privileged documents related Dr. Fung-Schwartz's calls to customer service in October 2016 upon entry of a confidentiality order.

REQUEST FOR PRODUCTION NO 56.    All documents concerning any investigation Cerner did into any interruption in or change to Plaintiffs' EHR services.

**RESPONSE**   Defendants object to this request because it seeks information protected by the attorney-client privilege and work product doctrine. Defendants also object to this request because the request is unlimited in time, overly broad, unduly burdensome, not relevant to Plaintiffs' claims, not proportional to the needs of the case and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in litigation in that it seeks all documents concerning any investigation related to any change to Plaintiffs' EHR services at any time and related to any issue. Plaintiffs' EHR contract with Defendants date back to 2006, and Plaintiffs have placed no change in EHR services in controversy other than an alleged interruption to EHR access in October 2016 and January 2017. Subject to, and without waiving such objections, Defendants will produce responsive, non-privileged documents related to any change in Plaintiffs' ability to access or interact with their patients' EHR in October 2016 and January 2017 upon entry of a confidentiality order.

REQUEST FOR PRODUCTION NO 57.    All documents concerning training Cerner EHR employees undergo concerning HIPAA.

**RESPONSE**   Defendants object to this request because it is overly broad, not limited in scope or time, not relevant to Plaintiffs' claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of

2

providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents concerning training any Cerner EHR employee has undergone at any point in time at Cerner on any issue related to HIPAA. Plaintiffs have not pleaded or proven how HIPAA, or any such training, relates in any way to their claims. Moreover, Defendants object because Plaintiffs' request is not narrowly tailored to avoid potential production of attorney-client privileged communications concerning HIPAA.

REQUEST FOR PRODUCTION NO 58.   All policies concerning cutting off EHR services to doctors, hospitals or other medical providers.

**RESPONSE**  Defendants object to this request because "policies concerning cutting off HER services to doctors, hospitals or other medical providers" is vague and ambiguous. Defendants further object to this request because it is overly broad, not limited in scope or time, not relevant to Plaintiffs' claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Cerner represents a diverse clientele that migrate to and away from Cerner for a variety of reasons, and who stop using Cerner's EHR solutions—either temporarily or permanently—for countless reasons. Any policies related to winding down or otherwise "cutting off" EHR access for any client who stops using Cerner's solution for any reason have no bearing on, and are not tailored to, Plaintiffs' claims or complaints.

REQUEST FOR PRODUCTION NO 59.    All documents concerning any other doctors, hospitals or other medical providers whose EHR was cut off by Cerner.

**RESPONSE**  Defendants object to this request because "policies concerning cutting off EHR services to doctors, hospitals or other medical providers" is vague and ambiguous.

3

Defendants further object to this request because it is overly broad, not limited in scope or time, not relevant to Plaintiffs' claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs request "all documents concerning any [Cerner client] whose EHR was cut off by Cerner." Plaintiffs' request seeks documents wholly unrelated to Plaintiffs' claims and includes any document related in any way to any Cerner client who ever stopped using Cerner's EHR solutions—either temporarily or permanently—for any reason. Moreover, Defendants object because Plaintiffs' request is not narrowly tailored to avoid potential production of attorney-client privileged communications or work product.  Such documents have no bearing on, and are not tailored to, Plaintiffs' claims or complaints. Plaintiffs' claims are about *Plaintiffs'* experiences and not the experiences or business relationships between Defendants and other health care providers.

REQUEST FOR PRODUCTION NO 60.    All documents concerning any audits of Cerner claims submitted to insurers or Medicare.

**RESPONSE**  Defendants object because "all documents concerning any audits of Cerner claims submitted to insurers or Medicare" is vague and ambiguous. Defendants further object to this request because it is overly broad, not limited in scope or time, not relevant to Plaintiffs' claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Moreover, Defendants object because Plaintiffs' request is not narrowly tailored to avoid potential production of attorney-client privileged communications or work product.  Plaintiffs' request—for all documents concerning any audit of any claim Defendants "submitted" to insurers or Medicare for any client at any point in time under

4

any contract related to any service Defendants have provided throughout its history—contemplates an overwhelming investigation to find an inordinate amount of irrelevant information, and Defendants' relationship with and service to other clients throughout the country and those clients' claims, submissions, and submission procedures have nothing to do with Plaintiffs' claims.

REQUEST FOR PRODUCTION NO 61.    All documents concerning the "sunset" of the Specialty EMR Dr. Fung-Schwartz used until 2011, including but not limited to documents concerning the reason(s) for the sunset, notice(s) from the third-party provider about the sunset, all documents concerning what options Cerner considered offering and/or offered to Specialty EMR users to migrate away from the Specialty EMR, all documents salespeople used to make presentations to Specialty EMR users about migrating, all internal correspondence concerning migrating Dr. Fung-Schwartz away from the Specialty EMR and all documents concerning representations Cerner made to Dr. Fung-Schwartz about the sunset of the Specialty EMR and migrating to a different Cerner EMR product.

**RESPONSE**   Defendants object to this request because it is overly broad, not proportional to the needs of the case, and the burden or expense of responding to the request far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Defendants further object because the information sought is not relevant to Plaintiffs' claims or complaints. Plaintiffs request all documents related in any way concerning the sunset of the "Specialty EMR" Dr. Fung Schwartz used until 2011. Any internal Cerner documentation or other potential "offerings," including any documentation provided to other clients under different contracts are wholly unrelated to the claims Plaintiffs have asserted in this matter. Moreover, Plaintiffs have asserted no claim or complaint related to their EHR other than alleged interruptions to access in October 2016 and January 2017. As such, any "sunset" of any

EHR-related solution or product, which took place five years before any alleged interruption occurred and which has absolutely nothing to do with Plaintiffs' claims, is immaterial.

Dated: February 28, 2020                    Respectfully submitted,

                                            PEAK LITIGATION LLP

                                            /s/ Patrick N. Fanning
                                            Patrick N. Fanning, *Admitted Pro Hac Vice*
                                            4900 Main Street, Suite 160
                                            Kansas City, MO 64112
                                            Phone: 816-281-5405
                                            pfanning@peaklitigation.com
                                            *ADMITTED PRO HAC VICE*

                                            And

                                            HEIDELL, PITTONI, MURPHY & BACH,
                                            LLP

                                            Laura A. Del Vecchio (LD4992)
                                            81 Main Street
                                            White Plains, New York 10601
                                            Phone: (914) 559-3100
                                            Fax: (914) 949-1160
                                            ldelvecchio@hpmb.com

                                            ATTORNEYS FOR DEFENDANTS
                                            AND COUNTERCLAIM PLAINTIFF

7.      Identify the custodian and location of each copy of Plaintiffs' medical records, including whether any copy is stored outside the United States.

   **ANSWER:**

Location: Cerner Healthcare Solutions hosts Plaintiffs' patients' electronic health records at CernerWorks Data Centers located in Missouri

Custodian: Dr. Fung-Schwartz (or her designate) is the custodian of Plaintiffs' patients' electronic health records.

8.      Identify the existence, custodian, location and general description of Defendants' documents concerning, referencing, discussing or explaining HHS FAQ 2074.

   **ANSWER:**

Defendants object to the Interrogatory because it is overly broad, unduly burdensome, not limited in scope or time, is not relevant to *Plaintiffs*' claims or complaints, not proportional to the needs of the case, and the burden or expense of responding to the Interrogatory far outweighs likely benefits of providing the information based on the amount in controversy and the issues at stake in the action. Plaintiffs seek all documents concerning a public document found at a public website and Plaintiffs have pleaded or proven how the FAQ plays any role in their claims. Moreover, Plaintiffs' request is not narrowly tailored to avoid potential production of attorney-client privileged communications concerning an FAQ.


Dated: January 15, 2020                              Respectfully submitted,

                                                     PEAK LITIGATION LLP

                                                     /s/ Patrick N. Fanning

6



# HHS.gov

Health Information Privacy

U.S. Department of Health & Human Services

I'm looking for... 

HHS A-Z Index

| HIPAA for Individuals | Filing a Complaint | HIPAA for Professionals | Newsroom |

HHS > HIPAA Home > For Professionals > FAQ > 2074-May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on behalf of the covered entity?

- Authorizations (30)
- Business Associates (45)
- Compliance Dates (5)
- Covered Entities (17)
- Decedents (8)
- Disclosures for Law Enforcement Purposes (7)
- Disclosures for Rule Enforcement (2)
- Disclosures in Emergency Situations (2)
- Disclosures Required by Law (6)
- Disclosures to Family and Friends (28)
- Disposal of Protected Health Information (6)
- Facility Directories (7)
- Family Medical History Information (3)
- FERPA and HIPAA (10)
- Group Health Plans (2)
- Health Information Technology (36)
- Incidental Uses and Disclosures (10)
- Judicial and Administrative Proceedings (8)
- Limited Data Set (5)
- Marketing (18)
- Marketing - Refill Reminders (16)
- Minimum Necessary (14)
- Notice of Privacy Practice (20)



# May a business associate of a HIPAA covered entity block or terminate access by the covered entity to the protected health information (PHI) maintained by the business associate for or on behalf of the covered entity?

## Answer:

No.

First, a business associate may not use PHI in a manner or to accomplish a purpose or result that would violate the HIPAA Privacy Rule. See 45 CFR § 164.502(a)(3). Generally, if a business associate blocks access to the PHI it maintains on behalf of a covered entity, including terminating access privileges of the covered entity, the business associate has engaged in an act that is an impermissible use under the Privacy Rule. For example, a business associate blocking access by a covered entity to PHI (such as where an Electronic Health Record (EHR) developer activates a "kill switch" embedded in its software that renders the data inaccessible to its provider client) to resolve a payment dispute with the covered entity is an impermissible use of PHI. Similarly, in the event of termination of the agreement by either party, a business associate must return PHI as provided for by the business associate agreement. If a business associate fails to do so, it has impermissibly used PHI.

Second, a business associate is required by the HIPAA Security Rule to ensure the confidentiality, integrity, and availability of all electronic PHI (ePHI) that it creates, receives, maintains, or transmits on behalf of a covered entity. See 45 CFR § 164.306(a)(1). Maintaining the availability of the ePHI means ensuring the PHI is accessible and usable upon demand by the covered entity, whether the PHI is maintained in an EHR, cloud, data backup system, database, or other system. 45 CFR § 164.304. This also includes, in cases where the business associate agreement specifies that PHI is to be returned at termination of the agreement, returning the PHI to the covered entity in a format that is reasonable in light of the agreement to preserve its accessibility and usability. A business associate that terminates access privileges of a covered entity, or otherwise denies a covered entity's access to the ePHI it holds on behalf of the covered entity, is violating the Security Rule.

Third, a business associate is required by the HIPAA Privacy Rule and its business associate

agreement to make PHI available to a covered entity as necessary to satisfy the covered entity's obligations to provide access to individuals under 45 CFR § 164.524. See 45 CFR §§ 164.502(a)(4)(ii) & 164.504(e)(2)(ii)(E). Therefore, a business associate may not deny a covered entity access to the PHI the business associate maintains on behalf of the covered entity if the covered entity needs the PHI to satisfy its obligations under 45 CFR § 164.524.

OCR recognizes, however, that there may be certain arrangements that authorize the business associate to destroy or dispose of PHI, or perform data aggregation or otherwise combine data from multiple sources, and where, because of the nature of the services to be performed by the business associate with the PHI as specified in the contractual arrangements between the parties, the covered entity and business associate agree that the business associate will not provide the covered entity access to the PHI. For example, a covered entity may engage a business associate to perform data aggregation of information from multiple sources that renders the disaggregated original source data unreturnable to the covered entity. OCR does not consider these contractual arrangements to constitute the types of impermissible data blocking or access termination described above.

Finally, OCR notes that a covered entity is responsible for ensuring the availability of its own PHI. To the extent that a covered entity has agreed to terms in a business associate agreement that prevent the covered entity from ensuring the availability of its own PHI, whether in paper or electronic form, the covered entity is not in compliance with 45 CFR §§ 164.308(b)(3), 164.502(e)(2), and 164.504(e)(1).

Content created by Office for Civil Rights (OCR)
Content last reviewed on September 23, 2016



Personal Representatives and Minors (13)

Preemption of State Law (10)

Privacy Rule: General Topics (14)

Protected Health Information (2)

Public Health Uses and Disclosures (14)

Research Uses and Disclosures (20)

Right to Access (59)

Right to an Accounting of Disclosures (8)

Right to File a Complaint (1)

Right to Request a Restriction (2)

Safeguards (13)

Security Rule (25)

Smaller Providers and Businesses (154)

Student Immunizations (8)

Transition Provisions (5)

Treatment, Payment, and Health Care Operations Disclosures (30)

Workers Compensation Disclosures (5)

Sign Up for OCR Updates

To sign up for updates or to access your subscriber preferences, please enter your contact information below.

Sign Up

Office for Civil Rights Headquarters

U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Toll Free Call Center: 1-800-368-1019
TTD Number: 1-800-537-7697

Contact HHS          HHS Archive          Budget/Performance          FOIA
Careers              Accessibility        Inspector General            The White House
HHS FAQs             Privacy Policy       EEO/No Fear Act              USA.gov
Nondiscrimination Notice   Viewers & Players

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

                                                    :
JENNIFER FUNG-SCHWARTZ, MD, et al.,   :
                                                    :
                              Plaintiffs,           :
                                                    :
                - against -                         :
                                                    :
                                                    :
CERNER CORPORATION, et al.,           :
                                                    :
                              Defendants.   :
                                                    :
-----------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:                            │
│ DATE FILED:   9/13/2018           │
└──────────────────────────────────┘
```

17-CV-233 (VSB)

**OPINION & ORDER**

<u>Appearances</u>:

Elizabeth Shieldkret
Elizabeth Shieldkret, Attorney at Law
Forrest Hills, NY
*Counsel for Plaintiffs*

Patrick Fanning
Shook, Hardy & Bacon, LLP
Kansas City, MO

John Michael Lyons
Shook, Hardy & Bacon, LLP
Philadelphia, PA
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

  Plaintiffs, Dr. Jennifer Fung-Schwartz, individually and/or on behalf of her patients, and

Jennifer Fung-Schwartz DPM LLC (the "Practice" and, together with Fung-Schwartz,

"Plaintiffs"), bring this action against Defendants Cerner Corporation ("Cerner Corp.") and

Cerner Healthcare Solutions, Inc. ("Cerner Solutions" and, collectively, "Cerner") asserting

multiple claims stemming from certain contracts Fung-Schwartz and/or the Practice executed

with Cerner.  Before me is Defendants' partial motion to dismiss under Federal Rules of Civil

B.    *Plaintiffs' Non-Contractual Claims*

1.    **Conversion (Count 9)**

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (1995)).  "[T]o establish a claim for conversion, a plaintiff must show that:  (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007) (internal quotation marks omitted).

Plaintiffs have sufficiently stated a claim for conversion.  First, Plaintiffs allege that the property subject to conversion is a specific identifiable thing, namely certain patients' electronic medical records and insurance claims.  (Am. Compl. ¶¶ 127, 130.)  While typically tangible property is the subject of a conversion action, *see Harris v. Coleman*, 863 F. Supp. 2d 336, 342 (S.D.N.Y. 2012), "electronic records that were stored on a computer and were indistinguishable from printed documents . . . [are] subject to a claim of conversion in New York," *Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272, 1278 (N.Y. 2007).  Second, Plaintiffs assert that they exercised possession or control over the claims and records prior to the conversion.

---

i.e., to accomplish a completed transfer of the entire interest of the assignor in the particular subject of assignment." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (internal citation and quotation marks omitted).  Here, Plaintiffs base their claim on the fact that their patients signed a form stating, "I authorize that all payments for the financial benefits for professional services rendered be made to Dr. Jennifer Fung-Schwartz, DPM."  (Pls.' Opp. 7.)  This assertion does not allege that title to or ownership of any claim has been assigned and thus hardly constitutes a sufficient assignment of the patients' claims to Fung-Schwartz or her Practice.

Plaintiffs had routine access to and control over the software provided by Defendants, which contained the records of Plaintiffs' patients. (*See generally* Am. Compl. ¶¶ 16–37, 81–92.) Third, Plaintiffs claim that Defendants cut off Plaintiffs' access to the software and records and "took patients' insurance claims and destroyed their value." (*Id.* ¶¶ 81–92, 125–31.) Consequently, Plaintiffs could not treat patients and lost significant business and revenue. (*See, e.g.*, *id.* ¶¶ 77, 91.)

Defendants claim that Plaintiffs' cause of action for conversion fails because Plaintiffs failed to plead both that they made a demand for the return of the requisite records and claims, and that the demand for return was refused. (Defs.' Mem. 10.) It is axiomatic that "[f]or an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." *AD Rendon Commc'ns*, 2007 WL 2962591, at *4. However, a demand is necessary only where the property is held lawfully by the defendant. *See White v. City of Mount Vernon*, 633 N.Y.S.2d 369, 370 (2d Dep't 1995); *see also Emp'rs' Fire Ins. Co. v. Cotten*, 156 N.E. 629, 630 (1927) (noting that the reason for this rule is that "one in lawful possession shall not have such possession changed into an unlawful one until he be informed of the defect of his title and have an opportunity to deliver the property to the true owner" (internal quotation marks omitted)). Where the defendant holds the property *unlawfully*, "no demand and refusal are necessary to render the defendant liable." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (quoting *Nat Koslow, Inc. v. Bletterman*, 197 N.Y.S.2d 583, 586 (N.Y. Sup. Ct. 1960)). Because, as Plaintiffs allege, Defendants have no property interest in the electronic medical records or the patients' insurance claims, (Am. Compl. ¶¶ 81, 126), it is not necessary for Plaintiffs to establish that they made a demand for, and that Defendants refused to return, the

11

records at issue.[6]

Consequently, Defendants' motion to dismiss Plaintiffs' conversion claim is denied.

### 2. Deceptive Trade Practices (Counts 7, 8)

New York law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. To prevail on a claim under § 349, a plaintiff must assert that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).

The threshold test developed by New York courts for applicability of § 349 is whether the alleged deceptive practice is "consumer-oriented." *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995). Conduct is considered consumer-oriented if it has "a broader impact on consumers at large." *Id.* "'Consumers,' in this context, are 'those who purchase goods and services for personal, family or household use.'" *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (quoting *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)). Transactions between businesses or sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct. *See, e.g.*, *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770–71 (1995); *see also Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc.*, 790

---

[6] Defendants further argue that Plaintiffs' conversion claim is undermined by the fact that Plaintiffs have regained access to the medical records and claims. (Defs.' Mem. 11). However, "[a] party cannot avoid a conversion claim because it eventually returned the property in question." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014). "Returning property to the rightful owner . . . does not absolve defendants of all liability from the alleged conversion. A claim for conversion will exist even when the deprivation is partial or temporary." *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 364 (S.D.N.Y. 2006). The allegations in the Amended Complaint plausibly state a conversion claim, and Plaintiffs' ability to adduce evidence that will support that claim and resulting damages must await discovery.

Thus, because Plaintiffs have failed to adequately allege that Defendants' conduct was consumer oriented, the deceptive business practices claims under § 349 must be dismissed.

### 3. Negligence (Count 18)

To establish a claim of negligence, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, No. 03 Civ. 5539(NRB), 2004 WL 1444868, at *9 (S.D.N.Y. June 25, 2004). Under New York law, a breach of contract will not give rise to a negligence claim unless a legal duty independent of the contract itself has been violated. *See, e.g.*, *Clark–Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190, 193–94 (N.Y. 1987). Such a "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* at 194. Where an independent duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980). If, however, a party's claim is premised solely on a breach of contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

Defendants argue that Plaintiffs' negligence claim fails because Plaintiffs have not established any duty Defendants owed them outside of the parties' contractual relationship. (Defs.' Mem. 14–15.) However, the duties alleged in Plaintiffs' negligence claim are broader than those enumerated in any of the parties' contracts.

Plaintiffs' negligence claim alleges that Defendants wrongfully withheld patient medical

16

information from Plaintiffs and failed to properly and timely submit insurance claims. (Am. Compl. ¶¶ 174–76.) Independent of any contractual obligation, Plaintiffs argue that Defendants owed Plaintiffs a duty of care under certain federal and state laws, including the federal Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, regarding Defendants' maintenance of electronic medical records and compliance with medical billing guidelines. (Am. Compl. ¶¶ 82, 86.) Several courts have found that such laws may be used to supply the requisite standard of care for negligence claims. *See, e.g., I.S. v. Wash. Univ.*, No. 4:11CV235SNLJ, 2011 WL 2433585, at *2 (E.D. Mo. June 14, 2011) (opining that it would be appropriate for plaintiff to rely on HIPAA in order to establish the standard of care by which to adjudge whether defendant's acts were negligent); *Graves v. Health Exp., Inc.*, No. 09-0277, 2009 WL 2835778, at *3 (W.D. La. Aug. 31, 2009) ("[D]ue to the lack of a private cause of action under HIPAA, the significance of an alleged violation of the federal statute is limited merely to evidence that defendants may have violated a duty of care owed to plaintiff under state tort (or contract) law."); *Acosta v. Byrum*, 638 S.E.2d 246, 251 (N.C. Ct. App. 2006) ("Here, defendant has been placed on notice that plaintiff will use . . . HIPAA to establish the standard of care. Therefore, plaintiff has sufficiently pled the standard of care in her complaint."); *see also Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, No. 12-1169, 2014 WL 2738220, at *5 (E.D. Pa. June 17, 2014) (assuming that HIPAA's statutory duty provides the standard of care for a negligence claim).

Because Plaintiffs have asserted that Defendants owed Plaintiffs a cognizable duty of care extraneous to the parties' contractual relationship, that Defendants breached that duty, and that Plaintiffs were harmed as a result, Plaintiffs have sufficiently alleged a claim for negligence.

#### 4.  Tortious Interference with Business Relations (Counts 11, 13)

To state a claim under New York law for tortious interference with business relations, four elements must be sufficiently pled:  "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  As a general rule, in order to satisfy the third element of a tortious interference with business relations claim, "the defendant's conduct must amount to a crime or an independent tort."  *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004).  In short, in order to survive a motion to dismiss, the plaintiff must allege that it was "actually and wrongfully prevented from entering into or continuing in a specific business relationship."  *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (1st Dep't 1996).

Plaintiffs' tortious interference with business relations claims allege that Defendants interfered with Plaintiffs' relationships with insurers and patients.  Defendants do not contest that Plaintiffs have sufficiently pled the first two elements of this claim.  (*See* Defs.' Mem. 15–16.)  Rather, Defendants argue that Plaintiffs failed to plead sufficient facts to establish that Defendants acted with any wrongful purpose and that Defendants' acts interfered with or injured Plaintiffs' relationships with any third party.  (*See id.*)  I disagree.

Plaintiffs have alleged improper means amounting to tortious and/or illegal activity.  For instance, Plaintiffs claim that Defendants intentionally double billed insurance claims, leading to threats from insurance providers that Plaintiffs would be subject to fraud investigations.  (Am. Compl. ¶ 52.)  Plaintiffs also assert that Defendants intentionally wasted patients' insurance claims and caused insurers not to issue payments to Plaintiffs, (*id.* ¶¶ 38–52), and that

Defendants' refusal to provide Plaintiffs with access to their patients' electronic medical records was prohibited by HIPAA, among other statutes, (*id.* ¶ 82). Moreover, Plaintiffs allege that Defendants' acts injured Plaintiffs' relationships with both insurers and patients: Plaintiffs claim that Defendants' act of double billing insurance claims interfered with Plaintiffs' relationships with insurers, (*id.* ¶¶ 51–54), and that Defendants' denial of access to patients' electronic records prevented Plaintiffs from scheduling appointments, calling patients, treating patients, or writing prescriptions, (*id.* ¶ 91).

Accordingly, Plaintiffs' tortious interference with business relations claims have been properly pled and Defendants' motion to dismiss these claims is denied.

### 5. Tortious Interference with Contract (Counts 10, 12)

In order to state a claim for tortious interference with contract under New York law, a plaintiff must allege: (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of the contract," (3) "defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible," (4) "an actual breach" of the contract, and (5) "damages to the plaintiff." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 433 (S.D.N.Y. 1999) (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (1993)). "[T]he cases require that the third party, not the plaintiff, must be the one to breach the contract." *Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ. 1012(JSM), 2003 WL 22271224, at *5 (S.D.N.Y. Sept. 30, 2003).

While Plaintiffs allege the existence of valid contracts between them and third party insurers and patients, (Am. Compl. ¶¶ 133, 141), Defendants argue that Plaintiffs failed to assert that any third party breached its contract with Plaintiffs as a result of Defendants' actions, (*see* Defs.' Mem. 17). To satisfy the elements of this claim, a plaintiff must specifically allege that a

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:  9/13/2019               │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                               :

JENNIFER FUNG-SCHWARTZ, MD, et al.,   :

                  Plaintiff,   :

      - against -          :         **17-CV-233 (VSB)**

                               :         <u>**OPINION & ORDER**</u>

CERNER CORPORATION, et al.,     :

                Defendant.   :

-------------------------------------------------------X

<u>Appearances</u>:

Elizabeth Shieldkret
Elizabeth Shieldkret, Attorney at Law
Forrest Hills, NY
*Counsel for Plaintiffs*

John Michael Lyons
Shook, Hardy & Bacon, LLP
Philadelphia, PA
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

      Plaintiffs, Jennifer Fung-Schwartz, DPM, LLC (the "Practice") and Jennifer Fung-Schwartz, D.P.M., ("Fung-Schwartz," and together with the Practice, "Plaintiffs"), bring this action against Defendants Cerner Corporation ("Cerner Corp.") and Cerner Healthcare Solutions, Inc. ("Cerner Solutions" and, collectively, "Cerner") asserting multiple claims stemming from certain contracts Fung-Schwartz and/or the Practice executed with Cerner. Before me is Defendants' partial motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead with particularity and failure to state a claim. For the reasons stated herein, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## 1. Count 4 (Fraud Preceding the 2014 Agreement)

In Count 4, Plaintiffs allege that Defendants committed fraud by knowingly making false representations on which Plaintiffs relied in entering into the 2014 Agreement. In my September 2018 Opinion, I dismissed this fraud claim because Plaintiffs had failed "to plead that Defendants never intended to follow through on the allegedly fraudulent representations or that the promisors knew the representations to be false at the time the statements were made." (Sept. 2018 Op. 24–25.)[4] Plaintiffs' reassertion of Count 4, pled simply as fraud, (SAC, at 18), but referred to once as "promissory fraud" in their opposing brief, (Pls.' Mem. 2)[5], is supported by additional factual allegations.

### a. Applicable Law

A claim for fraud in the inducement requires a misrepresentation of a present fact or omission that induced a party to enter into a contract. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). New York law permits a breach of contract claim and a claim for fraud in the inducement of that contract to co-exist only where the misrepresentations are distinct from the terms of the parties' agreement. *See Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 339 (S.D.N.Y. 2017); *Wyle Inc. v. ITT Corp.*, 13 N.Y.S.3d 375, 376 (1st Dep't 2015).

"[F]raud in the inducement can be supported by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties." *Id.* (internal quotation marks omitted). The latter scenario is occasionally termed

---

[4] "Sept. 2018 Op." refers to my Opinion & Order on Defendants' motion to dismiss the first amended complaint, filed on September 13, 2018. (Doc. 49.)

[5] "Pls.' Mem." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss, filed on January 11, 2019. (Doc. 60.)

"promissory fraud." *See, e.g., PKFinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, No. 96 CIV 1816 (SAS), 1996 WL 363138, at *4 (S.D.N.Y. June 28, 1996) (citing *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 121 (N.Y. 1995)). However, "a misrepresentation [that] is merely a statement of intent to perform under the contract[ ] cannot constitute fraud . . . ." *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001); s*ee also Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.").

### b. Application

In Count Four, Plaintiffs claim that prior to entering into the 2014 Agreement, Defendants made multiple false representations collateral to the contract. They claim that Defendants represented they had the capability to properly process all billing claims, although the source of this representation is not identified and appears to be an inference drawn from the "Cerner Ambulatory Business Office Services Proposal" ("Proposal") as a whole, (*see* SAC ¶ 103; *id.* Ex. 3 at 3), and that Defendants represented in the Proposal that they provide a "high level of compliance" with applicable laws, regulations, and guidelines, and that her account would be handled by well-trained and experienced personnel, (*see id.*; *id.* Ex. 3 at 3). Plaintiffs also claim that Defendants represented that Plaintiffs' total cost for RCM and EMR services would not increase; however, Plaintiffs do not point to a specific source of this representation, but infer it from Cerner's representation that the Plaintiffs would be charged a monthly minimum fee, which was calculated based on the "expected monthly transaction volumes." (*Id.* ¶ 37; *id.* Ex. 2 at 2–3; *id.* Ex. 3 at 2; Pls.' Mem. 8–9).

9

Plaintiffs have not stated a claim based on Defendants' misrepresentation that Plaintiffs' total cost for RCM and EMR services would not increase. Plaintiffs do not state that Defendants made this representation explicitly, but appear to suggest it should be implied by the fact that Defendants calculated Plaintiffs' monthly fee as a percentage of monthly billing. (*Id.* ¶ 37; *id.* Ex. 2 at 2–3; *id.* Ex. 3 at 2). Even accepting the inference Plaintiffs suggest, the statement upon which it is purportedly based is a term of the contract, not a representation collateral to it. If in fact Plaintiff's allegation refers to an actual, separate statement— "that *if* [Fung-Schwartz] maintained her then-current level of billing the new Cerner contract would not cost more than her previous combined costs for RCM and EMR services"—this allegation fails both for lack of particularity, and for the fact that the statement was not one of present fact, but rather a future-oriented prediction about costs that was conditional upon billing level. (*See* SAC ¶¶ 37–38 (emphasis added).) In addition, Plaintiffs do not plead that their costs for the EMR and RCM services in fact increased—only that revenues dropped—thereby failing to allege falsity, and they provide no allegations suggesting Defendants knew when the prediction was made that it "would not come to pass," *GMA Accessories, Inc. v. ePartners Inc.*, No. 07 Civ. 8414(LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008), nor any other allegations that would give rise to a strong inference of fraudulent intent. *See also Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 137 (E.D.N.Y. 2017) ("Representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud") (citing *Consolidated Bus Transit, Inc. v. Treiber Grp., LLC*, 948 N.Y.S.2d 679 (2d Dep't 2012))); *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 445 (S.D.N.Y. 2014) (noting that "predictions of the future, which were believed when made, cannot serve as a basis for a fraud claim just because they subsequently turned out not to be true") (citation omitted)).

However, Plaintiffs do state a claim with respect to Defendants' alleged misrepresentations related to their capability to properly process billing claims, their "high level of compliance" with applicable laws, regulations, and guidelines, and that Plaintiffs' account would be handled by well-trained and experienced personnel.  (*See* SAC ¶ 103.)  They allege the statements with sufficient specificity by pointing to the exact document in which they appear and alleging that they were made in order to induce Plaintiff to enter into a contract.  (*See* SAC ¶¶ 40, 60, 70, 72, 103; *id.* Ex. 3 at 3.)[6]  Plaintiffs allege that "she discussed her options with Cerner personnel" who went on to prepare a pre-contract proposal.  (SAC ¶¶ 25, 27, 78.)  As a result of various representations allegedly made by Cerner, "the Practice contracted with Cerner Solutions for Cerner Solutions and Cerner Corp. to provide billing services by submitting a signed sales order to Cerner Corp."  (*Id.* ¶¶ 38–39.)

It is plausible that this claim is not duplicative of Plaintiffs' breach of contract claim.  As an initial matter, on the face of the documents, the Sales Orders annexed by Plaintiff do not contain any language referring to the Proposal or incorporating it as part of the contract, even though they do explicitly incorporate the May 24, 2006 Agreement.  (*See* SAC Ex. 2, Ex. 3, at 3–8.)  Thus, at this stage of the litigation, drawing inferences in Plaintiffs' favor, I accept the Proposal as a pre-contractual sales document.  In addition, the statements contained in the Proposal were not statements of the contractual terms or intent to perform the contract, but rather were collateral statements about present facts—the functional capabilities of Defendants' computer system and their staff to perform the contract—intended to obtain Plaintiffs' business.

---

[6] Plaintiffs' identification of "Cerner" as the source of the statements is permissible.  (*See* SAC Ex. 3 at 3.)  "[A] plural author is implied by the nature of the representations."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) (group pleading was appropriate when the alleged misrepresentations appeared in offering documents featuring the logo of a corporate subgroup).  Here, the source of the alleged misrepresentations was a business proposal bearing the Cerner logo at the top and contains no individual names.  And, as Plaintiffs point out, they identify the Cerner individuals who supplied the Proposal.  (SAC ¶¶ 27.)

"New York law is clear that, at a minimum, false statements about a party's present financial condition or current ability to perform, made in order to induce a party to enter into a contract, will support a claim of fraudulent inducement." *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017); *see also KCG Americas LLC v. Brazilmed, LLC*, No. 15 CIV. 4600(AT), 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016) ("Representations about an entity's ability to perform under a contract are distinct from representations that the entity will perform."). Plaintiffs have also sufficiently alleged justifiable reliance and injury, based on their allegations that they did in fact enter into the contract and were harmed by the fact that Defendants were incapable of processing claims in the manner they promised.

In addition, Plaintiffs have remedied their prior pleading deficiencies by alleging the following facts that give rise to an inference of fraudulent intent: "Cerner knew . . . it had no plan to fix the problems and that it would not be able to provide her with the high level of compliance that it promised," (SAC ¶ 40); "Cerner knew [its representation about its well trained and experienced employees] was false and . . . had no[] plan to improve training, hire more experienced personnel or otherwise address its [personnel] issue," (*id.* ¶ 72); "Cerner had no plan to improve the quality of its RCM submissions of Medicare claims and took no additional measures to address the issue," (*id.* ¶ 75). In addition to these assertions, Plaintiffs allege facts to support its claim that Cerner had knowledge that its representations were false at the time it made them, including that it "had received complaints from customers about the inadequacy of its employees," (*id.* ¶ 71); and that "[a]s early as June 2013, at least one doctor had problems with Cerner's RCM for submitting Medicare claims and complained to Cerner," (*id.* ¶ 41). These facts suggest a plausible inference that Defendants had a motive to commit fraud (to induce Plaintiffs to enter into a contract with them and turn a profit) as well as opportunity (because the

representations they made concerned facts solely within Defendants' own knowledge, and which Plaintiffs had no way of discovering).  *See Lerner*, 459 F.3d at 290–91.  Plaintiffs' allegations that Defendants were on notice of personnel and system issues affecting compliance with Medicare billing rules prior to the execution of the 2014 Agreement also serve as circumstantial evidence of "conscious misbehavior."  *See id.*

The fact that Plaintiffs make certain allegations about Defendants' intent "upon information and belief" is no barrier.  Fraud allegations may be made on information and belief "as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based."  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Defendants' intent and knowledge are within their own knowledge, and Plaintiffs' allegations are supported by "facts upon which the belief is based," *see id.*, such as Plaintiffs' allegations that Cerner was unable to perform the contract from the outset and Plaintiffs' allegations about events that would have put Cerner on notice as to the deficiencies in its staff and software.

Finally, Defendants argue that the representations in the Proposal are mere "puffery." (Defs.' Mem. 13.)[7]  "[A] seller's mere general commendations of the product sought to be sold, commonly known as 'dealer's talk,' 'sales talk,' or 'puffery,' do not amount to actionable misrepresentations."  *Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.,* 888 F. Supp. 2d 508, 513 (S.D.N.Y. 2012) (finding that the statement, "[a] partner that will earn your trust by delivering both the competence and the confidence you need to get the job done," was puffery). "Puffing has been described as making generalized or exaggerated statements such that a

---

[7] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Partial Motion to Dismiss Counts 4, 6, 15, 16, 19 and 20 of the Second Amended Complaint, filed on December 29, 2018.  (Doc. 58.)

reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ 318(RJS), 2009 WL 2242605, at *23 (S.D.N.Y. July 27, 2009) (internal quotation marks omitted); *see also EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 276 (S.D.N.Y. 2004) (holding that statements that defendant "would be building the 'greatest boats'" and director "was personally 'committed'" to company were nonactionable puffery, but statement that defendant "had the capability and wherewithal to properly construct the yacht sought by Goldman in a timely manner" was actionable fraud).

Although the term "well trained" is admittedly generalized and vague, in conjunction with the term "experienced," Defendants' alleged representation about the nature of its employees may plausibly be read to be actionable fraud. Similarly, Defendants' alleged representation that it maintains a "high level of compliance" with laws and regulations was a concrete statement. *See id.*

Drawing all inferences in favor of Plaintiffs, I find that Plaintiffs have stated a claim for fraud in the inducement of the 2014 Agreement based on the assertions set forth in the Proposal: (1) that Defendants had the capability to properly process the claims, (2) that Defendants would provide "a high level of compliance with applicable laws and regulations" and (3) that Plaintiffs' account would be handled by well-trained and experienced personnel. However, Plaintiffs have not stated a claim with respect to Cerner's alleged representations about the total cost of their RCM and EMR services.

# EXHIBIT A

REMOTE DEPOSITION GUIDELINES

1. The Court shall allow the parties to notice and take depositions remotely using telephone conference or video-conferencing technologies (*e.g.,* Zoom, Microsoft Teams) with the understanding that parties, their attorneys, and the court reporter shall not be located in the same room.

2. Particularly, the parties' attorneys shall ensure no other individuals are present with the witness while the witness is giving testimony. The witness and the attorneys participating in the deposition will be in separate locations, each connected to the group by a video or telephone conference link and no two participants in the deposition shall be in the same room during the deposition (unless they are co-counsel for a party).

3. In accordance with Fed. R. Civ. P. 30(b)(3) and (b)(4), all depositions may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means. This does not dispense with the requirements set forth in Fed. R. Civ. P. 30(b)(5), including the requirement that, unless the parties stipulate otherwise, the deposition be "conducted before an officer appointed or designated under Rule 28," and that the deponent be placed under oath by that officer. For avoidance of doubt, a deposition will be deemed to have been conducted "before" an officer so long as that officer attends the deposition via the same remote means (e.g., telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants. The court reporter can swear the witness in remotely via video or telephone conference. The references to a schedule for depositions in all Case Management Plan and Scheduling Orders this lawsuit should be construed and understood to include and expressly to permit depositions by telephone, videoconference, or other remote means.

4. All witnesses (including any party or Fed. R. Civ. P. 30(b)(6) representative) and their attorneys agree they will not exchange or engage in any written communication of any kind with each other via electronic or other means while the deposition is being conducted.

5. All witnesses and their attorneys agree not to engage in any oral communication, signaling, or receiving direction or verbal or inaudible coaching from anyone in the room or behind the camera while the deposition is being conducted.

6. All witnesses will stipulate before the deposition begins that they will not read from any source during the deposition unless the document is shown to the witness by the attorney taking the deposition or unless the witness discloses the source document to all attorneys present on the conference and publishes the source to the camera (in a video-conference deposition).

7. The parties may record and save a video version of the deposition to use for possible impeachment at trial.

8. The parties will introduce exhibits during the deposition using electronic means and all witnesses will agree to use a computer or tablet to review the exhibits as they are introduced

electronically. All witnesses and attorneys agree that the witness shall not have any other screen or information displayed on the computer or tablet while the deposition is being conducted other than a copy of the electronic exhibit being shown to the witness.

9.   The parties understand the deposition is being conducted via a video-conferencing platform over the internet.  Therefore, while there is a minimal risk, it cannot be guaranteed that a third party cannot gain access to the deposition either now or at some time in the future and the parties agree to hold each other and their attorneys harmless from any and all claims for violations of HIPAA or any breach of privacy due to the potential risk associated with transmitting a deposition via video-conference platform.