UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
JENNIFER FUNG-SCHWARTZ, D.P.M, LLC :
and JENNIFER FUNG-SCHWARTZ, D.P.M., :
:
                           Plaintiffs, :        17-CV-233 (VSB)
:
      - against - :        **OPINION & ORDER**
:
:
CERNER CORPORATION and CERNER :
HEALTHCARE SOLUTIONS, INC., :
:
                          Defendants. :
:
------------------------------------------------------------X

Appearances:

Elizabeth Shieldkret
Elizabeth Shieldkret, Attorney at Law
Forest Hills, NY
*Counsel for Plaintiffs*

Patrick Fanning
Lathrop GPM LLP
Kansas City, MO
*Counsel for Defendants*

Laura Anne Delvecchio
Heidell, Pittoni, Murphy & Bach, LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs Jennifer Fung-Schwartz, D.P.M, LLC (the "Practice") and Jennifer Fung-Schwartz D.P.M. ("Fung-Schwartz," and collectively, "Plaintiffs"), bring this action against Defendants Cerner Corporation ("Cerner Corp.") and Cerner Healthcare Solutions, Inc. ("Cerner Healthcare," and collectively, "Cerner" or "Defendants") asserting several claims arising from certain agreements between Cerner and Plaintiffs. (Doc. 54, "SAC".) Defendants assert three

counterclaims for breach of contract, quantum meruit damages, and declaratory judgment. (Doc. 65.) Plaintiffs have moved for summary judgment on Defendants' counterclaims for breach of contract and quantum meruit. (Doc 160-1, "Pltfs. Mem.".) Defendants opposed the motion. (Doc. 164.)

Because I find that there are questions of material fact that could allow a reasonable jury to find for Defendants on either their breach of contract or quantum meruit counterclaims, Plaintiffs' motion for summary judgment is DENIED.

## I. Background[1]

On March 24, 2006, Fung-Schwartz entered a Software License, Hardware Purchase, Services and Support Agreement (the "Master Agreement") with Cerner Physician Practice, the predecessor of Defendant Cerner Healthcare. (Doc. 164 ¶ 1; Doc. 166-6.) The Master Agreement contained a "No Waiver" provision which stated:

> No delay or failure in exercising any right under this Agreement and no partial or single exercise of such right will be deemed to constitute a waiver of such right or any other rights hereunder.  No consent to a breach of any express or implied term of this Agreement will constitute consent to any prior or subsequent breach.

(Doc. 166-6 at §1.4.) The Master Agreement also contained a provision which required that the "Agreement, and all modifications or amendments to this Agreement, will not be effective unless made in writing and signed by an authorized representative of each party." (*Id.* §1.7.)

Under the Master Agreement, the parties could enter into subsequent agreements which would be incorporated into the Master Agreement. (Doc. 165 ¶ 3.) Two such agreements are

---

[1] The following factual summary is drawn from the parties' Rule 56.1 submissions and summary judgment exhibits. These facts are undisputed unless otherwise noted. I recount here only information relevant to the Defendants' counterclaims and the resolution of this motion. Background information on Plaintiffs' claims can be found in my September 2019 Opinion & Order on Defendants' motion to dismiss. (Doc. 64.)

relevant here.  First, in January 2011, Fung-Schwartz signed a sales order ("2011 Sales Order") for Defendant Cerner Healthcare to purchase an electronic medical record ("EMR") system.  (Doc. 166-3.)  Second, in 2014, Fung-Schwartz signed a sales order ("2014 Sales Order") for Defendants to provide certain business office services.  (Doc. 165 ¶ 20.)  Defendant Cerner Healthcare did not sign either the 2011 or 2014 Sales Orders.  (*See* Doc. 164 at 6, 9.)  Cerner has a policy not to sign sales orders under $500,000, absent a client's request.  (Doc. 165 ¶ 9.)  The 2011 and 2014 Sales Orders both contained language incorporating the Master Agreement.  (Doc. 165 ¶¶ 6–7.)

## II. Procedural History

Plaintiffs filed their complaint on January 11, 2017.  (Doc. 1.)  On May 31, 2017, Defendants filed a motion to dismiss the complaint.  (Doc. 17.)  On June 15, 2017, Plaintiffs filed their amended complaint.  (Doc. 18.)  On August 18, 2017, Defendants filed a motion to dismiss the amended complaint.  (Docs. 38, 39.)   On September 9, 2017, Plaintiffs filed their brief in opposition, (Doc. 43), and on September 15, 2017, Defendants filed a reply, (Doc. 44).

On July 6, 2017, Plaintiffs filed a motion for preliminary injunction to prohibit Defendants from denying Plaintiffs access to their patients' medical records.  (Docs. 23–28.)  On July 25, 2017, Defendants filed an opposition to the motion for preliminary injunction, (Doc. 34), and on August 2, 2017, Plaintiffs filed a reply, (Doc. 35).  On August 4, 2017, I held a hearing on the preliminary injunction motion and denied Plaintiffs' application.  (Doc. 36.)

On August 31, 2017, Plaintiffs appealed my denial, (Doc. 42), and on June 13, 2018, the Second Circuit vacated and remanded the case for further proceedings because it was "unable to discern the intended effect of [my] various written and oral pronouncements regarding Plaintiffs-Appellants' motion for preliminary and permanent injunctive relief", (Doc. 45).  On June 7,

3

2019, I issued an order denying Plaintiffs' motion for a preliminary injunction with additional details concerning the rationale for that denial, (Doc. 62), and Plaintiffs appealed that order, (Doc. 63). On May 18, 2020, the Second Circuit affirmed my decision. (Doc. 88.)

On September 13, 2018, I issued an Opinion & Order granting Defendants' motion to dismiss with respect to Counts 1–8, 10, 12, and 14–16, and denying the motion with respect to Counts 9, 11, 13, and 18. (Doc. 49.) Plaintiffs then sought leave to amend their complaint on September 27, 2018. (Doc. 51). Because Defendants did not oppose, I granted the requested leave on October 4, 2018. (Doc. 52). On October 26, 2018, Plaintiffs filed their Second Amended Complaint and Jury Demand, (Doc. 53), which I rejected as overdue. Plaintiffs re-filed their Second Amended Complaint on December 7, 2018, reasserting four of the previously dismissed counts and adding two new counts, (SAC), along with a stipulation from Defendants consenting to the re-filing of the Second Amended Complaint, (Doc. 55).

On December 29, 2018, Defendants then filed a motion to dismiss Counts 4, 6, 15, 16 and 19 of the Second Amended Complaint along with a memorandum of law in support. (Docs. 57, 58.) Plaintiffs filed their memorandum of law in opposition to Defendants' motion on January 11, 2019, (Doc. 60), and Defendants filed their reply on January 18, 2019, (Doc. 61). On September 13, 2019, I issued an Opinion & Order granting Defendants' motion to dismiss with respect to Counts 6, 15, 16, 19, 20, and the portion of Count 4 premised on Defendants' alleged misrepresentations about the total cost of RCM and EMR services and denying the motion with respect to the remainder of Count 4. (Doc. 64.)

On October 4, 2019, Defendants filed an answer and counterclaims to the Second Amended Complaint. (Doc. 65.) On October 18, 2019, Plaintiffs filed an answer to Defendants' counterclaims. (Doc. 66.) On March 23, 2021, Plaintiffs filed their motion for summary

judgment.  (Doc. 160.)  Defendants filed their opposition on April 6, 2021.  (Doc. 164.) Plaintiffs filed their reply on April 20, 2021.  (Doc. 171.)

### III. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made

on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Any other evidence submitted in support of a motion for summary judgment must be in the form of evidence that would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2), (e).  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### IV. Discussion

Plaintiffs argue that Defendants cannot (1) recover under a contract theory under Missouri law because Defendants did not sign the 2011 or 2014 Sales Orders, or (2) recover quantum meruit damages because there is a valid contract.  (Pltfs. Mem. 11–13.)  I address both arguments below.

### A. *Contract Theory*

The Master Agreement includes a choice of law provision that designates Missouri law. (Doc. 166-6 § 1.6.) Courts will enforce a choice of law provision so long as the chosen state bears a reasonable relationship to the parties or transaction. *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 1997207, at *15 (S.D.N.Y. June 6, 2022). The parties agree that Missouri law applies to this dispute, and since Defendants' business predecessor had its principal place of business in Missouri, I find that the application of Missouri law is appropriate. (Doc. 166-6 at 2.)

Plaintiffs argue that because the Master Agreement unambiguously requires both parties to sign a sales order before it becomes effective, the unsigned 2011 and 2014 Sales Orders never took effect. (*See* Pltfs. Mem. 11.) Defendants claim that the parties had a meeting of the minds and therefore had a valid contract, even though Defendants did not sign the disputed sales orders. (Doc. 164 at 8–9.)

"A meeting of the minds occurs when there is a definite offer and an unequivocal acceptance." *Youngs v. Conley*, 505 S.W.3d 305, 314 (Mo. Ct. App. 2016) (cleaned up). "A party's signature on a contract remains the common, though not exclusive, method of demonstrating agreement." *Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014) (citations and quotations omitted). "Assent can be shown in other ways, such as by the parties' conduct." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo. Ct. App. 2005). Whether there was a meeting of the minds between two parties is typically a question of fact for the factfinder to decide—here, the jury. *Hall v. Fox*, 426 S.W.3d 23, 25 (Mo. Ct. App. 2014); *EM Med., LLC v. Stimwave LLC*, 626 S.W.3d 899, 907 (Mo. Ct. App. 2021); *SL EC, LLC v. Ashley Energy, LLC*, 561 F. Supp. 3d 802, 817 (E.D. Mo. 2021).

Here, in support of their claim, Defendants explain that Fung-Schwartz signed the sales orders, accepted services provided by Defendants, and sent correspondence to Defendants confirming her obligation to pay for the services provided. (*Id.* 10–11.) Looking at the facts in the light most favorable to Defendants, a reasonable jury could find that the parties had a meeting of the minds, and therefore the sales orders are enforceable. Accordingly, Plaintiffs' motion for summary judgment on Defendants' breach of contract counterclaim is DENIED.

### B. *Quantum Meruit Damages*

"In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted).[2] A claim for quantum meruit will fail if the parties have an enforceable, valid contract that concerns the same subject matter as the quantum meruit claim. *Id.* "[W]here there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." *Leroy Callender P.C. v. Fieldman*, 676 N.Y.S.2d 152, 153 (1st Dep't 1998).

Plaintiffs claim that Defendants cannot recover quantum meruit damages because the parties have a valid, enforceable contract that governs the same subject matter. (*See* Pltfs. Mem. 12–13.) Defendants argue that the Master Agreement does not cover the scope of the services offered under the disputed sales orders; therefore, the appropriate contracts to consider are the 2011 and 2014 Sales Orders that Plaintiffs argue are invalid. (Doc. 164 at 22–23.) The question

---

[2] The parties agree that New York law applies to Plaintiff's quantum meruit claim. (Pltfs. Mem. 9; Doc. 164 at 19.)

concerning which of the parties' agreements are valid and enforceable is at the heart of this case. Plaintiffs argue that this case is similar to *United States for Use & Benefit of Five Star Electric Corp. v. Liberty Mutual Ins. Co.*, but the parties there, unlike the parties here, did "not dispute the subcontract's validity or enforceability." 758 F. App'x 97, 100 (2d Cir. 2018). As described *supra* in Section IV (A), there are material factual disputes as to the enforceability of the parties' 2011 and 2014 Sales Orders. Because there are not sufficient undisputed facts to establish that Defendants' quantum meruit claim fails as a matter of law, Plaintiffs' motion for summary judgment on Defendants' quantum meruit counterclaim is DENIED.

## V. Conclusion

Accordingly, because I find that there are genuine issues of material fact related to the validity of the 2011 and 2014 Sales Orders, Plaintiffs' motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to terminate the docket entry at Doc.160.

SO ORDERED.

Dated: October 12, 2023
      New York, New York

                                                  Vernon S. Broderick
                                                  United States District Judge